1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    THOMAS JOSEPH GODDARD,                    Case No.  25-cv-06187-JSC

        Plaintiff,
8
                                               **ORDER RE: APPLE'S MOTION TO**
9       v.                                     **DISMISS, MR. GODDARD'S MOTIONS**
                                               **TO STAY AND FOR LEAVE TO FILE**
10   SLICKDEALS, LLC, et al.,                  **AN AMENDED COMPLAINT**

        Defendants.                            Re: Dkt. Nos. 47, 49, 61, 64
11

12

13          Thomas Joseph Goddard, proceeding in forma pauperis without attorney representation,

14   sues Slickdeals, LLC ("Slickdeals") and Apple Inc. ("Apple") for discrimination.  (Dkt. No. 42.)[1]

15   Pending before the Court are (1) Mr. Goddard's motions for leave to file a third amended

16   complaint, (Dkt. Nos. 61, 64); (2) Apple's motion to dismiss Mr. Goddard's second amended

17   complaint, (Dkt. No. 47); and (3) Mr. Goddard's motion to stay proceedings, (Dkt. No. 49).  After

18   carefully considering the parties' submissions, and with the benefit of oral argument on February

19   5, 2026, the Court DENIES Mr. Goddard's motions for leave to file a third amended complaint,

20   GRANTS IN PART and DENIES IN PART Apple's motion to dismiss, and DENIES Mr.

21   Goddard's motion to stay proceedings.

22          As to Apple's motion to dismiss, the Court dismisses Mr. Goddard's Title VII claims

23   without leave to amend because as a private individual, he may not bring a section 2000e-6 claim,

24   and he has not plausibly alleged he timely exhausted his administrative remedies.  The Court also

25   dismisses Mr. Goddard's Unfair Competition Law claim because he has not plausibly alleged

26   Apple's unlawful, unfair, or fraudulent business act or practice as a predicate act.  In addition, the

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the document.

Court dismisses Mr. Goddard's intentional infliction of emotional distress claim without leave to amend because he has not plausibly alleged Apple's outrageous conduct.  However, the Court denies Apple's motion to dismiss Mr. Goddard's 42 U.S.C. § 1981, Fair Credit Reporting Act, and fraud claims because Apple has not demonstrated Mr. Goddard's factual allegations, as well as reasonable inferences in his favor, fail to state these claims.

**BACKGROUND**

**I.     COMPLAINT ALLEGATIONS**

Mr. Goddard, a technology entrepreneur who is Jewish and white, and has multiple documented disabilities, lives in Walnut Creek, California.  (Dkt. No. 42 ¶ 6.)  In September 2023, Apple extended him "a formal offer of employment as Senior Software Engineer for their Apple Vision Pro team following an extraordinarily rigorous selection process" with a "comprehensive compensation package totaling $1,050,000 in first-three-year compensation."  (*Id.* ¶¶ 33, 33b.) However, on October 24, 2023, "Apple rescinded [Mr. Goddard's] accepted employment offer through a phone conversation with Senior Technical Recruiter John Moultrie."  (*Id.* ¶ 40.)  Mr. Moultrie "revealed that the entire Apple Vision Pro team was 'extremely frustrated' by the decision and specifically identified Mike Rockwell as the sole individual driving the recission decision."  (*Id.*)  Mike Rockwell was the Vice President of Apple's Vision Products Group and had "authority over hiring decisions for the Apple Vision Pro team."  (*Id.* ¶ 9b.)

Mr. Goddard's "professional interactions with Mike Rockwell date back to 2005-2009 IRC [Internet Relay Chat] channels, where concerning statements were made," including "referenc[ing] his family's connection" to American Nazi movements and "self-identif[ying] as an 'armchair-Nazi.'"  (*Id.* ¶¶ 34, 34d.)  In the IRC communications, there was "systematic antisemitic harassment that followed disclosure of [Mr. Goddard's] Jewish identity and Goddard family heritage," and Mr. Rockwell made "statements targeting [Mr. Goddard's] 'Jewish identity and family name.'"  (*Id.* ¶¶ 34e, 111c.)  In addition, Apple's recission occurred "precisely during the documented peak period of post-October 7 antisemitic targeting."  (*Id.* ¶ 40b.)

So, Apple's "stated reason for recission—concerns about 'short tenure at previous companies'—was clearly pretextual given that Apple's entire interview team had already

2

United States District Court
Northern District of California

extensively reviewed [Mr. Goddard's] employment history during separate full-day interviews, with all tenure-related concerns previously addressed and resolved to the team's satisfaction." (*Id.* ¶ 40a.)  Furthermore, in October 2024, "Apple Sourcing Recruiter Kevin Smith contacted [Mr. Goddard] again expressing renewed interest in hiring him for identical positions." (*Id.* ¶ 45.)  So, Apple's recission "was motivated by discriminatory animus." (*Id.* ¶ 40b.)

Mr. Goddard also alleges Slickdeals discriminated against him.  First, "[f]ollowing [Mr. Goddard's] purchase of Israeli support stickers on Amazon in October 2023, he experienced systematic shipping delays and service discrimination." (*Id.* ¶ 28b.)  Slickdeals "maintains extensive affiliate marketing partnerships" with Amazon, and shares "comprehensive infrastructure for implementing sophisticated discrimination through data sharing capabilities enabled by executive relationships between Slickdeals and Amazon." (*Id.* ¶¶ 28a, 31.)  Second, Mr. Goddard was hired as a Lead Staff Mobile Engineer at Slickdeals in October 2023. (*Id.* ¶ 47.)  While Mr. Goddard worked for Slickdeals, he overheard Slickdeals employee Deepti Gupta say "words to the effect of 'not liking that guy,' referring to [him]." (*Id.* ¶ 28c.)   In addition, beginning after October 7, 2023, Slickdeals Chief Business Officer Elizabeth Simer and Slickdeals Chief Technology Officer Ken Leung made "explicitly antisemitic statements" and "subjected [him] to systematic racial discrimination." (*Id.* ¶¶ 28c, 53, 54, 56.)  Mr. Goddard also "documented a systematic pattern of stonewalling" from other Slickdeals employees, including "technical sabotage" of his code contributions. (*Id.* ¶¶ 51, 52a.)  In early 2024, Mr. Goddard discovered Slickdeals was "circumventing iOS privacy manifests and Apple's App Tracking Transparency (ATT) requirements." (*Id.* ¶ 47a.)  Mr. Goddard filed a whistleblower complaint with Apple on July 3, 2024 and subsequently experienced "severe retaliation." (*Id.* ¶¶ 50, 58.)  Slickdeals terminated his employment based on pretext on July 15, 2024. (*Id.* ¶ 58b, 59.)

On March 18, 2025, Mr. Goddard filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, religion, and disability, and retaliation, and on May 8, 2025, the EEOC issued a Dismissal and Notice of Rights. (*Id.* ¶¶ 16-17 & n.17.)

## II. PROCEDURAL HISTORY

On July 23, 2025, Mr. Goddard sued Slickdeals and Apple and asserted eleven claims against Slickdeals, three claims against Apple, and four claims against both Slickdeals and Apple. (Dkt. No. 1.)[2]  The Court granted Mr. Goddard's motion to proceed in forma pauperis and ordered service of the complaint on Slickdeals and Apple.  (Dkt. No. 6.)  Mr. Goddard then unilaterally filed an amended complaint but did not serve Apple with that complaint.  (Dkt. No. 7.)  Apple moved to dismiss Mr. Goddard's initial complaint, (Dkt. No. 15), and Mr. Goddard moved for leave to file a second amended complaint, (Dkt. No. 18).

On October 21, 2025, the Court (i) granted Apple's motion to dismiss Mr. Goddard's initial complaint for failure to state a claim, (ii) denied Mr. Goddard's motion for leave to file a second amended complaint, and (iii) granted Mr. Goddard leave to file an amended complaint which complied with the Court's order.  (Dkt. No. 32.)  The Court also dismissed Mr. Goddard's claims against Slickdeals as improperly joined, without prejudice to Mr. Goddard's filing his claims against Slickdeals in a separate lawsuit.  (*Id.*)

Slickdeals then moved to dismiss Mr. Goddard's complaint, (Dkt. No. 35), and Mr. Goddard moved for summary judgment, (Dkt. No. 38).  The Court denied both motions as moot in light of its October 21, 2025 order dismissing Mr. Goddard's complaint and claims against Slickdeals.  (Dkt. No. 39.)  Mr. Goddard then appealed the Court's orders regarding Apple's motion to dismiss, his motion for summary judgment, his motion for leave to proceed in forma pauperis, and the initial case management schedule.  (Dkt. Nos. 40, 41, 44.)  The Ninth Circuit dismissed the appeals for lack of jurisdiction.  *See Goddard v. Slickdeals, LLC*, No. 25-6741, 2025 WL 4076405, at *1 (9th Cir. Nov. 21, 2025).

Mr. Goddard also filed a second amended complaint.  (Dkt. No. 42.)  As in his initial complaint, Mr. Goddard asserts claims against Slickdeals for: (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); (2) race and religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a); (3) hostile work environment in violation of Title VII; (4) retaliation in

---

[2] Mr. Goddard has filed additional complaints in this district asserting discrimination claims against other defendants.  *See, e.g.*, *Goddard v. NoMa Apartments et al.*, No. 25-cv-05882-EMC; *Goddard v. County of Contra Costa et al.*, No. 25-cv-02910-CRB.

1   violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a); (5) disability

2   discrimination in violation of the ADA, 42 U.S.C. § 12122(a); (6) failure to accommodate in

3   violation of the ADA, 42 U.S.C. § 12112(b)(5)(A); (7) whistleblower retaliation in violation of

4   Sarbanes-Oxley Act Section 806, 18 U.S.C. § 1514A; (8) race discrimination in violation of 42

5   U.S.C. § 1981; (9) conspiracy to violate civil rights in violation of 42 U.S.C. § 1985; (14) tortious

6   interference with business relations; and (17) defamation. (*Id.* at 78-81, 85-103, 115-118, 126-

7   130.) Mr. Goddard also asserts claims against both Slickdeals and Apple for (10) pattern and

8   practice of discrimination in violation of Title VII, 42 U.S.C. § 2000e-6; (15) violations of

9   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (16) fraud; and (18)

10  intentional infliction of emotional distress. (*Id.* at 103-105, 118-126, 130-133.) In addition, Mr.

11  Goddard asserts claims against Apple for (11) race and religious discrimination in violation of

12  Title VII; (12) race discrimination in violation of 42 U.S.C. § 1981; and (13) violations of the Fair

13  Credit Reporting Act, 15 U.S.C. § 1681, et seq. (*Id.* at 105-115.)

14      Apple moved to dismiss Mr. Goddard's second amended complaint, and oral argument

15  was scheduled for December 18, 2025. (Dkt. No. 47.) Mr. Goddard moved to continue the

16  December 18, 2025 oral argument, to stay the proceedings, and for accommodations. (Dkt. No.

17  49.) Mr. Goddard also requested a case management conference, (Dkt. Nos. 50, 51, 52), and filed

18  another amended complaint, (Dkt. No. 57). On December 10, 2025, the Court continued the

19  December 18, 2025 hearing; set oral argument on Apple's motion to dismiss and Mr. Goddard's

20  motion to stay for February 5, 2026; and dismissed Mr. Goddard's complaint at Docket No. 57

21  because his complaint at Docket No. 42 was the operative complaint before the Court. (Dkt. No.

22  59.) Mr. Goddard then sought leave to file a third amended complaint. (Dkt. Nos. 61, 64.)

23                                          **DISCUSSION**

24  **I.    MR. GODDARD'S MOTIONS FOR LEAVE TO FILE A THIRD AMENDED
         COMPLAINT**

25
        After a plaintiff has "amend[ed] its pleading once as a matter of course," it "may amend its
26
    pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.
27
    15(a). "[L]eave to amend shall be freely given when justice so requires," but "the district court
28

5

1    may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies

2    by amendments previously allowed . . . [and] futility of amendment." *See Carvalho v. Equifax*

3    *Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quotation marks and citations omitted).

4         Because Mr. Goddard's proposed third amended complaint repeats several of the flaws the

5    Court has identified in its order dismissing his initial complaint, as well as in this Order dismissing

6    certain claims in his second amended complaint, amendment would be futile. *See id.* So, the

7    Court DENIES his motions. (Dkt. Nos. 61, 64.) However, the Court addresses the new

8    allegations in Mr. Goddard's proposed third amended complaint to understand whether to grant

9    further leave to amend his claims. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th

10   Cir. 1987) (explaining leave to amend may be denied if plaintiffs "could prove no set of facts in

11   support of their claims which would entitle them to relief" (cleaned up)).[3]

12   **II.    APPLE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

13        Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include a "short and plain

14   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

15   While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands

16   more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

17   U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual

18   allegations in the complaint as true." *Id.* However, this presumption does not apply to

19   "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements."

20   *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter" to "allow

21   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22   *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining

23   a complaint must allege "enough facts to state a claim to relief that is plausible on its face").

24   When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the

25   pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d

26

27   ───────────────────
     [3] Mr. Goddard moved for leave to file a third amended complaint on December 10, 2025, (Dkt.
28   No. 61), and again on December 17, 2025, (Dkt. No. 64). The Court relies on allegations in his
     later proposed third amended complaint at Docket No. 64-1.

United States District Court
Northern District of California

1    338, 342 (9th Cir. 2010) (quotation marks and citation omitted).

2          Apple moves to dismiss all of Plaintiff's claims against it. The Court addresses Apple's

3    arguments as they apply to each of Plaintiff's causes of action.

4          **A.       Tenth Cause of Action: Pattern or Practice of Discrimination (Title VII)**

5          The Court previously dismissed Mr. Goddard's section 2000e-6 claim because "as a

6    private individual, [he] may not bring a civil action under § 2000e-6 of Title VII." (Dkt. No. 32 at

7    6.)  *See EEOC v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 331 (9th Cir. 1979) (explaining

8    Attorney General and EEOC may bring actions under 42 U.S.C. §§ 2000e-5 and 2000e-6, but

9    individuals can only bring actions under 42 U.S.C. § 2000e-5), *aff'd sub nom.*, *Gen. Tel. Co. of

10   Nw., Inc. v. EEOC*, 446 U.S. 318 (1980).  Because the Court dismissed Mr. Goddard's section

11   2000e-6 claim without leave to amend, he may not allege it in his amended complaint.  *See

12   Strifling v. Twitter Inc.*, No. 22-CV-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024)

13   ("[C]ourts in this district consistently strike or dismiss parties and claims that exceed the scope of

14   an order granting leave to amend." (citations omitted)).  Regardless, his amended section 2000e-6

15   claim fails for the same reason his initial claim did: As a private individual, he cannot assert it.

16   And, furthermore, Mr. Goddard "no longer asserts a standalone Section 2000e-6 claim" in his

17   third amended complaint.  (Dkt. No. 64-1 at 10.)  So, the Court dismisses Mr. Goddard's Tenth

18   Cause of Action without leave to amend.

19         **B.       Eleventh Cause of Action: Race and Religious Discrimination (Title VII)**

20         The Court previously dismissed Mr. Goddard's Title VII discrimination claim "[b]ecause

21   Apple has shown Plaintiff did not exhaust administrative remedies, and Plaintiff fails to state a

22   claim against Apple for race and religious discrimination."  (Dkt. No. 32 at 10.)  However, the

23   Court granted Mr. Goddard leave to amend his Title VII claim "if he can plausibly allege he

24   exhausted his administrative remedies by timely filing a charge with the EEOC."  (*Id.*)

25         Before bringing a Title VII claim, a plaintiff "must exhaust available administrative

26   remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-

27   to-sue letter."  *See Scott v. Gina Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018) (citing

28   42 U.S.C. § 2000e-5(e)(1)).  The plaintiff must file the charge with the EEOC within 180 days

United States District Court
Northern District of California

after the allegedly unlawful employment practice occurred, or, if the charge is initially filed with a state agency, within 300 days after the allegedly unlawful employment practice or 30 days after notice the state agency has terminated its proceedings under state law, whichever is earlier.  *See id.* at 1106 & n.2 (citing 42 U.S.C. § 2000e-5(e)(1)).  "[A]fter exhausting administrative remedies, a claimant has 90 days to file a civil action."  *Id.* at 1106 (citing 42 U.S.C. § 2000e-5(f)(1)).

Title VII's "charge-filing requirement" is not a jurisdictional requirement, but rather an affirmative defense the defendant must plead and prove.  *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 550-52 (2019); *see also Kraus v. Presidio Tr. Facs. Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) ("Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense, so the defendant bears the burden of pleading and proving it." (cleaned up)).  "[P]laintiffs ordinarily need not 'plead on the subject of an anticipated affirmative defense.' . . . When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss."  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (citations omitted).  So, a motion to dismiss based on a failure-to-exhaust defense should only be granted if "the defense is 'clearly indicated' and 'appear[s] on the face of the pleading.'"  *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1045 (9th Cir. 2013) (citation omitted), *vacated on other grounds*, 573 U.S. 942 (2014).

Mr. Goddard alleges Apple unlawfully rescinded his offer of employment on October 24, 2023, and he filed a charge with the EEOC on March 18, 2025.  (Dkt. No. 42 ¶¶ 16 & n.17, 40.) Because Mr. Goddard's complaint unambiguously alleges he filed his EEOC charge more than 180 days after Apple's allegedly unlawful employment action, Apple has shown its affirmative defense of failure to exhaust bars Mr. Goddard's claim as a matter of law.  *See* 42 U.S.C. § 2000e-5(e)(1).

So, as Apple has proven Mr. Goddard's failure to timely exhaust administrative remedies, Mr. Goddard bears the burden of alleging facts which justify tolling or otherwise excuse the exhaustion requirement.  *See Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff." (citations omitted)); *see also Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (remanding for dismissal because

the petitioner "has [not] demonstrated grounds for excusing the exhaustion requirement").  In dismissing Mr. Goddard's initial complaint, the Court held he had failed to plausibly allege tolling through a continuing violation, fraudulent concealment, or the delayed discovery rule.  (Dkt. No. 32 at 8-9.)  Mr. Goddard's second amended complaint includes new facts which may support excusing his failure to timely exhaust due to delayed discovery or a continuing violation.

As to the delayed discovery rule, Mr. Goddard includes an allegation of "Apple's February 9, 2025 disclosure of internal emails revealing discriminatory bias for October 24, 2023 decision."  (Dkt. No. 42 ¶ 79a(1).)  However, "the [Title VII] claim accrues upon awareness of the actual injury, i.e., the adverse employment action, and not when the plaintiff suspects a legal wrong."  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008).  So, even if Mr. Goddard did not discover Apple's discriminatory reasons for rescinding his employment offer until February 9, 2025, his clock for filing a charge with the EEOC or a state agency began running on October 24, 2023, when the adverse employment action occurred.  So, the delayed discovery rule does not apply.

As to a continuing violation, Mr. Goddard's proposed third amended complaint alleges on October 25, 2025, an Apple civil rights attorney stated in a restaurant: "Just look at Cupertino, it's dominated by Indians."  (Dkt. No. 64-1 ¶ 76a.)  However, the continuing violation must be "part of the same actionable hostile work environment practice" as the act outside of the statutory time limit in order for a plaintiff to assert claims based on the earlier act.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002); *see also Sandoval v. Saticoy Lemon Ass'n*, 747 F. Supp. 1373, 1389 (C.D. Cal. 1990) ("While a pattern of discrimination which supports a finding of a continuing violation will provide for the consideration of discriminatory incidents outside Title VII's limitations period, those incidents must relate to the essence of the continuing violation.") (refusing to consider earlier events because they "do not entail the same subject matter discrimination").  Because the October 25, 2025 statement does not involve the same Apple employees or hiring practices, or plausibly relate to Apple's recission of Mr. Goddard's employment offer, it is not a continuing violation from Apple's October 24, 2023 recission.  And because the October 25, 2025 statement is not a continuing violation, Mr. Goddard's November

22, 2025 EEOC charge against Apple does not allow Mr. Goddard to assert claims based on Apple's October 24, 2023 recission.  (Dkt. No. 64-1 ¶ 15.)

Because Mr. Goddard's second and third amended complaints establish on their face he did not exhaust his administrative remedies by timely filing a charge with the EEOC or a state agency, and fail to allege new facts which would excuse the exhaustion requirement, further leave to amend the Title VII claim would be futile.  *See Carvalho*, 629 F.3d at 892 ("[T]he district court may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment.").  The Court therefore dismisses the Eleventh Cause of Action without leave to amend.

**C.      Twelfth Cause of Action: Race Discrimination (42 U.S.C. § 1981)**

Section 1981 prohibits discrimination in the making and enforcement of contracts on account of race.  *See* 42 U.S.C. § 1981; *see also St. Francis College v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987) (holding § 1981 encompasses claims based on racial discrimination against people of Jewish descent).  To state a Section 1981 claim, a plaintiff must allege "(1) he is a member of a racial group, (2) some contractual right with defendant was impaired, (3) defendant intentionally discriminated against him based on race, and (4) his race was a but-for cause of the contractual impairment."  *See Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1279 (C.D. Cal. 2024) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)); *see also Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (explaining § 1981 guarantees "the right to the 'enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship,' including the relationship between employer and employee" (quoting 42 U.S.C. § 1981(b))).  So, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp.*, 589 U.S. at 341; *see also Williams v. Tobener*, No. C 16-02209 SBA, 2016 WL 5235039, at *2 (N.D. Cal. Sept. 22, 2016) ("To plead intentional discrimination, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." (quotation marks and citation

United States District Court
Northern District of California

1    omitted)).

2        Mr. Goddard, who is Jewish, alleges after Apple offered him a job, an Apple employee

3    with "authority over hiring decisions" decided to rescind Mr. Goddard's job offer, and this

4    employee had previously identified as a Nazi and made statements targeting Mr. Goddard's Jewish

5    identity.  (*Id.* ¶ 9b.)  So, Mr. Goddard has plausibly alleged he is a member of a racial group, *see*

6    *St. Francis College*, 481 U.S. at 611-13; and his contractual right to employment with Apple was

7    impaired, *see Johnson*, 534 F.3d at 1122.  And, drawing all reasonable inferences in Mr.

8    Goddard's favor, because the Apple employee who decided to rescind his job offer was a self-

9    identified Nazi and had previously targeted Mr. Goddard's Jewish identity, he has plausibly

10   alleged Apple intentionally discriminated against him and rescinded his employment offer because

11   he was Jewish.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("On a motion to

12   dismiss for failure to state a claim, the court must construe the complaint in the light most

13   favorable to the plaintiff, taking all [his] allegations as true and drawing all reasonable inferences

14   from the complaint in [his] favor.").  So, Mr. Goddard has plausibly alleged a § 1981 claim.

15       Apple contends Mr. Goddard cannot plausibly allege Apple rescinded his employment

16   offer because of his race because Apple stated it was rescinding the offer because of his short

17   tenure at other jobs.  However, Mr. Goddard alleges Apple "had already extensively reviewed

18   [his] employment history" and "previously addressed and resolved" the "tenure-related concerns."

19   (Dkt. No. 42 ¶ 40a.)  Drawing inferences in Mr. Goddard's favor, the allegations support an

20   inference Apple knew about Mr. Goddard's short tenure at prior jobs ***before*** they offered him the

21   job, and Apple's assertion of short-tenure concerns as a reason to later rescind his job was

22   pretextual.  So, because Apple's argument does not make the inference of discrimination

23   implausible, it is not grounds to dismiss Mr. Goddard's claim.  *See Starr v. Baca*, 652 F.3d 1202,

24   1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible

25   alternative explanation is so convincing that plaintiff's explanation is *im*[]plausible.").

26       So, the Court denies Apple's motion to dismiss Mr. Goddard's Twelfth Cause of Action.

27   **D.    Thirteenth Cause of Action: Fair Credit Reporting Act (15 U.S.C. § 1681)**

28   Under the Fair Credit Reporting Act ("FCRA"), an employer must provide an employee or

United States District Court
Northern District of California

a job applicant with notice before and after it takes adverse action against them "based in whole or in part on" a consumer report.  *See* 15 U.S.C § 1681b(b)(3); 15 U.S.C. § 1681m.  The FCRA defines a "consumer report" as a "communication of any information by a consumer reporting agency."  15 U.S.C. § 1681a(d)(1).

The Court previously dismissed Mr. Goddard's FCRA claim because he failed to allege Apple "acted based on a 'consumer report' or information from a consumer reporting agency," and "the FCRA only requires notice for adverse actions 'based on whole or in part' on information contained in a consumer report."  (Dkt. No. 32 at 12.)  Mr. Goddard now alleges Apple "use[s] [a] consumer reporting agency for employment screening," and "the 'short tenure' concerns Apple raised align precisely with employment history information typically contained in consumer reports."  (Dkt. No. 42 ¶¶ 79e, 112c.)  Apple contends Mr. Goddard "completed his employment application" at the same time he authorized Apple to conduct a background check, and "Apple informed him the background check did not impact the offer decision."  (Dkt. No. 47 at 14.)  But, Apple's contentions rely on drawing inferences in Apple's favor, rather than in Mr. Goddard's favor.  And because Mr. Goddard has alleged Apple rescinded his job offer because of his short tenure at prior jobs, which is information typically contained in consumer reports Apple uses for employment screening, it is reasonable to infer Apple rescinded his job offer "based in whole or in part on" a consumer report.  *See* 15 U.S.C. §§ 1681(b)(3); 1681m.

So, the Court denies Apple's motion to dismiss Mr. Goddard's Thirteenth Cause of Action.

**E.      Fifteenth Cause of Action: California Unfair Competition Law (Cal. Bus & Prof. Code §§ 17200, et seq.)**

To state a claim under California's Unfair Competition Law ("UCL"), a plaintiff must allege the defendant engaged in an "unlawful, unfair, or fraudulent business act or practice."  *See* Cal. Bus. & Prof. Code § 17200.  The Court previously dismissed Mr. Goddard's UCL claim because he had not plausibly alleged Apple violated any predicate law to plead an "unlawful" practice, did not allege any facts supporting Apple's "unfair" practice, and had not stated a claim for fraud. (Dkt. No. 32 at 12-13.)

As to an unlawful practice, a plaintiff must allege a predicate violation of a separate law.

*See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." (quotation marks and citation omitted)). "'[V]irtually any state, federal, or local law can serve as the predicate.'" *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (quoting *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)). Mr. Goddard's second amended complaint repeats his initial complaint's allegations, namely: "Defendants' conduct is unlawful because it violates: federal privacy laws through the GTM tracking domain masking scheme; securities laws through false reporting of user engagement metrics; Apple's App Store policies and developer agreements; federal employment discrimination laws; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and FTC Section 5 regarding deceptive practices." (Dkt. No. 42 ¶ 121a; *see also* Dkt. No. 1 ¶ 241.) As the Court previously explained, Mr. Goddard "has not stated a claim against Apple for violating any of these laws." (Dkt. No. 32 at 12.) So, because Mr. Goddard has not plausibly alleged Apple violated any specific predicate law, he cannot state a UCL claim based on Apple's unlawful business act or practice.

As to an unfair practice, Mr. Goddard repeats his prior allegation "Defendants' practices are unfair because they offend established public policy regarding privacy, securities fraud, and employment discrimination." (Dkt. No. 42 ¶ 121c.) As the Court previously explained, Mr. Goddard must also "state facts supporting Apple's unfair practices or explaining the actions Apple took and why those actions were unfair." (Dkt. No. 32 at 13.) *See Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993) ("A plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."). Mr. Goddard also alleges "[c]oncealing a Nazi-sympathizing executive's role in employment decisions while claiming legitimate business reasons violates established public policy." (Dkt. No. 42 ¶ 113c.) But, as the Court has explained, "violations of 'fundamental public policy' are [not] sufficient to state a UCL claim for unfair business practices." (Dkt. No. 32 at 13.) *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184-85 (1999) (explaining although a business practice "offend[ing] an established public policy" may be unfair,

because "courts may not apply purely subjective notions of fairness," "the public policy triggering the violation must be tethered to a constitutional or statutory provision [] or a regulation carrying out statutory policy"). Furthermore, because the UCL addresses business practices, the alleged unfair conduct must "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition." *Id.* at 187. Because Mr. Goddard does not identify the allegedly violated "established public policy," he does not state a UCL claim based on Apple's unfair business act or practice.

As to a fraudulent practice, "[t]o state a fraudulent practices claim under [the] UCL one need not plead and prove the elements of fraud." *Prasad v. BAC Home Loans Servicing LP*, No. 2:10-CV-2343-FCD KJN, 2010 WL 5090331, at *7 (E.D. Cal. Dec. 7, 2010) (citations omitted). Instead, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (cleaned up). However, "allegations of fraudulent conduct must nevertheless satisfy the heightened pleading requirements of Rule 9(b)." *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009). Mr. Goddard first repeats his allegation from his initial complaint: "Defendants engaged in fraudulent and deceptive business practices by: concealing their true data collection practices from users; bypassing privacy protections while claiming to respect user privacy; reporting inflated user metrics to investors based on illegally obtained data; and creating false security narratives about terminated employees." (Dkt. No. 42 ¶ 121b.) Because Mr. Goddard does not allege who took these actions, when they occurred, or how they were fraudulent, these alleged actions are not sufficiently pled under Rule 9(b). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (explaining under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" (cleaned up)).

Mr. Goddard has also added allegations Apple's fraudulent practice included "[m]isrepresenting the reason for rescission as 'short tenure' while concealing discriminatory

motive," and facts supporting the who, what, when, where, how, and why of this misrepresentation.  (Dkt. No. 42 ¶¶ 113c, 114a.)  However, because the UCL's "purpose [is] protecting the general public against unscrupulous business practices," "a fraudulent business practice" under the UCL "is one that is likely to deceive members of the public."  *Morgan*, 177 Cal. App. 4th at 1255 (quotation marks and citations omitted).  As explained in the next section, Mr. Goddard has plausibly alleged Apple's misrepresentation amounted to fraud on him.  Apple's alleged misrepresentation, however, was aimed at deceiving Mr. Goddard alone and is not a fraudulent business practice "likely to deceive members of the public" at large.  *Id.*  So, Mr. Goddard does not state a UCL claim based on Apple's fraudulent business practice.

So, because Mr. Goddard has not plausibly alleged Apple's unlawful, unfair, or fraudulent business practice, Mr. Goddard fails to state a UCL claim.

### F.    Sixteenth Cause of Action: Fraud

To state a fraud claim, a plaintiff must allege "(a) misrepresentation; (b) defendant's knowledge of the statement's falsity; (c) intent to defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage."  *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (1993).  In addition, "[t]o comply with [Federal Rule of Civil Procedure] 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).  To meet the Rule 9(b) standard, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Cafasso*, 637 F.3d at 1055 (cleaned up).

The Court previously dismissed Mr. Goddard's fraud claim because he alleged Apple "'made material misrepresentations and omissions regarding . . . their non-discriminatory employment practices'" but did not identify any particular false or misleading statements.  (Dkt. No. 32 at 14.)  Mr. Goddard now alleges fraud based on Apple's "[f]alse representation that recission was due to 'short tenure from 2010 to 2019.'"  (Dkt. No. 42 ¶ 114a.)  Apple contends

Mr. Goddard's allegations "Defendants knew the representations were false when made or made them with reckless disregard for the truth," and "Defendants intended for Plaintiff . . . to rely on these misrepresentations" are conclusory and therefore insufficient to plausibly allege a fraud claim.  (Dkt. No. 42 ¶¶ 124b, 124c.)  *See Iqbal*, 556 U.S. at 678 (explaining a court need not assume true "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements").  However, Mr. Goddard's allegation Apple knew about his short tenure before it offered him a job creates a plausible inference Apple knew short tenure was not the true reason for later rescinding his offer, but rather a false representation.  And Mr. Goddard's allegation short tenure served as a pretext for an unlawful, discriminatory reason creates a plausible inference Apple intended for Mr. Goddard to rely on the pretext and not discover the true reason for the job recission.

So, because Apple fails to show Mr. Goddard has not plausibly alleged a fraud claim, the Court denies Apple's motion to dismiss his Sixteenth Cause of Action.

### G.     Eighteenth Cause of Action: Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) the defendant's extreme and outrageous conduct; (2) defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993).  To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.* (quotation marks and citation omitted).  Furthermore, "it is not enough that the conduct be intentional and outrageous.  It must be conduct *directed at the plaintiff*, or occur in the presence of a plaintiff *of whom the defendant is aware*."  *Id.* at 1002 (cleaned up).

The Court previously dismissed Mr. Goddard's IIED claim because he had not alleged facts to support his "conclusory allegations 'Defendant's conduct was extreme and outrageous and exceeded the bounds of conduct usually tolerated in a civilized society.'"  (Dkt. No. 32 at 15.)  Mr. Goddard now alleges particular extreme and outrageous conduct, including Apple's employing

16

Mr. Rockwell, allowing him to influence hiring, rescinding Mr. Goddard's offer after October 7, 2023, concealing its discriminatory motive, and perpetuating institutional discrimination.  (Dkt. No. 42 ¶ 155a; *see also* Dkt. No. 64-1 ¶ 97a.)  However, Mr. Goddard does not allege Apple's employing Mr. Rockwell, allowing him to influence hiring, or broadly perpetuating institutional discrimination was conduct "directed primarily at" Mr. Goddard or "calculated to cause [him] severe emotional distress," so those actions cannot support an IIED claim.  *See Potter*, 6 Cal. 4th at 1003 ("[I]ntentional infliction of emotional distress [claim] was not sufficiently supported where there was no allegation that the defendants' misconduct was directed primarily at plaintiffs, or that it was calculated to cause them severe emotional distress.").  And, Mr. Goddard's remaining allegations about Apple's recission of his employment offer and concealment of their "improper motivation" are part of "personnel management," rather than "outrageous conduct beyond the bounds of human decency."  *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (explaining "pleading of personnel management activity is insufficient to support" an IIED claim, "even if improper motivation is alleged," because "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society"); *see also Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2019 WL 1369926, at *7 (N.D. Cal. Mar. 26, 2019) (holding plaintiff could not state an IIED claim based on Intel's decision not to hire him), *aff'd*, 797 F. App'x 325 (9th Cir. 2020).

So, Mr. Goddard has not plausibly alleged extreme or outrageous conduct necessary for an IIED claim against Apple.  The Court therefore dismisses the Eighteenth Cause of Action without leave to amend.

## III.    MISJOINDER OF CLAIMS AGAINST SLICKDEALS

The Court previously dismissed Mr. Goddard's claims against Slickdeals because his complaint "conclusively establish[ed] [his] claims against Slickdeals do not 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences as his claims against Apple, or present 'question[s] of law or fact common to' Apple and Slickdeals."  (Dkt. No. 32 at 15-16 (quoting Fed. R. Civ. P. 29(a)(2)).  Because Mr. Goddard's second amended complaint suffers from the same flaws, and because Mr. Goddard's third amended complaint "asserts claims only

against Apple," (Dkt. No. 64-1 at 11), the Court again dismisses his claims against Slickdeals

without prejudice to his pursuit of those claims in a separate lawsuit.

## IV.    MR. GODDARD'S MOTION TO STAY

A district court "has broad discretion to stay proceedings as an incident to its power to

control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*,

299 U.S. 248, 254 (1936)).  When a party moves to stay proceedings, a court must weigh the

"competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay,
> [2] the hardship or inequity which a party may suffer in being required
> to go forward, and [3] the orderly course of justice measured in terms
> of the simplifying or complicating of issues, proof, and questions of
> law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) (quotation marks and citation omitted).

"The party proposing a stay bears the burden of proving that a stay is warranted." *Petrov v.*

*Alameda Cnty.*, No. 16-CV-04323-YGR, 2016 WL 6563355, at *2 (N.D. Cal. Nov. 2, 2016)

(citing *Clinton*, 520 U.S. at 708).

"The Constitution does not ordinarily require a stay of civil proceedings pending the

outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th

Cir. 1995).  Instead, "[i]n the absence of substantial prejudice to the rights of the parties involved,

simultaneous civil and criminal proceedings are unobjectionable under our jurisprudence." *Id.*

(cleaned up) (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980)).  "However,

parallel criminal and civil cases involving the same or closely related facts may implicate Fifth

Amendment rights sufficient to warrant a stay of civil proceedings." *Amatrone v. Champion*, No.

15-CV-01356-JST, 2017 WL 3334889, at *2 (N.D. Cal. Aug. 4, 2017) (citing *Keating*, 45 F.3d at

324.)  In deciding whether to stay civil proceedings during criminal proceedings, a court "should

consider the extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45

F.3d at 324 (quotation marks and citation omitted).  Courts also "should generally consider:"

> (1) the interest of the plaintiffs in proceeding expeditiously with this
> litigation or any particular aspect of it, and the potential prejudice to
> plaintiffs of a delay; (2) the burden which any particular aspect of the
> proceedings may impose on defendants; (3) the convenience of the
> court in the management of its cases, and the efficient use of judicial

resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 324-25 (citation omitted).  So, the "strongest case" for staying civil proceedings "is where a party under [criminal] indictment for a serious offense is required to defend a civil or administrative action involving the same matter."  *Petrov*, 2016 WL 6563355, at *3 (quoting *Dresser Indus.*, 628 F.3d at 1375-76).  And although "a plaintiff is not absolutely barred from seeking a stay of an action he filed, . . . a civil plaintiff has no absolute right to both his silence and his lawsuit."  *Amatrone*, 2017 WL 3334889, at *2 (quotation marks and citations omitted).

Mr. Goddard moves to stay this Court's proceedings pending resolution of criminal proceedings in Contra Costa County Superior Court Case No. 01-24-03484.  Because Mr. Goddard is the plaintiff rather than the defendant in this civil proceeding, his "circumstances do not present the 'strongest case' for granting a stay."  *See Amatrone*, 2017 WL 3334889, at *3 (denying motion to stay); *cf. Lewis v. William Michael Stemler, Inc.*, No. S-13-0574 KJM EFB, 2014 WL 1026593, at *3 (E.D. Cal. Mar. 14, 2014) (granting stay in part when plaintiff was also counterclaim defendant).

Furthermore, Mr. Goddard has not shown any "same or closely related facts" between the civil and criminal proceedings which "may implicate Fifth Amendment rights."  *Amatrone*, 2017 WL 3334889, at *2.  Mr. Goddard argues "constitutional violations" and "improper competency proceedings" in the state criminal proceedings "affect [his] fundamental ability to represent himself in any legal proceeding."  (Dkt. No. 49 at 11.)  But because Mr. Goddard does not allege any ***factual*** overlap between the civil and criminal cases, "there is little immediate risk [he] . . . will be forced to choose between exercising his Fifth Amendment rights and pursuing his civil case."  *See Amatrone*, 2017 WL 334889, at *3.

The other *Keating* factors also weigh against staying this case.  Mr. Goddard and Apple have interests in proceeding expeditiously; Mr. Goddard seeks monetary and injunctive relief, and permitting Mr. Goddard's allegations against Apple "to pend for an extended period creates 'a danger of denying justice by delay.'"  *Amatrone*, 2017 WL 3334889, at *3 (quoting *Petrov*, 2016 WL 6563355, at *5 (quoting *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery*

19

1    *Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007)).  Judicial efficiency also weighs against a stay, as

2    the district court "ha[s] an interest in clearing its docket."  *Id.* (quoting *Fed. Sav. & Loan Ins.*

3    *Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)).  Mr. Goddard does not argue any third

4    parties have an interest in this litigation.  And the public interest favors expeditious resolution:

5    either to vindicate Mr. Goddard's discrimination claims, if true, or to conserve public resources, if

6    not.

7        So, the Court denies Mr. Goddard's motion to stay his civil case pending resolution of the

8    state criminal proceedings.

9                                **CONCLUSION**

10       For the reasons stated above, the Court DENIES Apple's motion to dismiss Mr. Goddard's

11    42 U.S.C. § 1981, FCRA, and fraud claims.  However, the Court GRANTS Apple's motion to

12    dismiss Mr. Goddard's Title VII claims and intentional infliction of emotional distress claims

13    without leave to amend.  The Court also dismisses Mr. Goddard's UCL claim without leave to

14    amend, but without prejudice.  Although Mr. Goddard might be able to amend his UCL claim to

15    state a claim, this federal court would be without equitable jurisdiction to resolve the claim given

16    his fraud, FCRA, and section 1981 claims are proceeding past the motion to dismiss stage, and he

17    therefore has an adequate remedy at law.  *See Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1313

18    (9th Cir. 2022) (explaining "[t]he UCL provides only for equitable remedies," and "[i]n order to

19    entertain a request for equitable relief, a district court must have equitable jurisdiction, which can

20    only exist . . . if the plaintiff has no adequate legal remedies" (quotation marks and citation

21    omitted)); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[The

22    plaintiff] must establish that []he lacks an adequate remedy at lack before securing equitable

23    restitution for past harm under the UCL.").  So, the UCL claim is dismissed without prejudice to

24    Mr. Goddard pursuing that claim in state court.

25       If Mr. Goddard wishes to add any new claims, or add any new defendants, he must file a

26    new motion for leave to file a third amended complaint.  The Court once again cautions Mr.

27    Goddard **any proposed amended complaint must be stated in a reasonable number of pages**.

28    *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a **short and**

United States District Court
Northern District of California

**plain statement** of the claim showing that the pleader is entitled to relief.").  Further, Mr. Goddard shall limit the exhibits attached to any proposed amended complaint.  The length of his complaints with exhibits makes it difficult if not impossible for the Court to determine if he states a claim.  For example, his previous proposed third amended complaint is 2,183 pages.  (Dkt. No. 64.)  Such length is not consistent with Rule 8.  *See Gibson v. City of Portland,* No. 24-1663, 2026 WL 235118, at *18 (9th Cir. Jan. 29, 2026) ("[T]he district court has inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." (quotation marks and citations omitted)).  But, in any event, as the Court has in large part denied Apple's motion to dismiss, Mr. Goddard does not need to amend his complaint for the case to move forward.

The Court will hold an initial case management conference on **April 1, 2026** at 2:00 p.m. via Zoom video.  A joint case management conference statement is due one week in advance.

Finally, as Mr. Goddard is proceeding without counsel, the Court directs his attention to the Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court's website located at http://cand.uscourts.gov/proselitigants.  Plaintiff may also contact the Legal Help Center via telephone: (415)-782-8982, or email: fedpro@sfbar.org for free assistance regarding his claims.

This Order disposes of Docket Nos. 47, 49, 61, and 64.

**IT IS SO ORDERED.**

Dated: February 9, 2026

JACQUELINE SCOTT CORLEY
United States District Judge