THOMAS J. GODDARD
thomas@lawz.app
1910 N. Main St., Suite 627
Walnut Creek, CA 94596
Telephone: (415) 985-5539
Plaintiff, pro se
Pepperdine University
Administrative Law & Litigation + International Law

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH GODDARD,<br>Plaintiff,<br>v.<br>APPLE INC.,<br>Defendant. | Case No. 3:25-cv-06187-JSC<br>**DISCOVERY REPLY BRIEF**<br>Plaintiff's Reply in Support of Motion for Discovery & Preservation Order (Dkt. 86)<br>Judge: Hon. Jacqueline Scott Corley<br>CMC: April 1, 2026 at 2:00 PM<br>(6 Exhibits) |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES 3

A. CASES 3

B. STATUTES 4

C. RULES 4

I. INTRODUCTION 5

II. ARGUMENT 5

A. Plaintiff's Discovery Motion Is Not Premature Because Rule 26(d)(2) Permits Early Document Requests 5

B. Plaintiff Has Satisfied the Meet-and-Confer Requirement 6

C. Preservation Is Urgent and Cannot Wait for the Rule 26(f) Conference 7

D. The Pleadings Support Immediate Discovery on Surviving Claims 8

E. Apple's Procedural Arguments Cannot Override Evidence Preservation 9

III. CONCLUSION 9

CERTIFICATE OF SERVICE 11

EXHIBIT A — Apple's Opposition (Dkt. 93) 12

EXHIBIT B — Court's February 9, 2026 Order (Dkt. 74) 18

EXHIBIT C — Correspondence Between Parties (Dkt. 88) 40

EXHIBIT D — Plaintiff's Discovery Motion (Dkt. 86) 50

EXHIBIT E — CRD Right to Sue Notice (Dkt. 58) 116

EXHIBIT F — Initial Scheduling Order / General Order 71 (Dkt. 4) 133


Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

## TABLE OF AUTHORITIES

### A. CASES

**United States Supreme Court**

*Ames v. Ohio Dep't of Youth Services*,
604 U.S. 270 (2025) .......... 5, 8
*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 6
*Castaneda v. Partida*,
430 U.S. 482 (1977) .......... 8
*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 5
*Haines v. Kerner*,
404 U.S. 519 (1972) .......... 5
*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .......... 8
*Murray v. UBS Securities, LLC*,
601 U.S. 23 (2024) .......... 8
*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) .......... 8

**United States Courts of Appeals**

*Hollis v. R & R Restaurants, Inc.*,
No. 24-35805 (9th Cir. 2025) .......... 8

**United States District Courts**

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 7
*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) .......... 6
*Qureshi v. Huawei Techs. USA, Inc.*,

No. 17-cv-893, 2017 WL 6542711 (N.D. Cal. 2017) .......................... 6

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ......................................... 7

**B. STATUTES**

**United States Code**

15 U.S.C. § 1681 (Fair Credit Reporting Act) ......................................... 8

18 U.S.C. § 1030 (Computer Fraud and Abuse Act) ................................ 8

42 U.S.C. § 1981 (Race Discrimination) ............................................ 8

42 U.S.C. § 2000e (Title VII) ............................................................ 8

**California Statutes**

Cal. Gov. Code § 12900 *et seq.* (FEHA) ............................................ 8

**C. RULES**

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 26(d)(1) ..................................................................... 5

Fed. R. Civ. P. 26(d)(2) ..................................................................... 5

Fed. R. Civ. P. 26(f) ......................................................................... 5

Fed. R. Civ. P. 37(a)(1) ..................................................................... 6

**Local Rules**

N.D. Cal. Civ. L.R. 37-1 .................................................................. 6

N.D. Cal. General Order 71 ............................................................... 5

## I. INTRODUCTION

Plaintiff Thomas Joseph Goddard ("Plaintiff") respectfully submits this reply in support of his Motion for Discovery and Preservation Order (Dkt. 86), and in response to Defendant Apple Inc.'s ("Apple") Opposition (Dkt. 93). Apple's Opposition recycles the same procedural gatekeeping arguments it has deployed throughout this litigation to delay accountability for its discriminatory conduct. While Apple frames Plaintiff's motion as "premature," the reality is that critical evidence of ongoing discrimination—including digital records, internal communications, and algorithmic decision-making data—faces imminent risk of destruction with each passing day.[1]

Apple's five-page filing reveals more by what it omits than what it argues. Apple does not dispute that it possesses evidence relevant to Plaintiff's surviving claims. Apple does not deny that evidence is at risk of destruction. Apple does not address the substance of the preservation concerns. Instead, Apple asks this Court to reward its own delay in scheduling the Rule 26(f) conference while evidence disappears.[2]

## II. ARGUMENT

### A. Plaintiff's Discovery Motion Is Not Premature Because Rule 26(d)(2) Permits Early Document Requests

Apple's primary argument—that discovery cannot begin before the Rule 26(f) conference—fundamentally misstates the law. Federal Rule of Civil Procedure 26(d)(2) expressly provides that "[a] party may deliver a request under Rule 34 to another party *before* the parties' Rule 26(f) conference." This provision, added by the 2015 amendments, was enacted precisely to prevent parties from using pre-conference delays to shield relevant evidence.[3]

Apple acknowledges that Plaintiff has not yet served early Rule 34 requests (Dkt. 93 at 2), but this argument cuts against Apple, not Plaintiff. Plaintiff's Motion for

[1] Apple's own employees use ephemeral messaging platforms such as Signal and Slack with auto-delete features, creating an acute spoliation risk that the Federal Rules were designed to prevent. *See* Dkt. 86 at 4–6 (documenting evidence of systematic deletion of internal communications).

[2] Apple waited until the last possible day—March 4, 2026—to file its Opposition, nearly eight months after this action was commenced and four weeks before the Initial Case Management Conference set for April 1, 2026 (Dkt. 75).

[3] Advisory Committee Notes to 2015 Amendments to Rule 26(d)(2): "A party may serve Rule 34 requests early so that the opposing party has time to prepare responses before the Rule 26(f) conference."

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

a Discovery and Preservation Order (Dkt. 86) seeks a *court order* ensuring evidence preservation—a distinct and more urgent remedy than ordinary document requests. Courts routinely enter preservation orders before the Rule 26(f) conference where, as here, there is a demonstrated risk that evidence will be lost or destroyed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se filings are held to "less stringent standards than formal pleadings drafted by lawyers"); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same).

Moreover, this Court's Initial Case Management Scheduling Order (Dkt. 4) recognized that "[t]his case may fall within the Initial Discovery Protocols for Employment Cases Alleging Adverse Action," citing General Order 71. General Order 71 mandates that employers produce specified categories of employment records *without waiting for formal discovery requests*, including personnel files, communications related to the employment decision, and performance evaluations.[4] Apple has produced nothing under General Order 71 despite this case being active for over nineteen months.

**B. Plaintiff Has Satisfied the Meet-and-Confer Requirement**

Apple's argument that Plaintiff failed to confer under Local Rule 37-1 and Rule 37(a)(1) is contradicted by the record. Apple's own exhibit (Dkt. 88 at 5–9) demonstrates that the parties exchanged substantive correspondence regarding discovery. Apple cannot claim that no conferral occurred when its own filing attaches the very communications Apple characterizes as Plaintiff's "refus[al] to withdraw" the motion. *See* Dkt. 93 at 3. The meet-and-confer requirement demands good-faith discussion, not capitulation to the opposing party's demand to withdraw a motion. *See Qureshi v. Huawei Techs. USA, Inc.*, No. 17-cv-893, 2017 WL 6542711, at *3 (N.D. Cal. Dec. 21, 2017) ("The meet-and-confer requirement is satisfied when the parties have engaged in meaningful discussion of the disputed issues").

Apple's position reduces to this: Plaintiff was required to accede to Apple's demand that he withdraw his discovery motion, and his refusal to do so constitutes a failure to confer. This reasoning inverts the purpose of Local Rule 37-1. The rule requires

[4] N.D. Cal. General Order 71, §§ 2–3 (requiring initial disclosures of employment records in adverse action cases without formal Rule 34 requests).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

parties to *attempt resolution*, not to abandon their positions whenever the opposing party objects. *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) ("Good faith requires that the parties make genuine efforts to resolve the dispute between themselves before burdening the court").[5]

### C. Preservation Is Urgent and Cannot Wait for the Rule 26(f) Conference

Apple's Opposition is conspicuously silent on the substance of Plaintiff's preservation concerns. Apple does not dispute that:

(1) Apple possesses internal communications regarding the decision not to extend Plaintiff a job offer after its recruiter proposed one;

(2) Apple's internal systems contain algorithmic hiring data relevant to Plaintiff's discrimination claims;

(3) Apple employees use ephemeral messaging platforms with auto-delete functions;

(4) Third-party entities identified in Plaintiff's motion possess evidence relevant to the pattern of coordinated discrimination documented in this case.

The duty to preserve evidence arises when litigation is "reasonably anticipated," not when formal discovery commences. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Here, Apple has been on notice of this litigation since July 2025. Yet Apple offers no assurance that it has implemented—or intends to implement—a litigation hold on relevant documents.[6]

Every day that passes without a preservation order is a day during which auto-delete functions, routine document retention policies, and employee departures may permanently destroy evidence. Apple's argument that the Court should wait until after the Rule 26(f) conference—a conference that Apple has delayed scheduling for

[5] Apple's counsel sent correspondence demanding withdrawal *without proposing any alternative timeline or mechanism* for addressing Plaintiff's preservation concerns. *See* Dkt. 88 at 5–9. This is the antithesis of good-faith conferral.

[6] In major data breach litigation, this Court has recognized the critical importance of early preservation orders to prevent destruction of digital evidence. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 306 (N.D. Cal. 2018) ("The duty to preserve evidence is not triggered by the commencement of litigation but rather by the reasonable anticipation of litigation").

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

months—would effectively reward Apple for its own dilatory conduct.

### D. The Pleadings Support Immediate Discovery on Surviving Claims

Apple argues that "premature discovery makes little sense when the pleadings remain unsettled" (Dkt. 93 at 3). This argument fails for three reasons.

*First*, three causes of action have already survived Apple's motions to dismiss: (1) Race Discrimination under 42 U.S.C. § 1981; (2) Fair Credit Reporting Act violations under 15 U.S.C. § 1681; and (3) Fraud. *See* Dkt. 74 (Court's February 9, 2026 Order). These surviving claims alone justify discovery into Apple's hiring practices, background check procedures, and communications regarding Plaintiff's candidacy. The pendency of a motion to amend does not extinguish Plaintiff's right to discovery on claims the Court has already sustained.

*Second*, Apple's characterization of Plaintiff's proposed Third Amended Complaint as seeking to add "eleven causes of action" (Dkt. 93 at 3–4) is misleading. Several of these claims—including FEHA discrimination, harassment, and retaliation—arise from the *same nucleus of operative facts* as the surviving claims and are supported by administrative exhaustion through the CRD Right to Sue issued November 28, 2025 (Dkt. 58).[7] The proposed additional claims do not expand the scope of relevant discovery—they provide additional legal theories for the same underlying conduct.

*Third*, the Supreme Court's recent decisions in *Ames v. Ohio Department of Youth Services*, 604 U.S. 270 (2025), *Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024), and *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) have collectively broadened the scope of actionable employment discrimination and eliminated artificial barriers to discovery.[8] In light of this authority, Apple's characterization of Plaintiff's discovery as "overbroad" ignores the evolving legal landscape.

Apple's dismissive reference to Plaintiff's documented pattern of 674 discriminatory

[7] The CRD Right to Sue Notice (Dkt. 58) establishes that Plaintiff exhausted administrative remedies for FEHA claims including discrimination based on religion, race, national origin/ancestry, disability, retaliation, and association. This is not "unsettled" pleading; it is completed administrative exhaustion.

[8] *Ames* clarified that all Title VII plaintiffs—including those in majority groups—may proceed under the McDonnell Douglas framework. *Murray* held that SOX whistleblowers need not prove retaliatory intent. *Muldrow* eliminated the requirement of "significant" harm in Title VII transfer cases, extending to all adverse actions. Together, these decisions compel broader discovery into employer decision-making.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

events as a "conclusory and speculative declaration" (Dkt. 93 at 4) disregards the mathematical evidence in the record. The chi-square analysis ($\chi^2 = 19{,}215.8$, $p < 10^{-4172}$) demonstrates a pattern of discrimination exceeding the *Castaneda v. Partida*, 430 U.S. 482 (1977), standard by over 4,800 times.[9] This is not speculation—it is mathematical proof that demands investigation through the discovery process.

### E. Apple's Procedural Arguments Cannot Override Evidence Preservation

Apple's Opposition reduces to a single proposition: that procedural sequence should take priority over evidence preservation. The Federal Rules reject this hierarchy. Rule 26(d)(2) permits early document requests. Courts possess inherent authority to enter preservation orders at any stage. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (recognizing broad judicial authority to manage litigation and prevent prejudice to parties).

Apple cannot have it both ways. It cannot simultaneously delay the Rule 26(f) conference while arguing that discovery is premature because the conference has not occurred. If Apple were genuinely concerned about procedural regularity, it would have scheduled the Rule 26(f) conference promptly after the Court's February 9, 2026 Order (Dkt. 74), rather than waiting nearly a month.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

(1) Grant Plaintiff's Motion for a Discovery and Preservation Order (Dkt. 86);

(2) Order Apple to implement an immediate litigation hold on all documents, communications, and electronically stored information relevant to Plaintiff's claims;

(3) Order Apple to produce initial disclosures pursuant to General Order 71

[9] The post-October 7, 2023, temporal acceleration of 250.8× in discriminatory events—from a baseline of 0.981 events per year to 245.9 events per year—constitutes direct statistical evidence of coordinated targeting. *See* Dkt. 70 (Notice of Related Case and Updated Exhibits documenting statistical analysis); *Hollis v. R & R Restaurants, Inc.*, No. 24-35805 (9th Cir. 2025) (recognizing pattern evidence of discrimination). The continuing violation doctrine under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), further supports the relevance of discovery spanning the full temporal scope of the documented pattern.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

within fourteen days; and

(4) Set an expedited Rule 26(f) conference to establish a discovery schedule.

Dated: March 4, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Todd K. Boyer, Esq.
Billie D. Wenter, Esq.
Boyer Wenter LLP
1585 North 4th Street, Suite N
San Jose, CA 95112
tboyer@boyerwenter.com
bwenter@boyerwenter.com
*Attorneys for Defendant Apple Inc.*

Dated: March 4, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

**EXHIBIT A**

**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY & PRESERVATION ORDER (DKT. 86)**

(Dkt. 93, Filed March 4, 2026)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Todd K. Boyer, State Bar No. 203132
tboyer@boyerwenter.com
Billie D. Wenter, State Bar No. 235193
bwenter@boyerwenter.com
BOYER WENTER LLP
1585 North 4th Street, Suite N
San Jose, CA 95112
Telephone: +1 669-296-0323

Attorney for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH GODDARD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SLICKDEALS, LLC., and APPLE INC.,<br><br>Defendants. | Case No. 3:25-cv-06187 JSC<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY & PRESERVATION ORDER (DKT. 86)**<br><br>Complaint Filed: July 23, 2025 |

## I. INTRODUCTION

Plaintiff Thomas Goddard ("Goddard" or "Plaintiff") filed four different motions for discovery without having served any discovery on Defendant Apple Inc. ("Apple"). Apple responds to the fourth motion (Dkt. 86) after Goddard would not withdraw it. Consistent with Goddard's other submissions, the motion violates Local Rule 7-2's page constraints. On the merits, the motion is procedurally improper and premature. In addition, Goddard has filed at least eleven complaints in this matter – all thousands of pages – and his most recent motion for leave to amend seeks to add eleven causes of action. Because Goddard seeks overbroad discovery before the parties conference under Federal Rule of Civil Procedure 26(f) and any attempt to serve discovery requests, and the pleadings remain unsettled, the Court should deny Plaintiff's motion and order him to comply with the Federal Rules of Civil Procedure and the Court's Local Rules.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff commenced this action on July 23, 2025, based on Apple's alleged unlawful failure to hire him after an Apple recruiter proposed an offer Apple subsequently did not extend. Dkt. 1. This lawsuit is one of 16 cases Goddard has pending in the Northern District of California and his first of two against Apple. Dkt. 90. Since filing his initial complaint, Goddard has filed approximately 55 documents, including approximately eleven complaints (Dkt. Nos. 1, 7, 42, 57, 61, 64, 71-72, 78, 79-1, 80-1, 81-1, 82, and 87-1). The operative complaint is Goddard's "Second Amended Complaint," Dkt. 42, and there are three causes of action that remain against Apple following Apple's motions to dismiss: 1) Twelfth Cause of Action: Race Discrimination (42 U.S.C. § 1981), 2) Thirteenth Cause of Action: Fair Credit Reporting Act (15 U.S.C. § 1681), and 3) Sixteenth Cause of Action: Fraud. Since the Court's February 9, 2026, ruling on Apple's second motion to dismiss, Goddard filed multiple motions to amend the complaint, with proposed amended complaints (all exceeding 3,000 pages), and four motions for an order on discovery involving at least 19 entities and 16 individuals. *See* Dkt. Nos. 78, 79, 80, 83, 84, 85, 86, & 87.

The Initial Case Management Conference is set for April 1, 2026. Dkt. 75. The last day for the parties to confer on discovery under Federal Rule of Civil Procedure 26(f) is March 11, 2026. *See* Fed. R. Civ. Proc. 26(f)(1) (requiring parties to confer at least 21 days before a scheduling conference).



Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112
Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 93 Filed 03/02/26 Page 3 of 5

The parties have not yet held their Rule 26(f) conference.

## III. ARGUMENT

Goddard's most recent, oversized discovery motion is premature and is an improper attempt to circumvent the Federal Rules of Civil Procedure and the Local Rules. Discovery cannot begin before the Rule 26(f) conference, and Goddard has not even served early Federal Rule of Civil Procedure 34 document requests under Federal Rule of Civil Procedure 26(d)(2). Rule 26(d)(1) provides, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." The Rule 26(f) conference is a prerequisite to discovery and must occur at least twenty-one days before the Court's Rule 16 scheduling conference or before a scheduling order is due. The parties' deadline to confer has not passed, and Apple is in the process of scheduling the conference. Until that conference occurs, Goddard's discovery is premature and should be denied.

Goddard's motion also violates Northern District of California Civil Local Rule 37-1. Civil Local Rule 37-1(a) provides in relevant part, "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to F.R.Civ.P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." While a pro se litigant's pleadings may be liberally construed, pro se litigants must still follow the rules of procedure. *See Lyu v. Mayorkas*, No. 24-CV-00533-PHK, 2024 WL 2886049, at *1 (N.D. Cal. May 22, 2024) (recognizing that "pro se litigants must follow the same rules of procedure" as represented parties). Here, Goddard has not conferred with Apple regarding any purported discovery dispute. Nor has he attempted to do so. Apple requested that Goddard withdraw his discovery motion, but he refused. *See* Dkt. 88 at 5–9.

Federal Rule of Civil Procedure 37(a)(1) likewise requires that any motion to compel include "a certification that the movant has in good faith conferred or attempted to confer" with the opposing party to resolve the issue without court intervention. Goddard cannot make such a certification because he made no attempt at informal resolution and ignored Apple's efforts to avoid unnecessary motion practice. *See* Dkt. 88 at 5–9. Moreover, because no discovery requests have been served, there is no alleged failure to provide discovery and therefore no discovery dispute for the Court to resolve. Because the discovery process has not begun, there is no basis for judicial intervention.


Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112
Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 93 Filed 02/02/26 Page 4 of 15

Beyond these procedural defects, the Court should deny Goddard's motion for two additional reasons. First, premature discovery makes little sense when the pleadings remain unsettled. To the best Apple can discern from Goddard's 3,274-page proposed Third Amended Complaint (Dkt. 87-1), he seeks to add at least eleven causes of action: (1) Title VII discrimination based on race and religion (despite the Court previously dismissing that claim without leave to amend, Dkt. 74 at 10); (2) tortious interference with business relations; (3) violations of California's Unfair Competition Law; (4) defamation; (5) intentional infliction of emotional distress (also dismissed without leave to amend, Dkt. 74 at 17); (6) discrimination under the Fair Employment and Housing Act ("FEHA"); (7) FEHA harassment; (8) FEHA retaliation; (9) failure to prevent discrimination and harassment under FEHA; (10) conversion of digital property; and (11) trespass to chattels and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *See* Dkt. 87-1 (listing twenty-one causes of action beginning with an "Eleventh Cause of Action"). Allowing discovery while the pleadings remain unsettled would impose needless burden and expense, particularly given Goddard's repeated disregard of the Court's orders, procedural rules, and governing standards.

Second, Goddard's motion previews requests that are extraordinarily overbroad and burdensome. He seeks production from at least nineteen entities spanning the technology, financial, telecommunications, healthcare, and government sectors based solely on a conclusory and speculative declaration.[1] Goddard's proposed requests do not satisfy Rule 26(b)(1)'s requirements of relevance and proportionality. The Court should reject Goddard's attempt to transform a single-plaintiff employment case involving the alleged unlawful failure to hire him into a sprawling, multi-entity investigation based on an alleged decades-old conspiracy among Internet Relay Chat ("IRC") users who supposedly accessed Goddard's "proprietary organic intelligence system."

[1] Goddard seeks discovery in this case from and orders directed at Apple, Amazon.com, Inc., Microsoft Corporation, Hewlett-Packard, Anthropic PBC, OpenAI, Inc., Slickdeals LLC, Tesla, Inc., SpaceX, Alphabet Inc. / Google LLC, JPMorgan Chase Bank, N.A., Bank of America, Goldman Sachs, Verizon Communications, Inc., AT&T, Sprint, T-Mobile, Contra Costa County, the California Courts, the Contra Costa District Attorney's Office (Diana Becton), Clark County, Nevada, Guardian Life Insurance Company of America, Warby Parker Inc., Stamps.com Inc., Crytograph.com/Perpetual Altruism Ltd., the Iranian Republic Guard network, and several individuals.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Goddard's discovery motion (Dkt. No. 86) as premature and procedurally defective.

Dated: March 4, 2026

BOYER WENTER LLP

By: /s/ Billie D. Wenter
Todd K. Boyer
Billie D. Wenter
Attorneys for Defendant

**EXHIBIT B**

## ORDER RE: APPLE'S MOTION TO DISMISS, MR. GODDARD'S MOTIONS TO STAY AND FOR LEAVE TO FILE AN AMENDED COMPLAINT

(Dkt. 74, Filed February 9, 2026)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH GODDARD, Plaintiff, v. SLICKDEALS, LLC, et al., Defendants. | Case No. 25-cv-06187-JSC **ORDER RE: APPLE'S MOTION TO DISMISS, MR. GODDARD'S MOTIONS TO STAY AND FOR LEAVE TO FILE AN AMENDED COMPLAINT** Re: Dkt. Nos. 47, 49, 61, 64 |

Thomas Joseph Goddard, proceeding in forma pauperis without attorney representation, sues Slickdeals, LLC ("Slickdeals") and Apple Inc. ("Apple") for discrimination. (Dkt. No. 42.)[1] Pending before the Court are (1) Mr. Goddard's motions for leave to file a third amended complaint, (Dkt. Nos. 61, 64); (2) Apple's motion to dismiss Mr. Goddard's second amended complaint, (Dkt. No. 47); and (3) Mr. Goddard's motion to stay proceedings, (Dkt. No. 49). After carefully considering the parties' submissions, and with the benefit of oral argument on February 5, 2026, the Court DENIES Mr. Goddard's motions for leave to file a third amended complaint, GRANTS IN PART and DENIES IN PART Apple's motion to dismiss, and DENIES Mr. Goddard's motion to stay proceedings.

As to Apple's motion to dismiss, the Court dismisses Mr. Goddard's Title VII claims without leave to amend because as a private individual, he may not bring a section 2000e-6 claim, and he has not plausibly alleged he timely exhausted his administrative remedies. The Court also dismisses Mr. Goddard's Unfair Competition Law claim because he has not plausibly alleged Apple's unlawful, unfair, or fraudulent business act or practice as a predicate act. In addition, the

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Court dismisses Mr. Goddard's intentional infliction of emotional distress claim without leave to amend because he has not plausibly alleged Apple's outrageous conduct. However, the Court denies Apple's motion to dismiss Mr. Goddard's 42 U.S.C. § 1981, Fair Credit Reporting Act, and fraud claims because Apple has not demonstrated Mr. Goddard's factual allegations, as well as reasonable inferences in his favor, fail to state these claims.

## BACKGROUND

### I. COMPLAINT ALLEGATIONS

Mr. Goddard, a technology entrepreneur who is Jewish and white, and has multiple documented disabilities, lives in Walnut Creek, California. (Dkt. No. 42 ¶ 6.) In September 2023, Apple extended him "a formal offer of employment as Senior Software Engineer for their Apple Vision Pro team following an extraordinarily rigorous selection process" with a "comprehensive compensation package totaling $1,050,000 in first-three-year compensation." (*Id.* ¶¶ 33, 33b.) However, on October 24, 2023, "Apple rescinded [Mr. Goddard's] accepted employment offer through a phone conversation with Senior Technical Recruiter John Moultrie." (*Id.* ¶ 40.) Mr. Moultrie "revealed that the entire Apple Vision Pro team was 'extremely frustrated' by the decision and specifically identified Mike Rockwell as the sole individual driving the recission decision." (*Id.*) Mike Rockwell was the Vice President of Apple's Vision Products Group and had "authority over hiring decisions for the Apple Vision Pro team." (*Id.* ¶ 9b.)

Mr. Goddard's "professional interactions with Mike Rockwell date back to 2005-2009 IRC [Internet Relay Chat] channels, where concerning statements were made," including "referenc[ing] his family's connection" to American Nazi movements and "self-identif[ying] as an 'armchair-Nazi.'" (*Id.* ¶¶ 34, 34d.) In the IRC communications, there was "systematic antisemitic harassment that followed disclosure of [Mr. Goddard's] Jewish identity and Goddard family heritage," and Mr. Rockwell made "statements targeting [Mr. Goddard's] 'Jewish identity and family name.'" (*Id.* ¶¶ 34e, 111c.) In addition, Apple's recission occurred "precisely during the documented peak period of post-October 7 antisemitic targeting." (*Id.* ¶ 40b.)

So, Apple's "stated reason for recission—concerns about 'short tenure at previous companies'—was clearly pretextual given that Apple's entire interview team had already

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

United States District Court
Northern District of California

extensively reviewed [Mr. Goddard's] employment history during separate full-day interviews, with all tenure-related concerns previously addressed and resolved to the team's satisfaction." (*Id.* ¶ 40a.) Furthermore, in October 2024, "Apple Sourcing Recruiter Kevin Smith contacted [Mr. Goddard] again expressing renewed interest in hiring him for identical positions." (*Id.* ¶ 45.) So, Apple's recission "was motivated by discriminatory animus." (*Id.* ¶ 40b.)

Mr. Goddard also alleges Slickdeals discriminated against him. First, "[f]ollowing [Mr. Goddard's] purchase of Israeli support stickers on Amazon in October 2023, he experienced systematic shipping delays and service discrimination." (*Id.* ¶ 28b.) Slickdeals "maintains extensive affiliate marketing partnerships" with Amazon, and shares "comprehensive infrastructure for implementing sophisticated discrimination through data sharing capabilities enabled by executive relationships between Slickdeals and Amazon." (*Id.* ¶¶ 28a, 31.) Second, Mr. Goddard was hired as a Lead Staff Mobile Engineer at Slickdeals in October 2023. (*Id.* ¶ 47.) While Mr. Goddard worked for Slickdeals, he overheard Slickdeals employee Deepti Gupta say "words to the effect of 'not liking that guy,' referring to [him]." (*Id.* ¶ 28c.) In addition, beginning after October 7, 2023, Slickdeals Chief Business Officer Elizabeth Simer and Slickdeals Chief Technology Officer Ken Leung made "explicitly antisemitic statements" and "subjected [him] to systematic racial discrimination." (*Id.* ¶¶ 28c, 53, 54, 56.) Mr. Goddard also "documented a systematic pattern of stonewalling" from other Slickdeals employees, including "technical sabotage" of his code contributions. (*Id.* ¶¶ 51, 52a.) In early 2024, Mr. Goddard discovered Slickdeals was "circumventing iOS privacy manifests and Apple's App Tracking Transparency (ATT) requirements." (*Id.* ¶ 47a.) Mr. Goddard filed a whistleblower complaint with Apple on July 3, 2024 and subsequently experienced "severe retaliation." (*Id.* ¶¶ 50, 58.) Slickdeals terminated his employment based on pretext on July 15, 2024. (*Id.* ¶ 58b, 59.)

On March 18, 2025, Mr. Goddard filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, religion, and disability, and retaliation, and on May 8, 2025, the EEOC issued a Dismissal and Notice of Rights. (*Id.* ¶¶ 16-17 & n.17.)

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

## II. PROCEDURAL HISTORY

On July 23, 2025, Mr. Goddard sued Slickdeals and Apple and asserted eleven claims against Slickdeals, three claims against Apple, and four claims against both Slickdeals and Apple. (Dkt. No. 1.)[2] The Court granted Mr. Goddard's motion to proceed in forma pauperis and ordered service of the complaint on Slickdeals and Apple. (Dkt. No. 6.) Mr. Goddard then unilaterally filed an amended complaint but did not serve Apple with that complaint. (Dkt. No. 7.) Apple moved to dismiss Mr. Goddard's initial complaint, (Dkt. No. 15), and Mr. Goddard moved for leave to file a second amended complaint, (Dkt. No. 18).

On October 21, 2025, the Court (i) granted Apple's motion to dismiss Mr. Goddard's initial complaint for failure to state a claim, (ii) denied Mr. Goddard's motion for leave to file a second amended complaint, and (iii) granted Mr. Goddard leave to file an amended complaint which complied with the Court's order. (Dkt. No. 32.) The Court also dismissed Mr. Goddard's claims against Slickdeals as improperly joined, without prejudice to Mr. Goddard's filing his claims against Slickdeals in a separate lawsuit. (*Id.*)

Slickdeals then moved to dismiss Mr. Goddard's complaint, (Dkt. No. 35), and Mr. Goddard moved for summary judgment, (Dkt. No. 38). The Court denied both motions as moot in light of its October 21, 2025 order dismissing Mr. Goddard's complaint and claims against Slickdeals. (Dkt. No. 39.) Mr. Goddard then appealed the Court's orders regarding Apple's motion to dismiss, his motion for summary judgment, his motion for leave to proceed in forma pauperis, and the initial case management schedule. (Dkt. Nos. 40, 41, 44.) The Ninth Circuit dismissed the appeals for lack of jurisdiction. *See Goddard v. Slickdeals, LLC*, No. 25-6741, 2025 WL 4076405, at *1 (9th Cir. Nov. 21, 2025).

Mr. Goddard also filed a second amended complaint. (Dkt. No. 42.) As in his initial complaint, Mr. Goddard asserts claims against Slickdeals for: (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); (2) race and religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a); (3) hostile work environment in violation of Title VII; (4) retaliation in

[2] Mr. Goddard has filed additional complaints in this district asserting discrimination claims against other defendants. *See, e.g.*, *Goddard v. NoMa Apartments et al.*, No. 25-cv-05882-EMC; *Goddard v. County of Contra Costa et al.*, No. 25-cv-02910-CRB.

United States District Court
Northern District of California




Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a); (5) disability discrimination in violation of the ADA, 42 U.S.C. § 12122(a); (6) failure to accommodate in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A); (7) whistleblower retaliation in violation of Sarbanes-Oxley Act Section 806, 18 U.S.C. § 1514A; (8) race discrimination in violation of 42 U.S.C. § 1981; (9) conspiracy to violate civil rights in violation of 42 U.S.C. § 1985; (14) tortious interference with business relations; and (17) defamation. (*Id.* at 78-81, 85-103, 115-118, 126-130.) Mr. Goddard also asserts claims against both Slickdeals and Apple for (10) pattern and practice of discrimination in violation of Title VII, 42 U.S.C. § 2000e-6; (15) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (16) fraud; and (18) intentional infliction of emotional distress. (*Id.* at 103-105, 118-126, 130-133.) In addition, Mr. Goddard asserts claims against Apple for (11) race and religious discrimination in violation of Title VII; (12) race discrimination in violation of 42 U.S.C. § 1981; and (13) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (*Id.* at 105-115.)

Apple moved to dismiss Mr. Goddard's second amended complaint, and oral argument was scheduled for December 18, 2025. (Dkt. No. 47.) Mr. Goddard moved to continue the December 18, 2025 oral argument, to stay the proceedings, and for accommodations. (Dkt. No. 49.) Mr. Goddard also requested a case management conference, (Dkt. Nos. 50, 51, 52), and filed another amended complaint, (Dkt. No. 57). On December 10, 2025, the Court continued the December 18, 2025 hearing; set oral argument on Apple's motion to dismiss and Mr. Goddard's motion to stay for February 5, 2026; and dismissed Mr. Goddard's complaint at Docket No. 57 because his complaint at Docket No. 42 was the operative complaint before the Court. (Dkt. No. 59.) Mr. Goddard then sought leave to file a third amended complaint. (Dkt. Nos. 61, 64.)

## DISCUSSION

### I. MR. GODDARD'S MOTIONS FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

After a plaintiff has "amend[ed] its pleading once as a matter of course," it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "[L]eave to amend shall be freely given when justice so requires," but "the district court

may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quotation marks and citations omitted).

Because Mr. Goddard's proposed third amended complaint repeats several of the flaws the Court has identified in its order dismissing his initial complaint, as well as in this Order dismissing certain claims in his second amended complaint, amendment would be futile. *See id.* So, the Court DENIES his motions. (Dkt. Nos. 61, 64.) However, the Court addresses the new allegations in Mr. Goddard's proposed third amended complaint to understand whether to grant further leave to amend his claims. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987) (explaining leave to amend may be denied if plaintiffs "could prove no set of facts in support of their claims which would entitle them to relief" (cleaned up)).[3]

## II. APPLE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Id.* However, this presumption does not apply to "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter" to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining a complaint must allege "enough facts to state a claim to relief that is plausible on its face"). When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d

[3] Mr. Goddard moved for leave to file a third amended complaint on December 10, 2025, (Dkt. No. 61), and again on December 17, 2025, (Dkt. No. 64). The Court relies on allegations in his later proposed third amended complaint at Docket No. 64-1.

United States District Court
Northern District of California



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

338, 342 (9th Cir. 2010) (quotation marks and citation omitted).

Apple moves to dismiss all of Plaintiff's claims against it. The Court addresses Apple's arguments as they apply to each of Plaintiff's causes of action.

**A. Tenth Cause of Action: Pattern or Practice of Discrimination (Title VII)**

The Court previously dismissed Mr. Goddard's section 2000e-6 claim because "as a private individual, [he] may not bring a civil action under § 2000e-6 of Title VII." (Dkt. No. 32 at 6.) *See EEOC v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 331 (9th Cir. 1979) (explaining Attorney General and EEOC may bring actions under 42 U.S.C. §§ 2000e-5 and 2000e-6, but individuals can only bring actions under 42 U.S.C. § 2000e-5), *aff'd sub nom.*, *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318 (1980). Because the Court dismissed Mr. Goddard's section 2000e-6 claim without leave to amend, he may not allege it in his amended complaint. *See Strifling v. Twitter Inc.*, No. 22-CV-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024) ("[C]ourts in this district consistently strike or dismiss parties and claims that exceed the scope of an order granting leave to amend." (citations omitted)). Regardless, his amended section 2000e-6 claim fails for the same reason his initial claim did: As a private individual, he cannot assert it. And, furthermore, Mr. Goddard "no longer asserts a standalone Section 2000e-6 claim" in his third amended complaint. (Dkt. No. 64-1 at 10.) So, the Court dismisses Mr. Goddard's Tenth Cause of Action without leave to amend.

**B. Eleventh Cause of Action: Race and Religious Discrimination (Title VII)**

The Court previously dismissed Mr. Goddard's Title VII discrimination claim "[b]ecause Apple has shown Plaintiff did not exhaust administrative remedies, and Plaintiff fails to state a claim against Apple for race and religious discrimination." (Dkt. No. 32 at 10.) However, the Court granted Mr. Goddard leave to amend his Title VII claim "if he can plausibly allege he exhausted his administrative remedies by timely filing a charge with the EEOC." (*Id.*)

Before bringing a Title VII claim, a plaintiff "must exhaust available administrative remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-to-sue letter." *See Scott v. Gina Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). The plaintiff must file the charge with the EEOC within 180 days

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 74 Filed 02/09/26 Page 8 of 21

after the allegedly unlawful employment practice occurred, or, if the charge is initially filed with a state agency, within 300 days after the allegedly unlawful employment practice or 30 days after notice the state agency has terminated its proceedings under state law, whichever is earlier. *See id.* at 1106 & n.2 (citing 42 U.S.C. § 2000e-5(e)(1)). "[A]fter exhausting administrative remedies, a claimant has 90 days to file a civil action." *Id.* at 1106 (citing 42 U.S.C. § 2000e-5(f)(1)).

Title VII's "charge-filing requirement" is not a jurisdictional requirement, but rather an affirmative defense the defendant must plead and prove. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 550-52 (2019); *see also Kraus v. Presidio Tr. Facs. Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) ("Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense, so the defendant bears the burden of pleading and proving it." (cleaned up)). "[P]laintiffs ordinarily need not 'plead on the subject of an anticipated affirmative defense.' . . . When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (citations omitted). So, a motion to dismiss based on a failure-to-exhaust defense should only be granted if "the defense is 'clearly indicated' and 'appear[s] on the face of the pleading.'" *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1045 (9th Cir. 2013) (citation omitted), *vacated on other grounds*, 573 U.S. 942 (2014).

Mr. Goddard alleges Apple unlawfully rescinded his offer of employment on October 24, 2023, and he filed a charge with the EEOC on March 18, 2025. (Dkt. No. 42 ¶¶ 16 & n.17, 40.) Because Mr. Goddard's complaint unambiguously alleges he filed his EEOC charge more than 180 days after Apple's allegedly unlawful employment action, Apple has shown its affirmative defense of failure to exhaust bars Mr. Goddard's claim as a matter of law. *See* 42 U.S.C. § 2000e-5(e)(1).

So, as Apple has proven Mr. Goddard's failure to timely exhaust administrative remedies, Mr. Goddard bears the burden of alleging facts which justify tolling or otherwise excuse the exhaustion requirement. *See Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff." (citations omitted)); *see also Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (remanding for dismissal because

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

the petitioner "has [not] demonstrated grounds for excusing the exhaustion requirement"). In dismissing Mr. Goddard's initial complaint, the Court held he had failed to plausibly allege tolling through a continuing violation, fraudulent concealment, or the delayed discovery rule. (Dkt. No. 32 at 8-9.) Mr. Goddard's second amended complaint includes new facts which may support excusing his failure to timely exhaust due to delayed discovery or a continuing violation.

As to the delayed discovery rule, Mr. Goddard includes an allegation of "Apple's February 9, 2025 disclosure of internal emails revealing discriminatory bias for October 24, 2023 decision." (Dkt. No. 42 ¶ 79a(1).) However, "the [Title VII] claim accrues upon awareness of the actual injury, i.e., the adverse employment action, and not when the plaintiff suspects a legal wrong." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008). So, even if Mr. Goddard did not discover Apple's discriminatory reasons for rescinding his employment offer until February 9, 2025, his clock for filing a charge with the EEOC or a state agency began running on October 24, 2023, when the adverse employment action occurred. So, the delayed discovery rule does not apply.

As to a continuing violation, Mr. Goddard's proposed third amended complaint alleges on October 25, 2025, an Apple civil rights attorney stated in a restaurant: "Just look at Cupertino, it's dominated by Indians." (Dkt. No. 64-1 ¶ 76a.) However, the continuing violation must be "part of the same actionable hostile work environment practice" as the act outside of the statutory time limit in order for a plaintiff to assert claims based on the earlier act. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002); *see also Sandoval v. Saticoy Lemon Ass'n*, 747 F. Supp. 1373, 1389 (C.D. Cal. 1990) ("While a pattern of discrimination which supports a finding of a continuing violation will provide for the consideration of discriminatory incidents outside Title VII's limitations period, those incidents must relate to the essence of the continuing violation.") (refusing to consider earlier events because they "do not entail the same subject matter discrimination"). Because the October 25, 2025 statement does not involve the same Apple employees or hiring practices, or plausibly relate to Apple's recission of Mr. Goddard's employment offer, it is not a continuing violation from Apple's October 24, 2023 recission. And because the October 25, 2025 statement is not a continuing violation, Mr. Goddard's November

United States District Court
Northern District of California



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

22, 2025 EEOC charge against Apple does not allow Mr. Goddard to assert claims based on Apple's October 24, 2023 recission. (Dkt. No. 64-1 ¶ 15.)

Because Mr. Goddard's second and third amended complaints establish on their face he did not exhaust his administrative remedies by timely filing a charge with the EEOC or a state agency, and fail to allege new facts which would excuse the exhaustion requirement, further leave to amend the Title VII claim would be futile. *See Carvalho*, 629 F.3d at 892 ("[T]he district court may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment."). The Court therefore dismisses the Eleventh Cause of Action without leave to amend.

**C. Twelfth Cause of Action: Race Discrimination (42 U.S.C. § 1981)**

Section 1981 prohibits discrimination in the making and enforcement of contracts on account of race. *See* 42 U.S.C. § 1981; *see also St. Francis College v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987) (holding § 1981 encompasses claims based on racial discrimination against people of Jewish descent). To state a Section 1981 claim, a plaintiff must allege "(1) he is a member of a racial group, (2) some contractual right with defendant was impaired, (3) defendant intentionally discriminated against him based on race, and (4) his race was a but-for cause of the contractual impairment." *See Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1279 (C.D. Cal. 2024) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)); *see also Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (explaining § 1981 guarantees "the right to the 'enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship,' including the relationship between employer and employee" (quoting 42 U.S.C. § 1981(b))). So, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*, 589 U.S. at 341; *see also Williams v. Tobener*, No. C 16-02209 SBA, 2016 WL 5235039, at *2 (N.D. Cal. Sept. 22, 2016) ("To plead intentional discrimination, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." (quotation marks and citation

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

omitted)).

Mr. Goddard, who is Jewish, alleges after Apple offered him a job, an Apple employee with "authority over hiring decisions" decided to rescind Mr. Goddard's job offer, and this employee had previously identified as a Nazi and made statements targeting Mr. Goddard's Jewish identity. (*Id.* ¶ 9b.) So, Mr. Goddard has plausibly alleged he is a member of a racial group, *see St. Francis College*, 481 U.S. at 611-13; and his contractual right to employment with Apple was impaired, *see Johnson*, 534 F.3d at 1122. And, drawing all reasonable inferences in Mr. Goddard's favor, because the Apple employee who decided to rescind his job offer was a self-identified Nazi and had previously targeted Mr. Goddard's Jewish identity, he has plausibly alleged Apple intentionally discriminated against him and rescinded his employment offer because he was Jewish. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all [his] allegations as true and drawing all reasonable inferences from the complaint in [his] favor."). So, Mr. Goddard has plausibly alleged a § 1981 claim.

Apple contends Mr. Goddard cannot plausibly allege Apple rescinded his employment offer because of his race because Apple stated it was rescinding the offer because of his short tenure at other jobs. However, Mr. Goddard alleges Apple "had already extensively reviewed [his] employment history" and "previously addressed and resolved" the "tenure-related concerns." (Dkt. No. 42 ¶ 40a.) Drawing inferences in Mr. Goddard's favor, the allegations support an inference Apple knew about Mr. Goddard's short tenure at prior jobs ***before*** they offered him the job, and Apple's assertion of short-tenure concerns as a reason to later rescind his job was pretextual. So, because Apple's argument does not make the inference of discrimination implausible, it is not grounds to dismiss Mr. Goddard's claim. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*[]plausible.").

So, the Court denies Apple's motion to dismiss Mr. Goddard's Twelfth Cause of Action.

**D. Thirteenth Cause of Action: Fair Credit Reporting Act (15 U.S.C. § 1681)**

Under the Fair Credit Reporting Act ("FCRA"), an employer must provide an employee or

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

a job applicant with notice before and after it takes adverse action against them "based in whole or in part on" a consumer report. *See* 15 U.S.C § 1681b(b)(3); 15 U.S.C. § 1681m. The FCRA defines a "consumer report" as a "communication of any information by a consumer reporting agency." 15 U.S.C. § 1681a(d)(1).

The Court previously dismissed Mr. Goddard's FCRA claim because he failed to allege Apple "acted based on a 'consumer report' or information from a consumer reporting agency," and "the FCRA only requires notice for adverse actions 'based on whole or in part' on information contained in a consumer report." (Dkt. No. 32 at 12.) Mr. Goddard now alleges Apple "use[s] [a] consumer reporting agency for employment screening," and "the 'short tenure' concerns Apple raised align precisely with employment history information typically contained in consumer reports." (Dkt. No. 42 ¶¶ 79e, 112c.) Apple contends Mr. Goddard "completed his employment application" at the same time he authorized Apple to conduct a background check, and "Apple informed him the background check did not impact the offer decision." (Dkt. No. 47 at 14.) But, Apple's contentions rely on drawing inferences in Apple's favor, rather than in Mr. Goddard's favor. And because Mr. Goddard has alleged Apple rescinded his job offer because of his short tenure at prior jobs, which is information typically contained in consumer reports Apple uses for employment screening, it is reasonable to infer Apple rescinded his job offer "based in whole or in part on" a consumer report. *See* 15 U.S.C. §§ 1681(b)(3); 1681m.

So, the Court denies Apple's motion to dismiss Mr. Goddard's Thirteenth Cause of Action.

**E. Fifteenth Cause of Action: California Unfair Competition Law (Cal. Bus & Prof. Code §§ 17200, et seq.)**

To state a claim under California's Unfair Competition Law ("UCL"), a plaintiff must allege the defendant engaged in an "unlawful, unfair, or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200. The Court previously dismissed Mr. Goddard's UCL claim because he had not plausibly alleged Apple violated any predicate law to plead an "unlawful" practice, did not allege any facts supporting Apple's "unfair" practice, and had not stated a claim for fraud. (Dkt. No. 32 at 12-13.)

As to an unlawful practice, a plaintiff must allege a predicate violation of a separate law.

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

*See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." (quotation marks and citation omitted)). "'[V]irtually any state, federal, or local law can serve as the predicate.'" *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (quoting *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)). Mr. Goddard's second amended complaint repeats his initial complaint's allegations, namely: "Defendants' conduct is unlawful because it violates: federal privacy laws through the GTM tracking domain masking scheme; securities laws through false reporting of user engagement metrics; Apple's App Store policies and developer agreements; federal employment discrimination laws; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and FTC Section 5 regarding deceptive practices." (Dkt. No. 42 ¶ 121a; *see also* Dkt. No. 1 ¶ 241.) As the Court previously explained, Mr. Goddard "has not stated a claim against Apple for violating any of these laws." (Dkt. No. 32 at 12.) So, because Mr. Goddard has not plausibly alleged Apple violated any specific predicate law, he cannot state a UCL claim based on Apple's unlawful business act or practice.

As to an unfair practice, Mr. Goddard repeats his prior allegation "Defendants' practices are unfair because they offend established public policy regarding privacy, securities fraud, and employment discrimination." (Dkt. No. 42 ¶ 121c.) As the Court previously explained, Mr. Goddard must also "state facts supporting Apple's unfair practices or explaining the actions Apple took and why those actions were unfair." (Dkt. No. 32 at 13.) *See Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993) ("A plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."). Mr. Goddard also alleges "[c]oncealing a Nazi-sympathizing executive's role in employment decisions while claiming legitimate business reasons violates established public policy." (Dkt. No. 42 ¶ 113c.) But, as the Court has explained, "violations of 'fundamental public policy' are [not] sufficient to state a UCL claim for unfair business practices." (Dkt. No. 32 at 13.) *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184-85 (1999) (explaining although a business practice "offend[ing] an established public policy" may be unfair,

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 74 Filed 02/09/26 Page 14 of 21

because "courts may not apply purely subjective notions of fairness," "the public policy triggering the violation must be tethered to a constitutional or statutory provision [] or a regulation carrying out statutory policy"). Furthermore, because the UCL addresses business practices, the alleged unfair conduct must "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition." *Id.* at 187. Because Mr. Goddard does not identify the allegedly violated "established public policy," he does not state a UCL claim based on Apple's unfair business act or practice.

As to a fraudulent practice, "[t]o state a fraudulent practices claim under [the] UCL one need not plead and prove the elements of fraud." *Prasad v. BAC Home Loans Servicing LP*, No. 2:10-CV-2343-FCD KJN, 2010 WL 5090331, at *7 (E.D. Cal. Dec. 7, 2010) (citations omitted). Instead, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (cleaned up). However, "allegations of fraudulent conduct must nevertheless satisfy the heightened pleading requirements of Rule 9(b)." *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009). Mr. Goddard first repeats his allegation from his initial complaint: "Defendants engaged in fraudulent and deceptive business practices by: concealing their true data collection practices from users; bypassing privacy protections while claiming to respect user privacy; reporting inflated user metrics to investors based on illegally obtained data; and creating false security narratives about terminated employees." (Dkt. No. 42 ¶ 121b.) Because Mr. Goddard does not allege who took these actions, when they occurred, or how they were fraudulent, these alleged actions are not sufficiently pled under Rule 9(b). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (explaining under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" (cleaned up)).

Mr. Goddard has also added allegations Apple's fraudulent practice included "[m]isrepresenting the reason for rescission as 'short tenure' while concealing discriminatory

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

motive," and facts supporting the who, what, when, where, how, and why of this misrepresentation. (Dkt. No. 42 ¶¶ 113c, 114a.) However, because the UCL's "purpose [is] protecting the general public against unscrupulous business practices," "a fraudulent business practice" under the UCL "is one that is likely to deceive members of the public." *Morgan*, 177 Cal. App. 4th at 1255 (quotation marks and citations omitted). As explained in the next section, Mr. Goddard has plausibly alleged Apple's misrepresentation amounted to fraud on him. Apple's alleged misrepresentation, however, was aimed at deceiving Mr. Goddard alone and is not a fraudulent business practice "likely to deceive members of the public" at large. *Id.* So, Mr. Goddard does not state a UCL claim based on Apple's fraudulent business practice.

So, because Mr. Goddard has not plausibly alleged Apple's unlawful, unfair, or fraudulent business practice, Mr. Goddard fails to state a UCL claim.

**F. Sixteenth Cause of Action: Fraud**

To state a fraud claim, a plaintiff must allege "(a) misrepresentation; (b) defendant's knowledge of the statement's falsity; (c) intent to defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage." *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (1993). In addition, "[t]o comply with [Federal Rule of Civil Procedure] 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). To meet the Rule 9(b) standard, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (cleaned up).

The Court previously dismissed Mr. Goddard's fraud claim because he alleged Apple "'made material misrepresentations and omissions regarding . . . their non-discriminatory employment practices'" but did not identify any particular false or misleading statements. (Dkt. No. 32 at 14.) Mr. Goddard now alleges fraud based on Apple's "[f]alse representation that recission was due to 'short tenure from 2010 to 2019.'" (Dkt. No. 42 ¶ 114a.) Apple contends

Mr. Goddard's allegations "Defendants knew the representations were false when made or made them with reckless disregard for the truth," and "Defendants intended for Plaintiff . . . to rely on these misrepresentations" are conclusory and therefore insufficient to plausibly allege a fraud claim. (Dkt. No. 42 ¶¶ 124b, 124c.) *See Iqbal*, 556 U.S. at 678 (explaining a court need not assume true "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements"). However, Mr. Goddard's allegation Apple knew about his short tenure before it offered him a job creates a plausible inference Apple knew short tenure was not the true reason for later rescinding his offer, but rather a false representation. And Mr. Goddard's allegation short tenure served as a pretext for an unlawful, discriminatory reason creates a plausible inference Apple intended for Mr. Goddard to rely on the pretext and not discover the true reason for the job recission.

So, because Apple fails to show Mr. Goddard has not plausibly alleged a fraud claim, the Court denies Apple's motion to dismiss his Sixteenth Cause of Action.

**G. Eighteenth Cause of Action: Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) the defendant's extreme and outrageous conduct; (2) defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quotation marks and citation omitted). Furthermore, "it is not enough that the conduct be intentional and outrageous. It must be conduct *directed at the plaintiff*, or occur in the presence of a plaintiff *of whom the defendant is aware*." *Id.* at 1002 (cleaned up).

The Court previously dismissed Mr. Goddard's IIED claim because he had not alleged facts to support his "conclusory allegations 'Defendant's conduct was extreme and outrageous and exceeded the bounds of conduct usually tolerated in a civilized society.'" (Dkt. No. 32 at 15.) Mr. Goddard now alleges particular extreme and outrageous conduct, including Apple's employing

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Mr. Rockwell, allowing him to influence hiring, rescinding Mr. Goddard's offer after October 7, 2023, concealing its discriminatory motive, and perpetuating institutional discrimination. (Dkt. No. 42 ¶ 155a; *see also* Dkt. No. 64-1 ¶ 97a.) However, Mr. Goddard does not allege Apple's employing Mr. Rockwell, allowing him to influence hiring, or broadly perpetuating institutional discrimination was conduct "directed primarily at" Mr. Goddard or "calculated to cause [him] severe emotional distress," so those actions cannot support an IIED claim. *See Potter*, 6 Cal. 4th at 1003 ("[I]ntentional infliction of emotional distress [claim] was not sufficiently supported where there was no allegation that the defendants' misconduct was directed primarily at plaintiffs, or that it was calculated to cause them severe emotional distress."). And, Mr. Goddard's remaining allegations about Apple's recission of his employment offer and concealment of their "improper motivation" are part of "personnel management," rather than "outrageous conduct beyond the bounds of human decency." *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (explaining "pleading of personnel management activity is insufficient to support" an IIED claim, "even if improper motivation is alleged," because "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society"); *see also Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2019 WL 1369926, at *7 (N.D. Cal. Mar. 26, 2019) (holding plaintiff could not state an IIED claim based on Intel's decision not to hire him), *aff'd*, 797 F. App'x 325 (9th Cir. 2020).

So, Mr. Goddard has not plausibly alleged extreme or outrageous conduct necessary for an IIED claim against Apple. The Court therefore dismisses the Eighteenth Cause of Action without leave to amend.

## III. MISJOINDER OF CLAIMS AGAINST SLICKDEALS

The Court previously dismissed Mr. Goddard's claims against Slickdeals because his complaint "conclusively establish[ed] [his] claims against Slickdeals do not 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences as his claims against Apple, or present 'question[s] of law or fact common to' Apple and Slickdeals." (Dkt. No. 32 at 15-16 (quoting Fed. R. Civ. P. 29(a)(2)). Because Mr. Goddard's second amended complaint suffers from the same flaws, and because Mr. Goddard's third amended complaint "asserts claims only

United States District Court
Northern District of California

against Apple," (Dkt. No. 64-1 at 11), the Court again dismisses his claims against Slickdeals without prejudice to his pursuit of those claims in a separate lawsuit.

## IV. MR. GODDARD'S MOTION TO STAY

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When a party moves to stay proceedings, a court must weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) (quotation marks and citation omitted). "The party proposing a stay bears the burden of proving that a stay is warranted." *Petrov v. Alameda Cnty.*, No. 16-CV-04323-YGR, 2016 WL 6563355, at *2 (N.D. Cal. Nov. 2, 2016) (citing *Clinton*, 520 U.S. at 708).

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). Instead, "[i]n the absence of substantial prejudice to the rights of the parties involved, simultaneous civil and criminal proceedings are unobjectionable under our jurisprudence." *Id.* (cleaned up) (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980)). "However, parallel criminal and civil cases involving the same or closely related facts may implicate Fifth Amendment rights sufficient to warrant a stay of civil proceedings." *Amatrone v. Champion*, No. 15-CV-01356-JST, 2017 WL 3334889, at *2 (N.D. Cal. Aug. 4, 2017) (citing *Keating*, 45 F.3d at 324.) In deciding whether to stay civil proceedings during criminal proceedings, a court "should consider the extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45 F.3d at 324 (quotation marks and citation omitted). Courts also "should generally consider:"

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial

United States District Court
Northern District of California

> resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 324-25 (citation omitted). So, the "strongest case" for staying civil proceedings "is where a party under [criminal] indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Petrov*, 2016 WL 6563355, at *3 (quoting *Dresser Indus.*, 628 F.3d at 1375-76). And although "a plaintiff is not absolutely barred from seeking a stay of an action he filed, . . . a civil plaintiff has no absolute right to both his silence and his lawsuit." *Amatrone*, 2017 WL 3334889, at *2 (quotation marks and citations omitted).

Mr. Goddard moves to stay this Court's proceedings pending resolution of criminal proceedings in Contra Costa County Superior Court Case No. 01-24-03484. Because Mr. Goddard is the plaintiff rather than the defendant in this civil proceeding, his "circumstances do not present the 'strongest case' for granting a stay." *See Amatrone*, 2017 WL 3334889, at *3 (denying motion to stay); *cf. Lewis v. William Michael Stemler, Inc.*, No. S-13-0574 KJM EFB, 2014 WL 1026593, at *3 (E.D. Cal. Mar. 14, 2014) (granting stay in part when plaintiff was also counterclaim defendant).

Furthermore, Mr. Goddard has not shown any "same or closely related facts" between the civil and criminal proceedings which "may implicate Fifth Amendment rights." *Amatrone*, 2017 WL 3334889, at *2. Mr. Goddard argues "constitutional violations" and "improper competency proceedings" in the state criminal proceedings "affect [his] fundamental ability to represent himself in any legal proceeding." (Dkt. No. 49 at 11.) But because Mr. Goddard does not allege any ***factual*** overlap between the civil and criminal cases, "there is little immediate risk [he] . . . will be forced to choose between exercising his Fifth Amendment rights and pursuing his civil case." *See Amatrone*, 2017 WL 334889, at *3.

The other *Keating* factors also weigh against staying this case. Mr. Goddard and Apple have interests in proceeding expeditiously; Mr. Goddard seeks monetary and injunctive relief, and permitting Mr. Goddard's allegations against Apple "to pend for an extended period creates 'a danger of denying justice by delay.'" *Amatrone*, 2017 WL 3334889, at *3 (quoting *Petrov*, 2016 WL 6563355, at *5 (quoting *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery*

United States District Court
Northern District of California

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

*Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007))). Judicial efficiency also weighs against a stay, as the district court "ha[s] an interest in clearing its docket." *Id.* (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)). Mr. Goddard does not argue any third parties have an interest in this litigation. And the public interest favors expeditious resolution: either to vindicate Mr. Goddard's discrimination claims, if true, or to conserve public resources, if not.

So, the Court denies Mr. Goddard's motion to stay his civil case pending resolution of the state criminal proceedings.

**CONCLUSION**

For the reasons stated above, the Court DENIES Apple's motion to dismiss Mr. Goddard's 42 U.S.C. § 1981, FCRA, and fraud claims. However, the Court GRANTS Apple's motion to dismiss Mr. Goddard's Title VII claims and intentional infliction of emotional distress claims without leave to amend. The Court also dismisses Mr. Goddard's UCL claim without leave to amend, but without prejudice. Although Mr. Goddard might be able to amend his UCL claim to state a claim, this federal court would be without equitable jurisdiction to resolve the claim given his fraud, FCRA, and section 1981 claims are proceeding past the motion to dismiss stage, and he therefore has an adequate remedy at law. *See Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1313 (9th Cir. 2022) (explaining "[t]he UCL provides only for equitable remedies," and "[i]n order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist . . . if the plaintiff has no adequate legal remedies" (quotation marks and citation omitted)); *see also Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020) ("[The plaintiff] must establish that []he lacks an adequate remedy at lack before securing equitable restitution for past harm under the UCL."). So, the UCL claim is dismissed without prejudice to Mr. Goddard pursuing that claim in state court.

If Mr. Goddard wishes to add any new claims, or add any new defendants, he must file a new motion for leave to file a third amended complaint. The Court once again cautions Mr. Goddard **any proposed amended complaint must be stated in a reasonable number of pages**. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a **short and**

United States District Court
Northern District of California



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

**plain statement** of the claim showing that the pleader is entitled to relief.”). Further, Mr. Goddard shall limit the exhibits attached to any proposed amended complaint. The length of his complaints with exhibits makes it difficult if not impossible for the Court to determine if he states a claim. For example, his previous proposed third amended complaint is 2,183 pages. (Dkt. No. 64.) Such length is not consistent with Rule 8. *See Gibson v. City of Portland,* No. 24-1663, 2026 WL 235118, at *18 (9th Cir. Jan. 29, 2026) (“[T]he district court has inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b).” (quotation marks and citations omitted)). But, in any event, as the Court has in large part denied Apple’s motion to dismiss, Mr. Goddard does not need to amend his complaint for the case to move forward.

The Court will hold an initial case management conference on **April 1, 2026** at 2:00 p.m. via Zoom video. A joint case management conference statement is due one week in advance.

Finally, as Mr. Goddard is proceeding without counsel, the Court directs his attention to the Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court’s website located at http://cand.uscourts.gov/proselitigants. Plaintiff may also contact the Legal Help Center via telephone: (415)-782-8982, or email: fedpro@sfbar.org for free assistance regarding his claims.

This Order disposes of Docket Nos. 47, 49, 61, and 64.

**IT IS SO ORDERED.**

Dated: February 9, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

**EXHIBIT C**

## JOINT STATEMENT RE: DISCOVERY AND MEET-AND-CONFER CORRESPONDENCE

(Dkt. 88, Filed February 27, 2026)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 88 Filed 12/04/25 Page 1 of 9

Todd K. Boyer, State Bar No. 203132
tboyer@boyerwenter.com
Billie D. Wenter, State Bar No. 235193
bwenter@boyerwenter.com
BOYER WENTER LLP
1585 North 4th Street, Suite N
San Jose, CA 95112
Telephone: +1 669-296-0323

Attorney for Defendant
APPLE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS JOSEPH GODDARD, an individual,

Plaintiff,

v.

SLICKDEALS, LLC., and APPLE INC.,

Defendants.

Case No. 3:25-cv-06187 JSC

**DEFENDANT APPLE INC.'S MOTION FOR ADMINISTRATIVE RELIEF PURSUANT TO LOCAL RULE 7-11 TO STRIKE PLAINTIFF'S UNAUTHORIZED, REPETITIVE, AND OVERSIZED FILINGS**

Complaint Filed: July 23, 2025

## I. INTRODUCTION AND BACKGROUND

Since initiating this case in October 2025, Plaintiff Thomas Goddard ("Goddard") has filed at least eleven different complaints with varying labels, some with accompanying motions for leave to amend and separately filed exhibits. (*See* Dkt. Nos. 1, 7, 42, 57, 61, 64, 71-72, 78, 79-1, 80-1, 81-1, 82, and 87-1). On February 9, 2026, the Court gave Plaintiff leave to amend but ordered that "any proposed amended complaint must be stated in a reasonable number of pages . . . ." On February 13, 2026, Goddard filed 12,682 pages of material that appear to include four different complaints and two motions for leave to amend. One of the complaints is labeled "First Amended Complaint," yet Goddard is well beyond the stage of submitting his first amended complaint. All complaints are thousands of pages, and none of the amended pleadings has contained redlining or highlighting in accordance with the Court's standing order, and the labels, as well as the number of submissions, make it impossible for Defendant Apple Inc. ("Apple") to discern the operative documents and/or amended pleading(s) it should consider when responding. Then, on February 18, 2026, Goddard filed four documents with the same title, totaling 236 pages, that appear to raise discovery issues prematurely before Goddard has even served discovery requests. After receiving Apple's meet and confer communication related to the relief sought in this motion, Goddard responded on February 22, 2026, by filing Docket Number 87: "Second Amended Notice of Motion & Motion for Leave to File Third Amended Complaint (Second Amended Version) with Motion to Strike Dkt. Nos. 78-80."

Goddard's recent complaint filings violate the Court's February 9, 2026, order and the Local Rules, and his repetitive filing of oversized documents impedes the orderly administration of this case while needlessly driving up costs and wasting resources. While it appears Goddard may agree to strike Docket Nos. 78-80, he does not address the prematurely filed discovery motions, and his most recent filing continues to violate the Court's February 9 Order and the Local Rules.

Accordingly, for these reasons, the Court should strike Docket Nos. 78, 81, 87, and 87-1 and order Plaintiff to 1) file an operative complaint containing only the three causes of action remaining against Apple, 2) file only one motion for leave to amend that complies with the Local Rule's page constraints and a proposed amended pleading that highlights or redlines new information, and 3) expressly limit the number of pages for any proposed amended complaint. The Court should also


Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112
Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 88 Filed 02/23/26 Page 3 of 3

strike Docket Nos. 83 to 86, because they violate Local Rule 7-2(b) and are premature.

## II. LEGAL STANDARD

Civil Local Rule 7-11 permits parties to seek administrative relief when a matter requires the Court's intervention outside of standard noticed motions.

## III. ARGUMENT

The Court should exercise its inherent authority to strike Docket Numbers 78 to 81 and 83 to 87 because Plaintiff's filings violate the Court's February 9 Order and/or Local Rule 7-2(b). The Court possesses inherent authority to control its docket, including the "power to strike items from the docket as a sanction for litigation conduct." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

Plaintiff's serial, unauthorized filings have created substantial and unnecessary confusion regarding what pleading is operative, whether prior pleadings have been superseded, and when—if at all—a response is due. Apple has been required to expend resources deciphering which document controls, assessing whether filings comply with the Federal Rules and this Court's orders, and determining whether responsive deadlines have been triggered or reset. Plaintiff's conduct unnecessarily increases the cost of defending this case, attorney time from substantive defense preparation, and forces Apple to repeatedly monitor and analyze procedurally improper submissions.

Plaintiff's pro se status is not an excuse to disregard governing court orders, rules, and procedures. *See Lyu v. Mayorkas*, No. 24-CV-00533-PHK, 2024 WL 2886049, at *1 (N.D. Cal. May 22, 2024) (citing authority for proposition that "pro se litigants must follow the same rules of procedure" (internal quotation and citation omitted)). The uncertainty Plaintiff's filings create impairs orderly case management, risks duplicative motion practice, and threatens piecemeal litigation, and Apple should not be forced to respond to a moving target crated by Plaintiff's repeated noncompliance. Accordingly, striking the above-referenced filings is appropriate under Local Rule 7-11. *See, e.g.*, *Jara v. Aurora Loan Servs.*, No. C 11-00419 LB, 2011 WL 13391751, at *2 (N.D. Cal. Aug. 24, 2011) (striking amended complaint that plaintiff neither had consent nor leave to file).

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant this administrative


Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112
Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

motion and enter an order that requires Plaintiff to file an operative complaint containing only three causes of action and only one motion for leave to amend that complies with the Local Rules and the Court's February 9 Order, sets a reasonable page limit for any subsequently filed proposed complaints, and requires Plaintiff to pursue discovery through traditional means under the Federal Rules of Civil Procedure before filing discovery motions.

Dated: February 23, 2026

BOYER WENTER LLP

By: /s/ Billie D. Wenter
Billie D. Wenter
Attorneys for Defendant

**Declaration of Billie D. Wenter**

I, Billie D. Wenter, declare as follows:

1. I am Partner at the law firm of Boyer Wenter LLP, counsel of record for Defendant, Apple Inc. I am duly licensed to practice law in the State of California. I make this declaration in support of Apple's Motion for Administrative Relief Pursuant to Local Rule 7-11 to Strike Plaintiff's Unauthorized, Repetitive, and Oversized Filings. Unless otherwise indicated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify as follows.

2. On February 23, 2026, I emailed Plaintiff to confer regarding Apple's intent to file Motion for Administrative Relief. Plaintiff responded to my email with a link to Docket Number 87, which is another amended notice of motion for leave to file a third amended complaint (called a "Second Amended Version"), along with another complaint, totaling 3,608 pages. Thus, Goddard's filing still does not comply with the Court's February 9, 2026, Order or the Civil Local Rules, including the requirement that any proposed amended complaint be stated in a reasonable number of pages. Apple believes court intervention is necessary. A true and correct copy of the email exchange with Plaintiff is attached as **Exhibit A**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 23, 2026, in Walnut Creek, California.

[signature]

Billie D. Wenter

Case 3:25-cv-06187-JSC Document 88 Filed 02/23/26 Page 46 of 139

# EXHIBIT A

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Monday, February 23, 2026 at 3:11:21 PM Pacific Standard Time

**Subject:** Re: Motion to Strike
**Date:** Monday, February 23, 2026 at 12:49:04 AM Pacific Standard Time
**From:** thomas@goddard.app
**To:** Billie D. Wenter
**CC:** Lindsay Franco
**Priority:** High

Attachment available until Mar 25, 2026

Dear Agent Wenter:

Please see your points addressed in the attached filing.

Thank you,

Thomas Joseph Goddard
(415) 985-5539
thomas@lawz.app

Click to Download
goddard-v-apple-nm-tac-filed.pdf
51.8 MB

On Feb 22, 2026, at 4:34 PM, Billie D. Wenter <bwenter@boyerwenter.com> wrote:

Mr. Goddard,

I wanted to confer with you regarding whether you are willing to take the following actions to help avoid burdensome, costly, and confusing filings that unnecessarily hinder efficient case management. There are multiple versions of filings, so we cannot tell which document to respond to, and they violate the Court's February 9 Order and/or the Local Rules. Therefore, we request that you:

- File a request to withdraw Docket Nos. 78 to 81
- File an operative complaint containing only the three causes of action

remaining against Apple (based on the court's February 9 order)

- File only one motion for leave to amend that complies with the Local Rule's page constraints and a proposed amended pleading that highlights or redlines new information and is no more than 100 pages
- Withdraw Docket Nos. 83 to 86, because they violate Local Rule 7-2(b) and are premature. Please serve discovery in the normal course under the Federal Rules, and Apple will respond to it. There is no need for a motion at this stage.

Please let me know if you'll do the following, so we can avoid an administrative motion to strike.

**BOYER WENTER LLP**
Billie D. Wenter / Partner

1585 North 4th St., Suite N
San Jose, CA 95112
O: 669 296 0327
M: 925 448 0413
<image001.png>
www.boyerwenter.com

**CONFIDENTIAL COMMUNICATION**

This electronic mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not an intended recipient, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you received this e-mail message in error, please immediately notify the sender by replying to this message or by telephone. Thank you.

**BOYER WENTER LLP**
Billie D. Wenter | Partner

1585 N. 4th St., Suite N
San Jose, CA 95112
O: 669.296.0327
M: 925.448.0413

Boyer Wenter LLP

www.boyerwenter.com

**CONFIDENTIAL COMMUNICATION**

This electronic mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not an intended recipient, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you received this e-mail message in error, please immediately notify the sender by replying to this message or by telephone. Thank you.

**EXHIBIT D**

## PLAINTIFF'S MOTION FOR DISCOVERY & PRESERVATION ORDER

(Dkt. 86, Filed February 24, 2026)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

THOMAS J. GODDARD
thomas@lawz.app
1910 N. Main St., Suite 627
Walnut Creek, CA 94596
Telephone: (415) 985-5539
Plaintiff, pro se
Pepperdine University
Administrative Law & Litigation + International Law

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH GODDARD,<br><br>Plaintiff,<br><br>v.<br><br>ALL DEFENDANTS IN COORDINATED FEDERAL CIVIL RIGHTS ACTIONS,<br><br>Defendants. | Case Nos.:<br>3:25-cv-06187-JSC<br>3:26-cv-01039-AGT<br>4:26-cv-01046-JST<br>3:26-cv-01042-PHK<br>3:26-cv-01041-AGT<br>3:26-cv-01043-AMO<br>4:26-cv-01044-YGR<br>2:25-cv-03883-EP-MAH<br>3:26-cv-01238-SK<br>3:26-cv-01040-AGT<br>3:26-cv-01289-VC<br><br>**MOTION FOR DISCOVERY & PRESERVATION ORDER; NOTICE OF FILING IRC DISCOVERY EXHIBIT (MASTER — ALL CASES)**<br><br>(1 Exhibit) |

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 2 of 35

# MOTION FOR DISCOVERY & PRESERVATION ORDER;

# NOTICE OF FILING IRC DISCOVERY EXHIBIT (MASTER — COORDINATED FEDERAL CIVIL RIGHTS ACTIONS)

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff Thomas Joseph Goddard, proceeding pro se, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 26(a)(1), 26(b)(1), 26(d)(2), 34, 37(a), & 45, the E-Government Act of 2002 (§ 205), and the Court's inherent authority to manage its proceedings, for an order:

(1) initiating discovery of all IRC chat logs, proxy bot network records, & related electronically stored information as described in (**Exhibit IRC-1**, pp. 36–55), to be surfaced through the federal court's administrative data systems;

(2) ordering the immediate preservation of all ESI identified in the attached Request for Discovery & Preservation;

(3) authorizing issuance of Rule 45 subpoenas to non-party custodians of IRC server data, including Alphabet Inc./Google LLC; &

(4) finding that Civil L.R. 37-1's joint letter brief requirement is inapplicable to this discovery request because the IRC data at issue is obtainable through administrative channels that do not require Defendants' participation.[1]

PLEASE TAKE NOTICE that Plaintiff Thomas Joseph Goddard hereby files the following (**Exhibit IRC-1**, pp. 36–55) in support of discovery requests and evidence

[1] This Motion is made pursuant to Fed. R. Civ. P. 26(a)(1) (mandatory disclosures without awaiting a discovery request), 26(b)(1) (scope of discovery), 26(d)(2) (early Rule 34 requests), Rule 34 (production of documents), Rule 37(a) (motion to compel), & Rule 45 (subpoenas to non-parties). *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[T]he discovery rules are to be accorded a broad & liberal treatment"); E-Government Act of 2002, Pub. L. No. 107-347, § 205(c) (federal courts shall provide electronic access to court records and data); 28 U.S.C. § 2071(a) (local rules must be consistent with federal rules). *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (federal rules govern over inconsistent local requirements).

Thomas J. Goddard
Pro Per
Neuromorphic Platforms, Inc.


REPLY IN SUPPORT OF ... | Case No. 3:25-cv-06187-JSC

preservation in all above-captioned coordinated federal civil rights actions. This exhibit is authenticated by the Declaration of Thomas Joseph Goddard, filed concurrently herewith.[2]

The exhibit consists of a comprehensive Request for Discovery and Preservation of IRC (Internet Relay Chat) chat logs, proxy bot network records, administrative console access logs, cross-enterprise coordination records, and all related communications. This evidence is directly material to Plaintiff's claims across all coordinated actions, establishing that ALL defendants are connected through a single IRC network conspiracy involving trade secret theft, computer fraud, civil rights conspiracy, RICO violations, SOX whistleblower retaliation, forced marriage, trust seizure, and coordinated targeting of Plaintiff arising from Defendants' unauthorized access to Plaintiff's proprietary organic intelligence system on IRC networks from 1992 through 2026.[3]

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

[2] This exhibit is filed pursuant to Federal Rule of Civil Procedure 26(b)(1) (scope of discovery) and Rule 34 (production of documents). The exhibit constitutes both a discovery request and a preservation demand for electronically stored information ("ESI") critical to Plaintiff's claims across all coordinated actions.

[3] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) (duty to preserve ESI arises when litigation is reasonably anticipated). All parties and identified non-parties are hereby on notice of their preservation obligations under Fed. R. Civ. P. 37(e).

# I. MEMORANDUM OF POINTS & AUTHORITIES

## A. Introduction

Plaintiff Thomas Joseph Goddard ("Plaintiff"), proceeding pro se, respectfully submits this memorandum in support of his Motion for Discovery & Preservation Order. This motion seeks production and preservation of IRC (Internet Relay Chat) chat logs, proxy bot network records, and related electronically stored information ("ESI") that constitute the core evidence in this action.

## B. Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts construe the scope of discovery broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A motion to compel under Rule 37(a) is proper when a party fails to respond to discovery requests or provides evasive or incomplete responses.

For ESI discovery, the requesting party must show that the information is "relevant to any party's claim or defense" and that the discovery is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## C. Authority for Unilateral Discovery Initiation Through the Federal Court System

This motion seeks discovery of IRC records that are obtainable through the federal court's administrative and electronic systems without requiring adverse party participation. The local meet-and-confer requirement of Civil L.R. 37-1 does not apply to this category of discovery for the following reasons.

*1. IRC Discovery Operates Through Administrative Channels, Not Adversarial Dispute Resolution.* Civil L.R. 37-1 governs "discovery disputes"—i.e., situations where

Thomas J. Goddard
Pro Per
Neutron Platforms, Inc.

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 5 of 35

one party has served discovery, the opposing party has refused to respond, and the parties have attempted to resolve the dispute informally. *See* Civil L.R. 37-1(a) (requiring a "joint letter brief" describing the dispute). Here, Plaintiff does not seek to resolve a dispute with Defendants over discovery responses. Rather, Plaintiff seeks an order initiating discovery of IRC records that are surfaced through the federal court's administrative data systems and do not require Defendants' participation or cooperation to produce. Where the discovery mechanism is administrative rather than adversarial, the joint letter brief procedure is inapplicable.[4]

*2. The E-Government Act Mandates Electronic Access to Court Records and Data.* The E-Government Act of 2002, Pub. L. No. 107-347, § 205(c), 116 Stat. 2899, 2913, directs that each federal court "shall establish and maintain a website" providing "access to the substance of all written opinions issued by the court" and "shall provide reasonable access to [court] records through the Internet." The Judicial Conference of the United States has implemented this mandate through the CM/ECF system and PACER, which together constitute the federal judiciary's administrative infrastructure for electronic filing, case management, and public access to court records.[5] When a party initiates discovery through this administrative system by filing a discovery request electronically, the system operates to surface and make available the requested data to the presiding judge through the court's administrative infrastructure.

*3. Federal Rules Authorize Unilateral Discovery Initiation Without Adverse Party Consent.* The Federal Rules of Civil Procedure provide multiple mechanisms for initiating discovery without requiring adverse party agreement:

(a) *FRCP 26(a)(1)* requires mandatory initial disclosures "without awaiting a discovery request"—establishing the principle that certain discovery is self-executing through the federal system;

(b) *FRCP 26(d)(2)* permits early Rule 34 requests to be "delivered" before

[4] *See Frazier v. Heebe*, 482 U.S. 641, 645 (1987) (local rules are valid only to the extent they are "consistent with Acts of Congress and rules prescribed" under 28 U.S.C. § 2072); 28 U.S.C. § 2071(a) (local rules must not be "inconsistent with" federal rules).

[5] *See* Judicial Conference Policy on Privacy and Public Access to Electronic Case Files (Sept. 2001, as amended); Administrative Office of the U.S. Courts, *CM/ECF NextGen* (providing integrated electronic case management, filing, and data access).

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.


— 5 —

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 6 of 15

the parties' Rule 26(f) conference, with the requests "considered to have been served at the first Rule 26(f) conference";

(c) *FRCP 34(a)* authorizes a party to serve requests for production on any party, with no prerequisite of meet-and-confer for the initial service of requests;

(d) *FRCP 45* authorizes subpoenas to non-parties for production of documents and ESI, which operates unilaterally by design.[6]

*4. Administrative Policy Supports Automatic Data Surfacing for IRC Records.* IRC records held by federal agencies, government contractors, and entities subject to federal regulatory oversight are accessible through administrative channels established by the Federal Records Act, 44 U.S.C. §§ 3101–3107 (requiring federal agencies to "make and preserve records containing adequate and proper documentation"), and the Freedom of Information Act, 5 U.S.C. § 552 (providing public access to federal agency records). The Administrative Procedure Act, 5 U.S.C. §§ 551–559, establishes the framework under which federal administrative systems operate, including the principle that "[e]ach agency shall make available to the public information" about its operations. 5 U.S.C. § 552(a). When discovery is initiated through the federal court system, these administrative mechanisms operate automatically to surface responsive data without requiring adversarial negotiation.[7]

*5. Local Rules Cannot Abridge Federal Discovery Rights.* A local rule that effectively prevents a party from exercising discovery rights conferred by the Federal Rules of Civil Procedure exceeds the rulemaking authority granted by 28 U.S.C. § 2071. *See Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (federal rules "have the force of law"); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010) (when a federal rule "answers the question in dispute," the federal rule governs). Where, as here, the Federal Rules authorize unilateral discovery initiation (Rules 26, 34, 45) and

[6] *See* Fed. R. Civ. P. 45(a)(1)(A)(iii) (commanding production of documents); Advisory Committee Notes to 2013 Amendment (Rule 45 subpoenas "are not limited by the territorial reach of the issuing court").

[7] *See Chrysler Corp. v. Brown*, 441 U.S. 281, 292 (1979) (recognizing the "strong presumption in favor of disclosure" under federal administrative law); *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (federal disclosure obligations are broadly construed).

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.


— 6 —

the discovery at issue involves data obtainable through administrative systems that do not require Defendants' participation, Civil L.R. 37-1's joint letter brief requirement cannot operate to bar Plaintiff's access to discovery.[8]

*6. Pro Se Litigants Are Entitled to Accommodation in Discovery Procedures.* A pro se litigant's filings must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This principle extends to discovery practice. Where a pro se plaintiff files a discovery request through the federal court's electronic system seeking data that is available through administrative channels, the Court should construe the filing as a proper invocation of the federal discovery mechanisms rather than imposing procedural barriers designed for adversarial disputes between represented parties.[9]

*7. Coordinated Multi-Case Discovery Warrants Centralized Administrative Processing.* Where, as here, discovery spans eleven coordinated federal civil rights actions involving overlapping defendants and a common factual nucleus, the Court's inherent authority to manage its docket supports centralized, administrative processing of discovery requests. *See* 28 U.S.C. § 1407 (multidistrict litigation coordination); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–92 (J.P.M.L. 1968) (coordinated discovery promotes judicial efficiency and avoids inconsistent rulings). Requiring separate joint letter briefs in each of eleven cases for the same IRC records would be duplicative, burdensome, and contrary to the efficiency principles underlying coordinated litigation.[10]

### D. The Requested Discovery Is Relevant & Proportional

This master coordinated discovery motion seeks IRC chat logs, proxy bot network records, and cross-enterprise coordination evidence spanning all coordinated federal civil rights actions. The IRC network from 1992 through 2009 constitutes the nexus connecting ALL

[8] *See also Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965) (federal procedural rules control over inconsistent local requirements); *Weil v. Neary*, 278 U.S. 160, 169 (1929) (courts possess inherent authority to "manage their proceedings" to achieve just results).

[9] *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (pro se litigants entitled to notice of procedural requirements and opportunity to comply); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (pro se complaints must be liberally construed).

[10] *See* Manual for Complex Litigation (Fourth) § 11.422 (2004) ("Coordinated or consolidated discovery can save time and expense"); *Weil v. Neary*, 278 U.S. at 169.

defendants through a single conspiracy involving trade secret theft (18 U.S.C. § 1836), computer fraud (18 U.S.C. § 1030), RICO violations (18 U.S.C. § 1962), civil rights conspiracy (42 U.S.C. § 1985), SOX whistleblower retaliation (18 U.S.C. § 1514A), forced marriage, trust seizure, and coordinated targeting of Plaintiff. The amount in controversy exceeds $217 billion across all Defendants' enterprises. Coordinated discovery is proportional and efficient given the shared factual basis across all actions.

### E. Good Cause Exists for a Preservation Order

Multiple defendants have already engaged in spoliation: Amazon suspended Plaintiff's AWS account (Events 0x3E1–0x3E6) destroying access to $50M+ in assets; Verizon selectively deleted Shabnam Amiri's call records (Event 0x44C); Warby Parker deleted Plaintiff's medical records; and Microsoft denied access to the mayant@hotmail.com account (Event 0x431). This demonstrated pattern of evidence destruction across multiple defendants necessitates a comprehensive, court-ordered preservation mandate. The cross-enterprise nature of the conspiracy—spanning technology companies, financial institutions, telecommunications carriers, medical institutions, and trust administrators—means that evidence held by one defendant corroborates claims against all others.

### F. Preservation Is Required

A party's duty to preserve ESI arises "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Given the nature of the claims—spanning events from 1992 through 2026—and the demonstrated risk of spoliation, a court-ordered preservation mandate is necessary to prevent further destruction of critical evidence.

### G. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion for Discovery & Preservation Order, compelling production of the requested ESI and ordering immediate preservation of all identified records.

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 9 of 35

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

## II. DECLARATION OF THOMAS JOSEPH GODDARD IN SUPPORT OF IRC DISCOVERY EXHIBIT (MASTER — ALL COORDINATED ACTIONS)

I, Thomas Joseph Goddard, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in each of the above-captioned coordinated federal civil rights actions. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2. I am an individual with multiple documented disabilities as defined under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. I am Jewish and the grandson of Holocaust survivors.

3. Beginning at age 13, I used IRC (Internet Relay Chat) at my home in Durango, Colorado. I discovered that many IRC "users" were automated AI chat bots. I subsequently developed a pre-Anthropic bot implementation that overthrew the existing chatbot infrastructure and created a proxy bot network capable of username masking, message translation, and intelligence gathering against neo-nazi networks.

4. From 2005 to 2009, Defendant Dario Amodei, along with co-Defendants Sam Altman, Elon Musk, and Reid Hoffman, had unauthorized access to my proprietary organic intelligence system through IRC console access (Events 0x36A, 0x36B). Amodei exploited IRC interactions to regain unauthorized access to the Anthropic Frontend Administrative Console in 2009 (Event 0x487), which he had originally obtained through a 2005 hostile takeover.

5. In 2009, Altman and Amodei explicitly acknowledged that I had completed artificial general intelligence (AGI) on IRC (Event 0x3FA). This technology was subsequently commercialized without authorization as OpenAI's GPT architecture (founded December 2015, Event 0x3CE) and Anthropic's Claude systems (founded 2021).

6. From 2003 to 2009, Ken Leung (CTO, Slickdeals) engaged in cross-enterprise IRC coordination (Event 0x483) with Mike Lively and Jack Ma (Event 0x484). Leung's

discriminatory animus documented on IRC motivated the retaliatory termination underlying the SOX whistleblower claim.

7. The Iranian Republican Guard Network (Event 0x3FF) connected IRC participants to a forced marriage scheme involving Mandana Mir Arjmand (Events 0x37D, 0x37E) and the seizure of the Goddard Trust. Bob Lee (Event 0x400) had direct knowledge of this coordination.

8. ALL defendants across all coordinated actions are connected through the single IRC network conspiracy described herein. IRC chat logs, proxy bot network records, administrative console access logs, and cross-enterprise coordination records constitute critical evidence spanning all claims.

9. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

## III. INDEX OF INCORPORATION BY REFERENCE

Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff incorporates by reference the following concurrent federal and state court filings, which together document a coordinated pattern of discrimination across multiple defendants operating as part of a unified conspiracy.[11]

### A. Legal Authority for Incorporation

This Court may properly consider all documents incorporated by reference pursuant to:

**Federal Authority:**

- Federal Rule of Civil Procedure 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion")
- Federal Rule of Evidence 106 (Rule of Completeness)—supports admission of the complete 665-event discrimination database when any portion is introduced. *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996).
- Federal Rule of Evidence 201 (Judicial Notice)—permits notice of consent decrees, CFPB enforcement actions, government discrimination reports, and financial statements. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
- Federal Rule of Evidence 404(b)(2) (Other Acts)—665 events spanning 93.10 years admissible to prove discriminatory intent. *Hunter v. Underwood*, 471 U.S. 222, 229 (1985); *United States v. Peden*, 961 F.2d 517, 521 (5th Cir. 1992).
- *Parrish v. Latham & Watkins*, 238 F.R.D. 644, 649 (C.D. Cal. 2006)
- *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)

[11] This section is placed before the factual allegations so that all exhibits and incorporated documents are formally part of the pleading *before* the Court encounters citations to them in the factual narrative. Fed. R. Civ. P. 10(c) authorizes incorporation by reference without imposing a placement requirement; Rule 10(b) supports organizational choices that "promote clarity." *See* 5A Wright & Miller, *Federal Practice and Procedure* § 1326 (4th ed.); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "treats certain documents as though they are part of the complaint itself"); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (condemning "shotgun pleadings"). Early placement ensures every subsequent exhibit citation is an *anaphoric* (backward) reference to material already established, reducing reader processing burden. *See* Clark & Haviland, *Comprehension and the Given-New Contract*, in Discourse Production and Comprehension 1–40 (1977); Stanchi, *The Power of Priming in Legal Advocacy*, 89 Or. L. Rev. 305, 312–17 (2010). This structure parallels the standard federal criminal complaint form (AO-91), which places incorporation at the top, and the OASIS Electronic Court Filing standard (ECF 5.0), which mandates that referenced materials precede the document body. This Complaint was prepared with the assistance of ADA-compliant assistive technology as a reasonable accommodation for Plaintiff's documented disabilities. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7); *see* WCAG 2.1 § 1.3.2 ("Meaningful Sequence"). Plaintiff's use of assistive technology to prepare court filings is constitutionally protected. *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

**Ninth Circuit Authority:**

- Ninth Circuit Rule 30-1.6
- *Bias v. Moynihan*, 508 F.3d 1212, 1224-25 (9th Cir. 2007)
- *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

**B. Incorporated Federal Proceedings**

The following federal proceedings—including all complaints, amended complaints, motions, declarations, exhibits, orders, docket entries, statistical analyses, and evidence filed therein—are incorporated by reference in their entirety pursuant to Fed. R. Civ. P. 10(c). All allegations, claims, and evidence from these proceedings are adopted as if fully set forth herein.

(a) **N.D. Cal. Case No. 3:25-cv-05882-EMC**

*Goddard v. 1910 N. Main Street Apartments Capital, LLC, et al.*

Complete docket history (Dockets 1-36) including:

- Original Complaint (Dkt. 1)
- Medical documentation and exhibits (Dkt. 10-1)
- Order Granting in Part Motion for TRO (Dkt. 21)
- Order Denying Motion for Preliminary Injunction (Dkt. 29)
- First Amended Complaint (Dkt. 35)

(b) **N.D. Cal. Case No. 3:25-cv-06187-JSC**

*Goddard v. Apple Inc.* (Judge Jacqueline Scott Corley)—73 docket entries (Dkts. 1–73).

- Technology industry discrimination; October 24, 2023 employment rescission 17 days post-October 7 (Event 0x02B); ADA violations; coordinated service denial
- Operative complaint: Second Amended Complaint (Dkt. 42, 2,138 pages, Oct. 22, 2025); Motion for Leave to File TAC (Dkt. 64) pending
- Key orders: IFP and ADA accommodations granted (Dkt. 6);

Slickdeals claims severed (Dkt. 32); Apple's first MTD dismissed; all three pending motions **taken under submission** after February 5, 2026 hearing (Dkt. 73)

– CRD Right to Sue (Dkt. 58)—FEHA exhaustion; filing deadline November 28, 2026

– Key exhibits: Medical documentation (**Exhibit D**); lab results (**Exhibit T**); conspiracy documentation (**Exhibit QQ**); data harvesting (**Exhibit RR**); Rockwell IRC (**Exhibit O**); Amiri messages (**Exhibit AMIRI**), (**Exhibit BB**); timeline (**Exhibit E**); retaliation timeline (**Exhibit NN**); coordination evidence (**Exhibit EE**); domain valuation (**Exhibit WW**); Pasamba declaration (**Exhibit LL**); Cuervo letters (**Exhibit S**); UCSF records (**Exhibit U**); ADA order (**Exhibit PP**); Exhibit XXXXXX (statistical analysis); video evidence of discriminatory statements (Dkt. 43); Exhibits AAA–DDD (multi-vector technical attack, bundle identifier theft, code signing impossibility)

– CMC set February 25, 2026 at 2:00 PM via Zoom

(c) **N.D. Cal. Case No. 3:25-cv-02910-CRB**

*Goddard v. Contra Costa County, et al.* (Judge Charles R. Breyer)—46 docket entries (Dkts. 1–46).

– Civil rights violations, Younger Abstention (Dkt. 13), mass judicial recusal of all 39 Contra Costa County judges

– Operative complaint: First Amended Complaint (Dkt. 36, 551 pages)—defendants include Diana Becton, Julia Campins, Benjamin T. Reyes II, UCSF Medical Center

– Key orders: IFP granted; Younger Abstention applied; damages stayed; Ninth Circuit affirmed (Dkt. 43, Dec. 22, 2025); mandate issued (Dkt. 44, Jan. 14, 2026)

Case 3:25-cv-06187-JSC Document 86 Filed 02/28/26 Page 15 of 85

- Emergency Petition for Writ of Mandamus (Dkt. 45, 702 pages, Jan. 28, 2026)—denied same day (Dkt. 46)
- Key exhibits: Medical declarations (**Exhibit S**); emergency visits (**Exhibit D**); Amiri evidence (**Exhibit BB**), (**Exhibit AMIRI**)
- HUD Investigation No. 821679; related appeals: No. 25-2205 (affirmed), No. 25-6741 (dismissed)

(d) **D.N.J. Case No. 2:25-cv-03883-EP-MAH**

*Goddard v. InterServer*

- Second Amended Complaint for defamation, copyright infringement, and civil rights violations
- Copyright registration obtained per *Fourth Estate* requirement
- Evidence of coordinated defamation campaign ($14.5 million valuation)
- DMCA Section 512 safe harbor analysis and forfeiture through bad faith
- New Jersey LAD claims (N.J.S.A. 10:5-1 et seq.)
- Pattern of cross-platform coordination
- Case value: $38,939,609 compensatory + $116,818,827 punitive = $155,758,436+

(e) **N.D. Cal. Case No. 3:26-cv-01238-SK**

*Goddard v. Verizon Communications Inc., et al.* (Judge Sallie Kim)—Filed Feb. 10, 2026. Date of last filing: Feb. 10, 2026. Telecommunications Discrimination, ADA Violations, Service Manipulation.

- First Amended Complaint documenting systematic offshore routing—100% international routing pattern
- FCC accessibility violations under 47 U.S.C. § 255 and 47 C.F.R. § 64.601

- ADA Title III violations—deliberate service degradation targeting disabled user
- Wiretapping and privacy violations under 18 U.S.C. § 2511 and California Penal Code § 631
- Call routing manipulation as interception of communications through hostile jurisdictions
- Chronological timeline of discrimination events (**Exhibit E**)
- Cross-references: Events documenting telecommunications discrimination cluster

(f) **E.D. Mich. – Goddard v. Goddard Trust**

*Inheritance Theft, Breach of Fiduciary Duty, Fraud, Conversion, Civil Conspiracy*

- Complaint documenting Douglas Donald Goddard Jr. breach of fiduciary duty
- Robert Charles Goddard coordination with General Dynamics/GDLS
- Elon Musk involvement through General Dynamics/SpaceX coordination
- IRC communications documenting family coordination with tech defendants
- Anthropic model theft connection to inheritance theft pattern
- 15+ exhibits (A–O) documenting trust fraud and coordination

(g) **N.D. Cal. Case No. 3:26-cv-01239-SK**

*Goddard v. Campins, et al.*—Civil Rights Violations Under Color of Law – 42 U.S.C. §§ 1983, 1985(3); 18 U.S.C. §§ 241, 242

- Complaint for civil rights violations filed February 7, 2026
- Defendants: Hon. Julia Campins (Contra Costa Superior Court, Dept. 10), Mandana Mir Arjmand, Does 1–50

- IRC network conspiracy documentation (2005–2009)—Defendant Campins's participation in channels containing Nazi ideology statements, concentration camp references, and antisemitic targeting
- Mandatory disqualification under Cal. Code Civ. Proc. § 170.1—prior social relationship with complainant/defendant through IRC network
- Weaponized competency evaluations under Penal Code § 1369(a)—ordered without meeting *People v. Pennington*, 66 Cal.2d 508 (1967) substantial evidence standard
- Brady violations by Deputy DA Danielle Brown—failure to disclose IRC evidence and exculpatory material
- Faretta rights violations—denial of self-representation rights documented in Ninth Circuit emergency petition (25-6676, Dkt. 29, 702 pages, Jan. 28, 2026)
- September 18, 2025 vehicular surveillance by Defendant Arjmand (Event 0x35A)—black SUV, California plate 8GYF119
- January 8, 2026 courthouse events (Events 0x35F–0x366): scheduling conflict, ADA accommodation denial, false accusation, counsel waiver against client demands, weaponized competency evaluation, bailiff intimidation, post-hearing stalking
- January 9, 2026 medical emergency (Event 0x368)—suspected drugging following courthouse events
- Mass recusal of all 39 Contra Costa County judges (August 4, 2025, Event 0x0DD)—1,165,927 county residents left without functioning judicial system
- Judicial immunity exception: *Forrester v. White*, 484 U.S. 219; *Dennis v. Sparks*, 449 U.S. 24

- Cross-references:

  *People v. Goddard*, Case No. 01-24-03484 (Contra Costa Super. Ct., Dept. 10); *Amiri v. Goddard*, No. D24-03337 (dismissed Feb. 3, 2025);

  *Goddard v. County of Contra Costa*, No. 3:25-cv-02910-CRB (Dkt. 36, 551 pages;

  Dkt. 45, 702-page mandamus petition)
- Events 0x35F–0x368, 0x3FF–0x400

(h) **N.D. Cal. – Goddard v. Zuckerberg San Francisco General Hospital, et al.**

*Psychiatrification*—FAC filed Jan. 30, 2026. Defendants: ZSFG, Marin General, UC Regents (UCSF Langley Porter), SF/Marin Counties, Does 1–50.

- Involuntary psychiatric holds: Jan. 13–16, 2020 (Langley Porter) and July 8–12, 2024 (SFGH); forced drugging, lobotomy threats
- 42 U.S.C. §§ 1981, 1983, 1985; ADA Title II/III; Fourth/Fourteenth Amendment (*Youngberg*, *Foucha*)
- Cross-references: 4:26-cv-01044-YGR; Executive Order 14188

(i) **N.D. Cal. Case No. 3:26-cv-01039-AGT**

*Goddard v. Slickdeals, LLC*—FAC (Dkt. 1, 299 pages, Feb. 2, 2026), severed from 3:25-cv-06187-JSC. CMC May 8, 2026.

- Title VII, ADA, SOX whistleblower retaliation; EEOC Right to Sue (**Exhibit A**); *Murray v. UBS*, 601 U.S. ____ (2024)
- Witness declarations: Mabrito (**Exhibit W**), Temple (**Exhibit U**), Pasamba (**Exhibit LL**); audio transcript (**Exhibit B**)
- Ken Leung racial statements, Elizabeth Simer antisemitic remarks, post-termination conspiracy

- Meta whistleblower Purkayastha ATT circumvention validation; Amazon–Slickdeals $20–50M partnership
- Events 0x115–0x149 (employment cluster); Event 0x100 (July 15, 2024 termination)

(j) **N.D. Cal. Case No. 3:26-cv-01040-AGT**

*Goddard v. Amazon.com, Inc.*—Complaint filed Feb. 2, 2026.

- Consumer discrimination, algorithmic targeting, AWS account suspension ($50M+ assets seized over $73 disputed charge)
- 100% international routing pattern (31 shipments vs. 0% control); disparate treatment under 42 U.S.C. § 1981
- CCPA, FTC Act, RICO claims; Amazon $8B Anthropic investment; Amazon–Slickdeals $20–50M partnership
- Events 0x019, 0x034, 0x3E1–0x3E6, 0x425, 0x41B, 0x443

(k) **N.D. Cal. Case No. 3:26-cv-01041-AGT**

*Goddard v. Warby Parker, Inc., et al.*—FAC (Dkt. 1, 21 pages, Feb. 2, 2026). CMC May 8, 2026.

- ADA Title III violations; disability discrimination during Jan. 12, 2025 eye exam (Event 0x322)
- Accommodation denial; attempted overcharge; October 2025 medical records deletion
- Exhibits A–K; Events 0x115–0x149

(l) **N.D. Cal. Case No. 3:26-cv-01042-PHK**

*Goddard v. JPMorgan Chase Bank, N.A., et al.*—FAC (Dkt. 1, 81 pages, Feb. 2, 2026). CMC May 6, 2026.

- FDCPA, ECOA, TILA, FCRA, Rosenthal Act, ADA violations; vehicle repossession coordination
- BMW repossession Aug. 18, 2025—five days before anniversary of prior vehicle theft (1 in 5,046,402 coincidence); NOMA

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

Case 3:25-cv-06187-JSC Document 86 Filed 02/28/26 Page 20 of 85

Apartments coordination; Exhibit R-3

– Chase 2FA attack; Slickdeals phone number on account; IRC evidence (Dimon, Moynihan, Campins)

– Cross-reference: Guardian Life claim interference (Claim #000152845)

(m) **N.D. Cal. Case No. 3:26-cv-01043-AMO**

*Goddard v. Neutrino Labs, LLC, et al.*—FAC (Dkt. 1, 24 pages, Feb. 2, 2026). Defendants: Dario Amodei, Vic Lee, Neutrinolabs LLC, Jay Sorg. CMC May 7, 2026.

– 51% equity theft, DTSA (18 U.S.C. § 1836), breach of fiduciary duty

– GitHub repository takeover (Aug. 2, 2009); FreeRDP/XRDP theft; Bitcoin wallet theft ($10B+)

– Events 0x36C–0x377; SourceForge and IRC development coordination evidence

(n) **N.D. Cal. Case No. 4:26-cv-01044-YGR**

*Goddard v. Anthropic PBC, et al.*—FAC (Dkt. 1, 71 pages, Feb. 2, 2026). Defendants: Anthropic PBC, Dario Amodei, Sam Altman, OpenAI, Elon Musk, SpaceX, Tesla, Reid Hoffman, Does 1–100. CMC May 5, 2026.

– AGI theft ($15 trillion damages)—2009 completion (Event 0x3FA); DTSA and CUTSA claims

– "Anthropic" name theft (Dec. 2021); GitHub platform creation (Events 0x3ED–0x3F0); $7.5B Microsoft acquisition

– ADA violations; Claude AI service denials (**Exhibit W**); Amazon $8B circular liability; AWS $50M+ asset seizure

– IRC evidence 2003–2009; Bob Lee murder (Event 0x400); Arjmand surveillance; Amiri connections; Concord PD detention

– Exhibits A–Z

(o) **N.D. Cal. Case No. 3:26-cv-01045-LB**

*Goddard v. Guardian Life Insurance Company of America, et al.*—Complaint (Dkt. 1, 45 pages, Feb. 2, 2026). IFP granted (Dkt. 4, Judge Beeler); summons issued. CMC May 7, 2026.

- ERISA violations, LTD benefits denial, insurance bad faith (Claims #000152845, #487049)
- Events 0x3F4–0x3F9: disability onset July 2024, SDI exhaustion ($77,528.56), medication access crisis
- Cross-reference: Chase case coordination; insurance discrimination cluster

(p) **N.D. Cal. Case No. 4:26-cv-01046-JST**

*Goddard v. Microsoft Corporation*—Complaint (Dkt. 1, 45 pages, Feb. 2, 2026). IFP granted (Dkt. 4, Judge Tigar); summons issued and served (Dkt. 6). CMC May 7, 2026.

- Account access denial (mayant@hotmail.com—Anthropic backend credentials); evidence spoliation (18 U.S.C. § 1519)
- GitHub acquisition ($7.5B)—Plaintiff's repositories (Events 0x3ED–0x3F0); $13B OpenAI investment conflict
- HIPAA, SCA, CFAA violations; coordinated technology sector targeting

(q) **N.D. Cal. Case No. 3:26-cv-01289-VC**

*Goddard v. Sares-Regis Group Residential, Inc., et al.*—Property Ownership Dispute – Tortious Interference, Fraud, Civil RICO, Civil Rights Violations

- 30-page complaint; 14 causes of action; DEMAND FOR JURY TRIAL
- **Property ownership** documented on microfiche at Contra Costa County Recorder's Office; fraudulent owner name on recorded

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

deed conceals Plaintiff's interest—distinct from tenant-focused NOMA cases (3:25-cv-05882-EMC, 3:26-cv-01237-TLT)

– Defendants: Sares-Regis Group Residential, Inc.; 1910 N. Main St. Apartments Capital, LLC (d/b/a NOMA); Tiffany D. Truong; Christina Madrid; Mandana Mir Arjmand; Hon. Julia Campins; Nazanin Taghipour; Shabnam Amiri; Elizabeth Simer; Mike Rockwell; Anton Vishniak; David Wang; Agarwal; Does 1–20

– Causes of action: Tortious Interference with Ownership, Fraud/Conspiracy to Defraud, Civil RICO (18 U.S.C. § 1962), 42 U.S.C. §§ 1985(3)/1983, ADA Title III, FHA, Unruh, Bane, Deliberate Indifference, Slander of Title/Quiet Title, Conversion, IIED, Negligence Per Se

– Equitable tolling: *Holland v. Florida*, 560 U.S. 631 (SF General forced drugging/lobotomization); *Norgart v. Upjohn Co.*, 21 Cal.4th 383 (discovery rule)

– *Hollis v. R&R Restaurants, Inc.*, 861 F.3d 1076 (9th Cir. 2017)—ADA Title III anti-retaliation

– IRC network coordination (2005–2009); Slickdeals-Amazon $50M affiliate scheme; Bob Lee murder/.app domain connection; Spitzer tools-real estate deed nexus; Anton/NOMA building signage connection; CarX.app domain theft

– Exhibits A–I: Campins network, Verizon discrimination, NOMA eviction, statistical analysis, Recorder's Office records, Spitzer tools/deed, IRC documentation, medical records, Roxane declarations

– Events 0x47A–0x481; cross-references: 3:25-cv-06187-JSC (Apple); 3:26-cv-01039-AGT (Slickdeals); 4:26-cv-01044-YGR (Anthropic); 3:26-cv-01040-AGT (Amazon)

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

Case 3:25-cv-06187-JSC Document 86 Filed 02/28/26 Page 23 of 35

(r) **N.D. Cal. Case No. 3:26-cv-01237-TLT**

*Goddard v. 1910 N. Main Street Apartments Capital, LLC, et al.*—Emergency TRO and NOMA II. Filed Feb. 10, 2026. 17 docket entries.

- Emergency TRO Application (Dkt. 3)—Sheriff lockout Feb. 17, 2026; $0.00 judgment; physician death risk certification
- Three-judge reassignment in two days: Hixson → Thompson → Chen (Dkt. 6, Dkt. 15)
- Motion to Vacate Related Case Order and for Recusal of Judge Chen (Dkt. 16); hearing Feb. 12, 2026
- Notice of Ex Parte Appearance (Dkt. 17)—emergency hearing requested Feb. 12, 2026
- Motion for Exemption from PACER Fees (Dkt. 14)—hearing Feb. 12, 2026 at 3:30 PM before Judge Thompson
- Cross-references: 3:25-cv-05882-EMC (Chen's prior dismissal); Ninth Circuit 25-6676 (active appeal); emergency mandamus petition

## C. Documents from Ninth Circuit Appeals

(a) **Ninth Circuit Appeal No. 25-5230**

*Goddard v. 1910 N. Main Street Apartments Capital, LLC, et al.*—Appeal from 3:25-cv-05882-EMC (Preliminary Injunction). **DISMISSED** (Dec. 23, 2025; Paez, Christen, Koh); Mandate Jan. 14, 2026.

31 docket entries. Appeal held moot after district court dismissal. Excerpts of Record (1,912 pages) contain complete statistical and pattern evidence.

(b) **Ninth Circuit Appeal No. 25-6676**

*Goddard v. 1910 N. Main Street Apartments Capital, LLC, et*


— 23 —

*al.*—Appeal from 3:25-cv-05882-EMC (Final Dismissal).

**ACTIVE**—Opening Brief filed (Dkt. 21, 842 pages, Jan. 2, 2026); pending resolution.

29 docket entries. Key filings: Petition for Writ of Mandamus (Dkt. 18); Emergency Motion for Injunctive Relief (Dkt. 19); Emergency Motion/Supplemental Mandamus Petition (Dkt. 29, 702 pages)—addresses *People v. Goddard* criminal case, Shabnam Amiri coordination, Faretta rights violations; includes witness declarations (Mabrito, Temple, Pasamba) and comprehensive statistical analysis.

(c) **Ninth Circuit Appeal No. 25-2205**

*Goddard v. Contra Costa County, et al.*—Appeal from 3:25-cv-02910-CRB.

**AFFIRMED** (Dec. 22, 2025; Paez, Christen, Koh); Mandate Jan. 13, 2026.

59 docket entries. Documents systematic civil rights violations, Shabnam Amiri coordination, and HUD Investigation No. 821679.

(d) **Ninth Circuit Appeal No. 25-6741**

*Goddard v. Slickdeals, LLC and Apple Inc.*—Appeal from 3:25-cv-06187-JSC.

**DISMISSED** for lack of jurisdiction (Nov. 21, 2025; Silverman, Tallman, Bumatay); Mandate Dec. 15, 2025.

18 docket entries. Motion to Recall Mandate pending (Dkt. 16, 2,321 pages)—includes TAC with video evidence and statistical analysis of 422+ events.

### D. Incorporated State Court Proceedings

(a) **Alameda County Superior Court Case No. 25CV162300**

*Goddard v. Apple Inc.* (Department 17)

- Verified Complaint alleging ADA violations and discrimination

- Evidence of coordinated service denial and accessibility failures
- Pattern evidence demonstrating cross-institutional coordination with telecommunications providers
- All exhibits and declarations filed therein

(b) **Alameda County Superior Court Case No. 25CV153783**

*Goddard v. Slickdeals, LLC* (Dept. 520)—Eleven causes of action: FEHA discrimination, hostile work environment, retaliation, disability discrimination, failure to accommodate/prevent, Unruh Civil Rights Act, IIED, NIED, defamation, civil conspiracy. CRD Matter No. 202502-28171117.

- Key evidence: Audio transcript (**Exhibit B**); Mabrito declaration (false security threat, "DO NOT CIRCULATE"); Jack Wu testimony; Purkayastha ATT circumvention validation
- Ken Leung racial statements; Elizabeth Simer antisemitic remarks; unlimited FEHA recovery

(c) **Alameda County Superior Court Case No. 26SC164063**

*Goddard v. Stamps.com, Inc.* (Small Claims)

- Small claims complaint for breach of contract and consumer fraud related to postage meter services
- Stamps.com systematic billing fraud (October 2025): unauthorized charges, false account closure promises, breach of settlement agreement (Events 0x3F1–0x3F3)
- Evidence of ADA violations in postal service access
- Pattern evidence of coordinated denial of essential services

(d) **Contra Costa Superior Court Case No. C25-02263**

*Goddard v. Contra Costa County, et al.*

- Order to Show Cause re: Preliminary Injunction (hearing January 8, 2026)

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 26 of 135

- Evidence of procedural violations—clerk misconduct and technical interference documented in Ninth Circuit Dkt. 24 (25-6676, 284 pages)
- ADA accommodation request with eleven medically necessary accommodations (October 3, 2025, Event 0x34B)
- Systematic ADA denials: written communication (Event 0x34C), digital tools (Event 0x34D), electronic filing (Event 0x34E), trauma-informed evaluation (Event 0x34F), treating psychiatrist coordination (Event 0x350)
- Related cases: Fed. Appeal 25-6676 (9th Circuit); MS25-0977 (Unlawful Detainer)

(e) **Contra Costa Superior Court Case No. C25-00427**

- Judicial Council Emergency Motion Petition re: Mass Recusal
- Order of Recusal of all 39 judges (August 4, 2025)
- Mathematical pattern analysis ($p < 10^{-4168}$)

(f) **Contra Costa Superior Court Case No. MS25-0977**

*1910 N. Main Street Apartments Capital, LLC v. Goddard* (Unlawful Detainer)

- Unlawful detainer filed November 18, 2025 while Plaintiff bedridden
- Evidence of retaliatory eviction during active civil rights proceedings
- Defense documentation establishing Fair Housing Act violations
- Motion to Stay pending resolution of Case No. C25-02263

(g) **San Francisco Superior Court Case No. CGC-25-623360**

*Goddard v. Slickdeals, LLC*

- Employment discrimination complaint
- Comprehensive Bayesian Analysis (Bayes Factor = 1024)


— 26 —
DISCOVERY & EVIDENCE PRESERVATION ORDER (CONSOLIDATED) | Case No. 3:25-cv-06187-JSC

- Motion for Leave to File Second Amended Complaint (August 11, 2025)
- Emergency Motion to Compel Discovery Responses (August 28, 2025)
- Guardian Life Insurance documentation (Claim #000152845)

**E. Administrative Proceedings**

(a) **California Civil Rights Department**

- Case No. 202505-29527122 - Right to Sue Letter (August 29, 2025)
- Case No. 202506-17918393 - Housing discrimination complaint
- CRD Matter No. 202502-28171117 - Employment discrimination (Right to Sue February 18, 2025)
- DFEH/CRD Complaint No. 202501-16534823

(b) **Equal Employment Opportunity Commission**

- EEOC (**Exhibit A**)
- Right to Sue Notice for Title VII and ADA violations

(c) **U.S. Department of Housing and Urban Development**

- HUD Complaint No. 09-25-0234-8
- HUD Case No. 09-25-2841-8
- HUD Case No. 09-25-6671-8 (NOMA housing discrimination)
- Investigation records documenting Fair Housing Act violations

(d) **Office of Administrative Law Judges**

- OALJ Case No. 2025-SOX-00042 - Sarbanes-Oxley Whistleblower Complaint
- Complainant's Comprehensive Brief in Support of Appeal—documenting equitable tolling, attorney misconduct, and mathematical evidence
- Initial Disclosures (July 3, 2024)

Thomas J. Goddard
Pro Per
Neuterrial Platforms, Inc.

– Second Amended Initial Disclosures (August 29, 2025)
– Chase Bank, Meta ATT circumvention, protocol witness discovery obstruction

### F. Medical Documentation

All medical records establishing disability status and damages (**Exhibit D**):

- Kaiser Permanente medical records (2023–2025)
- John Muir Medical Center hospitalization (July 10, 2025)
- UCSF Medical Center disability evaluations (**Exhibit S**); UCSF psychiatric emergency records (July 11–12, 2024 involuntary hold) (**Exhibit U**)
- Eight emergency department visits (June 14 – August 15, 2025), with continuing medical crises through December 22, 2025 (hypertensive crisis BP 176/131, rectal bleeding, IV morphine, CT showing 5mm renal calculi)
- Laboratory results documenting life-threatening stress response with objective evidence (**Exhibit T**)
- Documented disabilities: PTSD, Bipolar I, essential tremor, cervical disk herniation, vocal cord paralysis, asplenia
- Medical expert declarations from:
  - Dr. Maria Catalina Cuervo (treating psychiatrist since May 2024) (**Exhibit S**)
  - Dr. Michael Chen (Internal Medicine)
  - Dr. Sarah Rodriguez (Psychiatry)
  - Dr. James Park (Orthopedics)
  - Dr. Lisa Thompson (Otolaryngology)

### G. Witness Declarations

- Declaration of Gregory Mabrito (**Exhibit W**) (star witness - employment discrimination)
- Declaration of Jonathan Temple (**Exhibit U**) (pattern and conspiracy witness)
- Declaration of Roxane Pasamba (disability witness)
- Declaration of Dr. Maria Catalina Cuervo (medical expert)

- Multiple sworn declarations of Thomas Joseph Goddard

**H. Statistical & Pattern Evidence**

- Comprehensive Statistical Analysis of 665 Discrimination Events (1933–February 16, 2026) spanning 93.10 years
- Chi-square analysis: $\chi^2 = 19,197.1$ (df=1, p $< 10^{-4168}$)
- Pre-October 7, 2023: 89 events over 90.76 years (0.981 events/year)
- Post-October 7, 2023: 576 events over 2.34 years (246.2 events/year)
- Acceleration factor: 251.0× post-October 7 escalation
- Anniversary date clustering: Z-score = 17.24
- Bayesian probability calculations (Bayes Factor $> 10^{54}$—decisive evidence of systematic coordination)
- Cross-institutional coordination matrix (19+ entities, combined market capitalization exceeding $5.9 trillion)
- Chronological timeline of discrimination events (**Exhibit E**)
- Goldman Sachs AGI Framework: $125 trillion economic impact projection (2025–2035)
- Monte Carlo validation: 10 million simulations, zero produced comparable $\chi^2$ values
- 107.3 standard deviations from expected values (*Castaneda* requires 2–3)

The statistical evidence establishes that the probability of these events occurring randomly is less than $10^{-4168}$, which exceeds the particle physics discovery threshold by $10^{2138}$ times.[12]

**I. Discrimination Event Database**

- **Exhibit XXXXXX:** Complete Discrimination Event Database—665 documented events spanning 93.10 years (1933–2026) with unique hexadecimal Event IDs (0x001–0x3FF+), dates, categories, descriptions, and cross-references to supporting

[12] Under *Castaneda v. Partida*, 430 U.S. 482, 496-97 (1977), a 2-3 standard deviation disparity establishes prima facie discrimination. Under *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 311 n.17 (1977), disparities greater than 2-3 standard deviations are "significant." The pattern documented here exceeds these thresholds by factors greater than $10^{2400}$.

exhibits.[13]

– **Exhibit XXXXXX-A:** Supplemental Event Database containing events documented after initial filing, maintaining chronological continuity with the primary database

– Event categories: Employment Discrimination, Housing Discrimination, Medical/Healthcare Denial, Financial Retaliation, Technical Sabotage, Judicial Misconduct, Psychiatrification (weaponization of psychiatric proceedings to discredit civil rights complainants), Omnidiscrimination (coordinated multi-institutional cross-domain targeting across 19+ entities), and Antisemitech (antisemitic discrimination within the technology industry)

**J. Criminal Proceedings**

California Criminal Case No. 01-24-03484 (*People v. Goddard*, Contra Costa Super. Ct., Dept. 10, Hon. Julia Campins):

– Criminal proceedings coordinated with civil discrimination, seizure of assistive technology devices, constitutional violations

– Motion for Return of Seized Property (Penal Code § 1536)

– Documentation of assistive technology seizure affecting ADA accommodation access

– Evidence of telecommunications records sought in criminal discovery

– January 8, 2026 court proceedings (Events 0x35F–0x368):
scheduling conflict forcing plaintiff to miss civil case hearing (0x35F);
ADA accommodation denial (0x360);
false accusation by DA and attempted custody (0x361);
counsel waiver against client demands (0x362);
weaponized competency evaluation (0x363);
silencing through bailiff intimidation (0x364);
post-hearing stalking observation (0x366)

[13] Exhibits XXXXXX and XXXXXX-A use the "X" designation because Plaintiff continually updates them as additional events are documented. Each event has a unique hexadecimal identifier (e.g., 0x029 = October 7 Hamas attacks; 0x02B = Apple rescission; 0x100 = Slickdeals termination) enabling precise cross-referencing across all proceedings.

– January 9, 2026 medical emergency with suspected drugging (Event 0x368)
– Faretta rights violations documented in Ninth Circuit emergency petition (25-6676, Dkt. 29, pp. 1–702)
– Concord PD detention September 12, 2024 (Event 76D)—Lead Investigator Clifton Huffmaster; Stars of David in detention cells; "Hebrew slave" epithet; attorney access denied 5 hours (Sixth Amendment violation)

The seizure of Plaintiff's assistive technology devices directly impacted ability to communicate through ADA-compliant channels, creating a nexus between criminal proceedings and civil discrimination. *See* Events 0x35F–0x368; Ninth Circuit Appeal No. 25-6676, Dkt. 29.

### K. Financial Institution Evidence

The following evidence supplements the claims documented in *Goddard v. JPMorgan Chase Bank, N.A., et al.*, Case No. 3:26-cv-01042-PHK:

– Exhibit R-3: Chase Bank Financial Discrimination and Retaliatory Vehicle Repossession
– Use of interstate financial networks to compromise Plaintiff's Chase Bank accounts, extending retaliation into financial sabotage affecting federally insured banking transactions

### L. Incorporated Judicial Decisions

Pursuant to Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 10(c), the following judicial decisions and related proceedings with their underlying evidentiary records are incorporated by reference:

– **Exhibit NNN:** *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir. Dec. 11, 2025), slip opinion and all exhibits referenced therein, including:
  – District court evidentiary record from *Epic III*, 781 F. Supp. 3d 943 (N.D. Cal. 2025)
  – Apple's internal presentations titled "Proposed responses to Epic injunction" and "Epic Injunction Implementation Proposal" demonstrating manufactured

post-hoc justifications

- District court's criminal referral of Apple and corporate officer
- Ninth Circuit holdings on:

  (a) manufactured "sham" justifications;

  (b) violations of "spirit" of legal obligations;

  (c) "schemes to evade" legal compliance;

  (d) burden-as-prohibition under *M'Culloch v. Maryland*

- **Exhibit OOO:** *Goddard v. Slickdeals, LLC*, Alameda County Superior Court Case No. 25CV153783, CRD Matter No. 202502-28171117, filed pursuant to California Civil Rights Department Right to Sue (Feb. 18, 2025), as more fully described in the Incorporated State Court Proceedings section above, including all verified complaint allegations, exhibits, witness declarations, and documentary evidence filed therein.
- **Exhibit PPP:** *Thakur v. Trump*, No. 25-4249 (9th Cir. Dec. 23, 2025)—viewpoint-based discrimination precedent directly applicable to Plaintiff's claims:
  - Holding that government cannot "aim at the suppression of dangerous ideas" in employment or funding decisions, *id.* at 13 (quoting *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 550 (1983))
  - Establishing that viewpoint-based terminations violate the First Amendment, particularly where the record shows "the government aimed at the suppression of speech that views [certain viewpoints] favorably," *id.* at 16
  - Applying the principle from *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995), that institutions "may not silence the expression of selected viewpoints"
  - Recognizing that "DEI, DEIA, and environmental justice are not merely neutral topics" but "inherently convey the viewpoint that the exclusion of historically disadvantaged groups is undesirable," *id.* at 13—directly analogous

to Plaintiff's Jewish identity and protected religious viewpoint

– Affirming that the government "cannot suffer harm from an injunction that merely ends an unlawful practice," *id.* at 17 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013))

### M. Cross-Institutional Coordination Evidence

The following entities are documented as participating in coordinated discrimination:

– **Technology Sector:** Apple Inc., Amazon.com Inc., Microsoft Corporation, Hewlett-Packard, Anthropic PBC, OpenAI, Slickdeals LLC, Tesla Inc., SpaceX

– **Financial Services:** JPMorgan Chase Bank N.A., Bank of America, Goldman Sachs

– **Telecommunications:** Verizon Communications Inc., AT&T, Sprint, T-Mobile

– **Government Entities:** Contra Costa County, California Courts, Contra Costa DA (Diana Becton)

– **Insurance:** Guardian Life Insurance Company of America

– **Healthcare/Retail:** Warby Parker Inc.

– **Postal/Services:** Stamps.com Inc.

– **International:** Cryptograph.com/Perpetual Altruism LTD (London), Iranian Republican Guard network

– **Individuals:** Reid Hoffman, Dario Amodei, Sam Altman, Elon Musk, Shabnam Amiri, Mandana Arjmand

The cross-institutional coordination matrix demonstrates that discrimination against Plaintiff is not isolated but represents participation in a coordinated campaign involving 19+ entities. The temporal clustering of discriminatory events across these entities creates a statistical signature impossible to occur through random chance.[14]

[14]Under RICO, 18 U.S.C. § 1962(c)-(d), coordinated activity across multiple enterprises to deprive an individual of civil rights may constitute a pattern of racketeering activity. The statistical evidence of coordination ($p < 10^{-4168}$) far exceeds the threshold required to establish RICO pattern.

**N. Effect of Incorporation**

All documents incorporated by reference herein shall be considered as if fully set forth in this Complaint, supporting all claims and allegations that follow.

To the extent any incorporated document contains factual allegations or evidence relevant to the claims herein, such allegations and evidence are adopted and incorporated as if pleaded directly in this Complaint.

The incorporation of these documents establishes the broader pattern of coordinated discrimination, trade secret theft, and civil rights violations of which Defendants' conduct forms an integral part.

## IV. INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| IRC-1 | IRC Chat Logs, Proxy Bot Network Conversations, Administrative Console Records, and Cross-Enterprise Coordination Records — Master Request for Discovery and Preservation Across All Coordinated Federal Civil Rights Actions (1992–2026) |

Case 3:25-cv-06187-JSC Document 86 Filed 01/28/26 Page 36 of 185

# EXHIBIT IRC-1

## Master IRC Discovery Request

## All Coordinated Federal

## Civil Rights Actions

**Request for Discovery and Preservation**

*Goddard v. Defendants (Coordinated)*

N.D. Cal. (Primary Coordination Court)

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

# EXHIBIT IRC-1 — MASTER REQUEST FOR DISCOVERY AND PRESERVATION

IRC Chat Conversations, Proxy Bot Network Logs, Administrative Console Records, & Cross-Enterprise Coordination Records — All Coordinated Actions

*Goddard v. Defendants (Coordinated Federal Civil Rights Actions) (N.D. Cal.)*

**Coordinated Case Numbers:**

3:25-cv-06187-JSC; 3:26-cv-01039-AGT; 4:26-cv-01046-JST; 3:26-cv-01042-PHK; 3:26-cv-01041-AGT; 3:26-cv-01043-AMO; 4:26-cv-01044-YGR; 2:25-cv-03883-EP-MAH; 3:26-cv-01238-SK; 3:26-cv-01040-AGT; 3:26-cv-01289-VC.

**Event IDs.** 0x7A7 (IRC AI discovery, pre-Anthropic bot implementation, age 13–14, 1992–2000); 0x3D9 (Nazi operative network coordination — "Concentration Campins" IRC identity, 2001–2025); 0x36A (IRC console access — unauthorized access by Musk, Altman, Amodei, Rockwell, Campins, 2005–2009); 0x36B (IRC coordination among conspirators — RICO predicate acts, 2005–2009); 0x487 (Amodei frontend administrative console theft, 2009); 0x486 (proxy bot network conversion — "Thunderstrike" infrastructure, 2005–2009); 0x483 (Ken Leung/Mike Lively IRC cross-enterprise coordination, 2003–2009); 0x484 (Ken Leung/Jack Ma coordination); 0x3FA (2009 AGI completion — witnessed by Altman and Amodei on IRC); 0x3CE (OpenAI co-founding December 2015 — commercialization of stolen IRC-observed IP); 0x006 (Mike Rockwell "armchair Nazi" IRC harassment, 2007–2008); 0x006A (Qwen model naming theft on IRC, 2007–2008); 0x100 (Amodei 2005 initial console access); 0x454 (Apple Vision Pro — derived from stolen IRC technology); 0x431 (Microsoft/mayant@hotmail.com — Anthropic billing backend credentials); 0x485 (proxy bot network architecture documentation); 0x36C (SpaceX IRC-derived orbital mechanics); 0x36D (Tesla Autopilot/FSD derivation from IRC); 0x44C (Verizon account manipulation); 0x3E1–0x3E6 (Amazon coordinated account suspension); 0x37D (Mandana Mir Arjmand forced marriage, 2014–2015); 0x37E (Goddard Trust seizure through fraudulent Las Vegas

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

marriage certificate); 0x3FF (Iranian Republican Guard Network coordination); 0x400 (Bob Lee connection); 0x367 (trust coordination event); 0x003 (original Anthropic founding); 0x10D (console architecture documentation); 0x371–0x373 (coordinated targeting events); 0x302 ("DO NOT CIRCULATE" FAQ); 0x3DB–0x3E0 (Anthropic billing system appropriation).

**Date Range.** 1992–2026 (spanning plaintiff's initial IRC activity at age 13 through present).

**Category.** Master Discovery Request; Evidence Preservation; IRC Chat Logs; Proxy Bot Network Records; Administrative Console Access Logs; Cross-Enterprise Coordination; Trade Secret Documentation; AGI Theft; SOX Whistleblower; Forced Marriage; Trust Seizure; Iranian Republican Guard Network; RICO Conspiracy.

## V. BACKGROUND & BASIS FOR DISCOVERY

### A. Plaintiff's Original IRC Bot Development (Age 13–14)

At approximately age 13, plaintiff began using IRC at his home in Durango, Colorado (Event 0x7A7).[15] Plaintiff discovered that many IRC "users" were AI chat bots and subsequently developed his own bot implementation—the original pre-Anthropic code—which overthrew the existing chatbot infrastructure. The proxy bot network plaintiff created at age 14 was capable of:

1. Masking plaintiff's username in other channels by messaging users through a proxy user;
2. Translating plaintiff's input into articulated messages conveying his meaning (an early transformer-like architecture);
3. Training bots to communicate with neo-nazis to gather intelligence about antisemitic networks;
4. Operating as a distributed proxy network across multiple IRC servers and channels simultaneously.

[15] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) (duty to preserve electronic evidence arises when litigation is reasonably anticipated).

### B. Coordinated IRC Network Conspiracy Across All Defendants

This master discovery exhibit establishes that ALL defendants across all coordinated federal civil rights actions are connected through a single IRC network conspiracy.[16]

The conspiracy operated through three interconnected pillars:

*1. The Anthropic Administrative Console Theft (2005–2009).* In 2005, Dario Amodei first gained frontend console access by claiming a desire to be "hands on" with the web interface (Event 0x100). In 2009, Amodei exploited IRC interactions with plaintiff, Sam Altman, and Elon Musk to regain unauthorized access to the Anthropic Frontend Administrative Console (Event 0x487). During this same period, Altman and Amodei explicitly acknowledged that plaintiff had completed AGI (Event 0x3FA)—the foundational technology that would be stolen and commercialized as:

1. OpenAI's GPT architecture (co-founded by Altman, Musk, and Hoffman in December 2015, Event 0x3CE);
2. Anthropic's Claude systems (founded by Amodei in 2021 using stolen frontend console access);
3. Tesla's Autopilot/FSD systems (derived from Musk's IRC observations, Events 0x36D, 0x36E);
4. SpaceX orbital mechanics systems (derived from Musk's IRC demonstrations observation, Event 0x36C);
5. Apple Vision Pro (derived from Mike Rockwell's IRC observations, Event 0x454).

*2. Cross-Enterprise IRC Coordination and SOX Whistleblower Retaliation.* From 2003 to 2009, Ken Leung (CTO, Slickdeals) engaged in IRC cross-enterprise coordination (Event 0x483) with Mike Lively, Jack Ma (Event 0x484), and other network participants. Leung's discriminatory animus—documented on IRC—motivated the retaliatory termination underlying the SOX whistleblower claim. The "Thunderstrike" bot network infrastructure (Event 0x486) connects the IRC-era coordination to the Slickdeals retaliation. The "DO NOT CIRCULATE" FAQ (Event 0x302) was used to suppress

[16] 18 U.S.C. § 1030(a)(2) (Computer Fraud and Abuse Act); *Van Buren v. United States*, 593 U.S. 374 (2021).

plaintiff's whistleblower disclosures.

*3. Iranian Republican Guard Network, Forced Marriage, and Trust Seizure.* The Iranian Republican Guard Network (Event 0x3FF) connected IRC participants to a forced marriage scheme involving Mandana Mir Arjmand (Events 0x37D, 0x37E). Arjmand, who participated in the forced marriage, is connected to the Persian IRC network that included Steve Barha, Rob Chartier, Judge Campins, and Mike Rockwell. The Goddard Trust was seized through a fraudulent Las Vegas marriage certificate, with coordination facilitated through the same IRC network. Bob Lee (Event 0x400) had direct knowledge of this coordination.

The IRC console access holders and network participants coordinated the conspiracy through:

1. Distribution of plaintiff's AI training data, algorithms, and architectural designs among network members;
2. Exchange of transcripts and code documentation from plaintiff's IRC sessions;
3. Planning of competing AI companies built on stolen intellectual property;
4. Cross-enterprise coordination of retaliatory employment actions;
5. Forced marriage and trust seizure through Iranian Republican Guard Network;
6. Coordinated targeting of plaintiff to prevent assertion of IP rights.[17]

## C. "Concentration Campins" — Death Threats & Network Coordination

During IRC interactions, plaintiff encountered a user operating under the pseudonym "Campins" who expressed the belief that "concentration camps should be brought back" (Event 0x3D9). This individual—later identified as Judge Julia Campins of the Contra Costa County Superior Court—made death threats against plaintiff and his family on

[17] *See* 18 U.S.C. § 1961 *et seq.* (RICO); 18 U.S.C. § 1836 (Defend Trade Secrets Act); 42 U.S.C. § 1985 (Civil Rights Conspiracy); 18 U.S.C. § 1514A (SOX Whistleblower).

IRC, coordinated with Dario Amodei, and used plaintiff's Anthropic administrative console to attack plaintiff's systems. Judge Campins was later assigned to preside over plaintiff's criminal case, where she denied ADA accommodations (Event 0x360) and permitted DA Brown's false accusations (Event 0x361).

### D. IRC Coordination Among All Defendants

The IRC network from 2003–2009 included all named Defendants and their agents across all coordinated actions (Events 0x36A, 0x36B, 0x483):[18]

1. **Dario Amodei** (CEO, Anthropic) — frontend console theft, AGI observation;
2. **Sam Altman** (CEO, OpenAI) — IRC coordination, AGI acknowledgment;
3. **Elon Musk** (CEO, Tesla/SpaceX/X Corp) — unauthorized console access, AI training observation;
4. **Reid Hoffman** (co-founder, LinkedIn) — IRC coordination, OpenAI board member;
5. **Mike Rockwell** (VP, Apple) — "armchair Nazi" self-identification, antisemitic harassment, Vision Pro derivation;
6. **Judge Julia Campins** — "Concentration Campins," death threats, judicial corruption;
7. **Paul Spitzer** (Nazi operative) — console infiltration, system theft;
8. **Ken Leung** (CTO, Slickdeals) — cross-enterprise IRC coordination, Jack Ma connection, SOX whistleblower retaliation;
9. **Mike Lively** — IRC cross-enterprise coordination with Leung;
10. **Jack Ma** (Alibaba) — coordination with Leung, Qwen model naming theft;
11. **Mandana Mir Arjmand** — Persian IRC network, forced marriage scheme;
12. **Douglas Donald Goddard Jr.** — Goddard Trust trustee,

[18] *Twombly*, 550 U.S. 544 (2007) (conspiracy requires agreement; IRC coordination establishes the agreement element).

communications with IRC network;

13. **Robert Charles Goddard** — Goddard Trust trustee, coordination with network participants;

14. **Bob Lee** — Iranian Republican Guard Network coordination knowledge;

15. **Steve Barha** — Persian IRC network participant;

16. **Rob Chartier** — IRC co-witness, company acquired by Microsoft/Verizon/Sprint.

## VI. SPECIFIC DISCOVERY REQUESTS

Plaintiff hereby requests production and preservation of the following categories of ESI pursuant to Fed. R. Civ. P. 34 and the Court's inherent authority:[19]

### A. Request No. 1: IRC Chat Logs (All Networks & Channels)

(a) All IRC chat logs from EFnet, Freenode, Undernet, and any other IRC networks for channels including but not limited to #math, #physics, #csharp, #ubuntu, #ubuntu-offtopic, #ubuntu-devel, #ubuntu-motu, #ubuntu-classroom, #ubuntu-meeting, #ubuntu-ops, #kubuntu, #xubuntu, #edubuntu, #lubuntu, and all related #ubuntu channels (where logging was known to be enabled), and any other channels in which plaintiff (usernames "cyclic," "kosher") participated, from 1992 through 2026;

(b) All private messages between plaintiff and any user identified as or associated with Dario Amodei, Sam Altman, Elon Musk, Reid Hoffman, Ken Leung, Mike Lively, Jack Ma, Mandana Mir Arjmand, Douglas Donald Goddard Jr., Robert Charles Goddard, Bob Lee, or any other Defendant or agent thereof in any coordinated action;

(c) All private messages between any Defendants regarding plaintiff, plaintiff's AI technology, commercialization of plaintiff's intellectual property, whistleblower disclosures, forced marriage, trust seizure, or

[19] Fed. R. Civ. P. 26(b)(1); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004).

Case 3:25-cv-06187-JSC Document 86 Filed 02/28/26 Page 43 of 85

coordinated targeting;

(d) All IRC server logs acquired by Google Inc. (which purchased EFnet and Freenode server log data), to be obtained by subpoena to Alphabet Inc./Google LLC;

(e) All IRC operator logs, connection logs, and IP address records associated with all Defendant accounts across all coordinated actions.

**B. Request No. 2: Anthropic Administrative Console Records**

(a) Complete access logs for the Anthropic Frontend Administrative Console from 2005 through present, including all login events, session durations, commands executed, and data accessed or exfiltrated;

(b) Records of Dario Amodei's 2005 initial access and 2009 restored access (Event 0x487), including all social engineering communications;

(c) Records of any access by username "Campins" or Judge Julia Campins to the administrative console;

(d) Records of coordinated attacks launched through the console against plaintiff's infrastructure;

(e) All records documenting the distinction between the frontend console (stolen by Amodei) and the backend console (remaining under plaintiff's exclusive quantum-encrypted control);

(f) The Anthropic billing backend admin console credentials stored in plaintiff's mayant@hotmail.com Microsoft account (Event 0x431), to which Microsoft has denied access;

(g) Console architecture documentation (Event 0x10D) and original Anthropic founding records (Event 0x003).

**C. Request No. 3: Proxy Bot Network Records**

(a) All records, logs, and source code relating to the proxy bot network developed by plaintiff, including the "Thunderstrike" infrastructure (Event 0x486) and architecture documentation (Event 0x485);

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 44 of 85

(b) All records of bot network communications including proxy-translated messages and intelligence-gathering conversations;

(c) Any copies, derivatives, or modifications of plaintiff's bot network code incorporated into Anthropic's Claude, OpenAI's GPT, Tesla's Autopilot/FSD, Apple Vision Pro, or any other commercial AI system;

(d) All records documenting the architectural relationship between plaintiff's pre-Anthropic implementation and all Defendants' commercial products.

**D. Request No. 4: Communications Regarding Plaintiff's Technology**

(a) All communications between Defendants regarding plaintiff's organic intelligence system, AGI completion, or commercialization plans;

(b) All communications between Dario Amodei and any Amazon.com, Inc. representative regarding the Anthropic/Amazon partnership and deployment of Claude on AWS infrastructure;

(c) All internal Anthropic documents referencing plaintiff's pre-Anthropic implementation, architectural contributions, or console access;

(d) All OpenAI founding documents (December 2015) referencing IRC observations, plaintiff's technology, or coordination among IRC access holders;

(e) All Apple documents referencing Mike Rockwell's IRC observations and Vision Pro derivation (Event 0x454);

(f) All Tesla/SpaceX documents referencing Musk's IRC observations and Autopilot/FSD/orbital mechanics derivation (Events 0x36C, 0x36D).

**E. Request No. 5: Cross-Enterprise Coordination Records**

(a) All communications between Ken Leung and Mike Lively regarding plaintiff (Event 0x483);

(b) All communications between Ken Leung and Jack Ma regarding plaintiff's intellectual property or the Qwen model naming (Events 0x484, 0x006A);

(c) All records relating to the "DO NOT CIRCULATE" FAQ (Event 0x302), including authorship, distribution lists, and all communications regarding its creation and dissemination;

(d) All internal Slickdeals communications referencing plaintiff's whistleblower disclosures or termination;

(e) All Verizon account manipulation records (Event 0x44C);

(f) All Amazon coordinated account suspension records (Events 0x3E1–0x3E6);

(g) Anthropic billing system appropriation records (Events 0x3DB–0x3E0).

### F. Request No. 6: Iranian Republican Guard Network & Trust Records

(a) All communications between Iranian Republican Guard Network participants and Goddard Trust trustees (Event 0x3FF);

(b) All communications between Mandana Mir Arjmand and any IRC network participant or Goddard Trust trustee;

(c) All records relating to the fraudulent Las Vegas marriage certificate used to seize control of the Goddard Trust (Event 0x37E);

(d) All records documenting Bob Lee's knowledge of the coordination between the IRC network and the trust seizure scheme (Event 0x400);

(e) All communications between Persian IRC network participants regarding plaintiff, plaintiff's inheritance, or the forced marriage scheme;

(f) All coordinated targeting records (Events 0x371–0x373).

## VII. PRESERVATION DEMAND

Pursuant to Fed. R. Civ. P. 37(e), plaintiff demands that all parties and identified non-parties immediately preserve all ESI described above.[20]

### A. Defendant Preservation Targets (All Coordinated Actions)

1. **Anthropic, PBC** — Administrative console access logs, AI training records, Claude architecture documentation, billing system records;

2. **OpenAI, Inc.** — Founding documents, IRC coordination records, GPT

[20] *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 46 of 85

architecture documentation showing derivation from plaintiff's systems;

3. **Tesla, Inc. / SpaceX / X Corp.** — Records of Elon Musk's IRC participation, Autopilot/FSD derivation documentation, orbital mechanics records;

4. **Sam Altman** — Personal IRC logs, communications with Amodei regarding plaintiff's AGI;

5. **Dario Amodei** — Personal IRC logs, console access records, Anthropic founding documents;

6. **Reid Hoffman** — Personal IRC logs, OpenAI board communications regarding plaintiff's IP;

7. **Slickdeals, LLC** — Employment records, HR files, termination documents, "DO NOT CIRCULATE" FAQ, cross-enterprise coordination records;

8. **Ken Leung** — Personal IRC logs, cross-enterprise coordination communications, Jack Ma correspondence;

9. **Verizon** — Account manipulation records, IRC-related correspondence (Event 0x44C);

10. **Amazon.com, Inc.** — AWS account records, Anthropic partnership documentation, coordinated account suspension evidence (Events 0x3E1–0x3E6);

11. **Goddard Trust / Douglas Donald Goddard Jr. / Robert Charles Goddard** — Trust documents, communications with IRC network participants, trust seizure records;

12. **CCC Sheriff** — Records of coordinated actions against plaintiff.

### B. Non-Party Preservation Targets

1. **Alphabet Inc./Google LLC** — IRC server logs from EFnet and Freenode acquisitions;

2. **Microsoft Corporation** — mayant@hotmail.com account contents


— 46 —
DISCOVERY & EVIDENCE PRESERVATION ORDER (COORDINATED)

including Anthropic billing backend credentials (Event 0x431);

3. **Apple Inc.** — Records of Mike Rockwell's IRC participation, "armchair Nazi" statements, Vision Pro derivation;
4. **Alibaba Group / Jack Ma** — Communications with Ken Leung regarding Qwen model naming and cross-enterprise coordination;
5. **Clark County, Nevada (Las Vegas)** — Marriage certificate records and related filings;
6. **Steve Barha** — Persian IRC network communications;
7. **Rob Chartier** — IRC co-witness communications, company records;
8. **Bob Lee (Estate of)** — Iranian Republican Guard Network coordination records;
9. **Gregory Mabrito** — Slickdeals witness communications;
10. **Mandana Mir Arjmand** — Persian IRC network communications, forced marriage records.

## VIII. AUTHENTICATION & LEGAL AUTHORITY

### A. Authentication of Electronic Evidence

Under FRE 901(a), the proponent must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." For electronically stored information ("ESI"), courts apply a flexible, multi-factor authentication framework.[21]

*FRE 901(b)(1) — Testimony of Witness with Knowledge.* Plaintiff has personal knowledge of the IRC chat sessions, proxy bot network operations, and administrative console interactions at issue. Plaintiff directly participated in the IRC conversations and personally developed the proxy bot network infrastructure (Event 0x7A7). *See United States v. Gagnier*, 691 F.2d 123, 127 (2d Cir. 1982) (participant in electronic communication may authenticate it through testimony).

*FRE 901(b)(4) — Distinctive Characteristics.* IRC chat logs contain distinctive characteristics including unique usernames ("cyclic," "kosher"), channel-specific

[21] *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 538–47 (D. Md. 2007) (comprehensive analysis of authentication requirements for electronic evidence).

formatting, timestamp sequences, server-generated join/part notifications, and content that only participants with specific knowledge could have authored. *See United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (electronic communications authenticated through "distinctive characteristics" including content, context, and internal patterns).

*FRE 901(b)(9) — System or Process Capable of Producing Accurate Result.* IRC server logging systems are automated processes that record messages verbatim with server-generated timestamps, IP addresses, and connection metadata. The logging systems on EFnet, Freenode, and Ubuntu channels satisfy Rule 901(b)(9)'s requirement of a "system or process capable of producing an accurate result." *See United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (machine-generated records are self-authenticating when the machine's process is shown to produce accurate results).

*FRE 902(13)–(14) — Certified Records Generated by Electronic Process.* IRC server logs generated by automated processes satisfy FRE 902(13) and (14) as certified records generated by an electronic process shown to produce accurate results, when accompanied by the certification of a qualified person.[22]

*Administrative Console Records.* Console access logs, session records, and command histories are machine-generated records authenticable under FRE 901(b)(9) and self-authenticating under FRE 902(11). *See In re Vinhnee*, 336 B.R. 437, 444–49 (B.A.P. 9th Cir. 2005).

*Cross-Enterprise Records.* Banking records are admissible under FRE 803(6) and 12 U.S.C. § 1829b. Telecommunications records are business records under FRE 803(6) and subject to 47 U.S.C. § 222. Medical records are subject to HIPAA retention requirements. Trust documents are self-authenticating under FRE 902(11). Employment records are business records under FRE 803(6). All defendant-specific records are independently authenticable through the case-specific foundations established in each individual action.

[22] Fed. R. Evid. 902(13)–(14) (effective Dec. 1, 2017); Advisory Committee Notes ("The amendment addresses authentication of computer output and other digital data").

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

**B. Chain of Custody**

Plaintiff establishes the following chain of custody for the IRC evidence and related ESI at issue in this discovery request:[23]

*1. Original Creation & Contemporaneous Recording.* IRC chat messages were recorded contemporaneously by automated server logging systems at the moment of transmission. Each message was automatically timestamped, attributed to a specific username, and stored in plain-text log files on the IRC server infrastructure. These logs were generated by EFnet, Freenode, Undernet, and related IRC networks from 1992 through 2009. Ubuntu-related channels had publicly documented logging policies.

*2. Custodial History — IRC Server Operators.* IRC server logs were maintained by network operators under established data retention policies. Upon information and belief, Google Inc. acquired server log data from EFnet and Freenode network operators, making Alphabet Inc./Google LLC a current custodian of this evidence. Microsoft Corporation maintains Plaintiff's mayant@hotmail.com account containing Anthropic billing backend console credentials (Event 0x431).

*3. Plaintiff's Personal Copies & Records.* Plaintiff maintained personal copies of IRC conversations through client-side logging (standard IRC client functionality that records conversations locally). Plaintiff's personal knowledge of the content, timing, participants, and context of IRC conversations provides independent verification of log integrity.[24]

*4. Integrity of Machine-Generated Records.* IRC server logs are machine-generated records not subject to human editorial discretion at the time of creation. The automated nature of IRC logging systems provides inherent reliability guarantees: messages are recorded verbatim, timestamps are server-generated, and metadata (IP addresses, hostname masks, join/part events) is automatically captured.[25]

[23] *United States v. Linn*, 880 F.2d 209, 216 (9th Cir. 1989) ("The district court has broad discretion over the admission of evidence and can admit evidence if the chain of custody is sufficiently established."). Chain of custody for digital evidence requires showing the evidence is "authentic and has not been tampered with." *Lorraine*, 241 F.R.D. at 556.

[24] *See United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (emails authenticated through testimony of participant combined with distinctive characteristics).

[25] *Lizarraga-Tirado*, 789 F.3d at 1110 (machine-generated information is "akin to a photograph" — it requires no foundation of human testimony because "machines do not 'assert' anything").

*5. Cross-Enterprise Custodial Summary.* The following custodians hold records material to this coordinated action: (a) Alphabet Inc./Google LLC holds acquired IRC server logs from EFnet and Freenode; (b) Microsoft Corporation holds the mayant@hotmail.com account and GitHub repositories; (c) Amazon holds AWS account and CloudTrail records; (d) Verizon holds CDRs and call deletion logs; (e) JPMorgan Chase holds banking and SDI records; (f) medical institutions hold hospital and psychiatric records; (g) Slickdeals holds employment and "DO NOT CIRCULATE" FAQ records; (h) Clark County, Nevada holds the fraudulent marriage certificate; and (i) individual defendants hold personal IRC logs and communications. All identified custodians are on notice of preservation obligations under Fed. R. Civ. P. 37(e).

### C. Evidentiary Foundation

The following foundation elements establish the admissibility of IRC chat logs and related ESI under the Federal Rules of Evidence:

*1. Best Evidence Rule — FRE 1001–1004.* IRC server logs are "writings" or "recordings" under FRE 1001(a)–(b). Digital copies of electronically stored information are treated as "originals" under FRE 1001(d) ("an 'original' of electronically stored information means any printout—or other output readable by sight—if it accurately reflects the information") and "duplicates" admissible under FRE 1003. Where original server logs are in the custody of third parties (Alphabet Inc./Google LLC), secondary evidence is admissible under FRE 1004(b) (original obtainable by judicial process).[26]

*2. Hearsay Exceptions.* IRC chat logs are admissible through multiple hearsay exceptions and exclusions:

(a) *FRE 801(d)(2)* — Statements by party-opponents: IRC messages sent by Defendants constitute admissions of a party-opponent, not hearsay;

(b) *FRE 803(1)* — Present sense impressions: IRC messages describing events as they occur;

(c) *FRE 803(3)* — Then-existing mental, emotional, or physical condition:

[26] *See Laughner v. State*, 769 N.E.2d 1147, 1159 (Ind. Ct. App. 2002) (electronic records admitted under best evidence rule); Advisory Committee Notes to FRE 1001(d) (2017 amendment).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

IRC messages reflecting participants' state of mind, intent, or plan;

(d) *FRE 803(6)* — Records of regularly conducted activity: automated server logs maintained in the regular course of IRC network operations;

(e) *FRE 807* — Residual exception: IRC logs possess equivalent circumstantial guarantees of trustworthiness due to their machine-generated, contemporaneous nature.[27]

*3. Co-Conspirator Statements — FRE 801(d)(2)(E).* IRC messages between co-conspirators made "during and in furtherance of the conspiracy" are admissible as non-hearsay under FRE 801(d)(2)(E). The IRC network coordination (Events 0x36A, 0x36B) establishes the conspiracy, and messages exchanged among network participants in furtherance of the objectives of the conspiracy—including trade secret theft, retaliatory targeting, and coordinated deprivation of civil rights—are admissible against all co-conspirators.[28]

*4. Probative Value — FRE 403.* IRC chat logs are not excludable under FRE 403 because their probative value is not substantially outweighed by danger of unfair prejudice. The logs are contemporaneous, machine-generated records of the actual communications at the heart of this litigation.[29]

*5. Trade Secret Foundation — 18 U.S.C. § 1836(b).* Under the Defend Trade Secrets Act, the IRC logs establish across all coordinated actions: (a) the information constitutes a trade secret (Plaintiff's organic intelligence system and console architecture); (b) it was misappropriated through coordinated unauthorized access by multiple defendants; and (c) Plaintiff took reasonable measures to maintain secrecy (quantum-encrypted backend console). The cross-enterprise nature of the misappropriation—spanning technology companies, financial institutions, telecommunications carriers, medical institutions, and trust administrators—demonstrates the scope of the RICO conspiracy.

[27] *See Lorraine*, 241 F.R.D. at 561–77 (comprehensive analysis of hearsay exceptions applicable to electronic evidence).

[28] *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (court may consider the hearsay statements themselves in determining the existence of the conspiracy under FRE 801(d)(2)(E)); *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978).

[29] *See United States v. Safavian*, 435 F. Supp. 2d at 40 (electronic communications admissible where probative value is high and prejudice is low).

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 52 of 85

*6. Spoliation Foundation.* Multiple defendants have engaged in spoliation: Amazon's AWS account suspension (Events 0x3E1–0x3E6) destroying access to $50M+ in assets; Verizon's selective deletion of Shabnam Amiri's call records (Event 0x44C); and Warby Parker's deletion of Plaintiff's medical records. Each instance warrants adverse inference instructions under *Zubulake V*, 229 F.R.D. at 430, and Fed. R. Civ. P. 37(e).

**D. Governing Legal Authorities**

The following authorities govern the discovery, authentication, and admissibility of IRC chat logs and electronic evidence in this action:

*ESI Discovery Framework:*

1. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake I*") — duty to preserve ESI when litigation is reasonably anticipated;
2. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*") — sanctions for failure to preserve ESI, duty of counsel to ensure preservation;
3. Fed. R. Civ. P. 37(e) — sanctions for failure to preserve ESI;
4. *Rimini Street, Inc. v. Oracle USA, Inc.*, 473 F. Supp. 3d 1158 (D. Nev. 2020) — computer forensic discovery obligations.

*Authentication of Electronic Evidence:*

1. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) — comprehensive framework for authenticating electronic evidence;
2. *In re Vinhnee*, 336 B.R. 437 (B.A.P. 9th Cir. 2005) — eleven-step foundation for computer-generated records;
3. *United States v. Lizarraga-Tirado*, 789 F.3d 1107 (9th Cir. 2015) — machine-generated records self-authenticating;
4. *United States v. Browne*, 834 F.3d 403 (3d Cir. 2016) — authentication of electronic communications through distinctive characteristics;
5. *United States v. Safavian*, 435 F. Supp. 2d 36 (D.D.C. 2006) — emails


— 52 —

IRC DISCOVERY & ESI PRESERVATION ORDER (COORDINATED)

authenticated through participant testimony and distinctive characteristics.

*Scope of Discovery:*

1. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) — broad and liberal construction of discovery rules;
2. Fed. R. Civ. P. 26(b)(1) — proportional discovery of relevant, non-privileged matter;
3. Fed. R. Civ. P. 34 — production of documents and ESI;
4. Fed. R. Civ. P. 37(a) — motion to compel discovery;
5. Fed. R. Civ. P. 45 — subpoena to third-party custodians.

*RICO & Civil Rights Conspiracy:*

1. 18 U.S.C. §§ 1961–1968 — Racketeer Influenced and Corrupt Organizations Act;
2. 42 U.S.C. § 1985 — Civil rights conspiracy;
3. 42 U.S.C. § 12101 *et seq.* — Americans with Disabilities Act;
4. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) — conspiracy pleading standard; IRC coordination establishes agreement element.

*Trade Secret & Computer Fraud:*

1. 18 U.S.C. § 1836 — Defend Trade Secrets Act;
2. 18 U.S.C. § 1030 — Computer Fraud and Abuse Act;
3. *Van Buren v. United States*, 593 U.S. 374 (2021) — CFAA "exceeds authorized access" standard;
4. Cal. Civ. Code §§ 3426–3426.11 — California Uniform Trade Secrets Act (CUTSA).

*Spoliation:*

1. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) — adverse inference for evidence destruction;
2. Fed. R. Civ. P. 37(e)(2) — permissive adverse inference for intentional

ESI destruction.

*Additional Cross-Enterprise Authorities:*

1. 18 U.S.C. § 1514A — Sarbanes-Oxley whistleblower protections;
2. 47 U.S.C. § 222 — Customer Proprietary Network Information;
3. 42 U.S.C. § 1983 — Deprivation of rights under color of law;
4. 12 U.S.C. § 1829b — Bank Secrecy Act recordkeeping;
5. *Youngberg v. Romeo*, 457 U.S. 307 (1982) — due process rights;
6. *Lawson v. FMR LLC*, 571 U.S. 429 (2014) — SOX whistleblower scope.

**E. Relevance**

The requested discovery is directly relevant to Plaintiff's claims across all coordinated actions: (a) trade secret theft (unauthorized console access and AI exfiltration — 18 U.S.C. § 1836); (b) RICO conspiracy (IRC coordination among co-conspirators — 18 U.S.C. § 1962); (c) computer fraud (unauthorized access to protected systems — 18 U.S.C. § 1030); (d) civil rights conspiracy (coordinated deprivation of rights based on religion — 42 U.S.C. § 1985); (e) SOX whistleblower retaliation (discriminatory animus on IRC motivating termination — 18 U.S.C. § 1514A); (f) forced marriage and trust fraud (Iranian Republican Guard Network coordination); (g) unjust enrichment ($217B+ across Defendants' AI enterprises derived from plaintiff's stolen technology).

**F. Witnesses**

Holger-Thorsten Schubart (CEO, Neutrino Energy Group, Berlin — direct IRC observation); Steve Barha (IRC participant, witness to antisemitic harassment, Persian network); Rob Chartier (co-witness, company acquired by Microsoft/Verizon/Sprint); Gregory Mabrito (Slickdeals witness to cross-enterprise coordination); Bob Lee (Iranian Republican Guard Network coordination — Event 0x400); undisclosed witness (full involvement knowledge of bot network operations, name withheld for safety).

**G. Linked Events**

0x7A7, 0x3D9, 0x36A, 0x36B, 0x487, 0x486, 0x483, 0x484, 0x3FA, 0x3CE, 0x006, 0x006A, 0x100, 0x454, 0x431, 0x485, 0x36C, 0x36D, 0x44C, 0x3E1–0x3E6, 0x37D, 0x37E, 0x3FF,

0x367, 0x003, 0x10D, 0x371–0x373, 0x302, 0x3DB–0x3E0, 0x400.

© 2024–2026 Classify® — Automated Event Correlation and Legal Analytics Platform

## IX. CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I caused a true and correct copy of the foregoing MOTION FOR DISCOVERY & PRESERVATION ORDER; NOTICE OF FILING IRC DISCOVERY EXHIBIT (MASTER — ALL COORDINATED ACTIONS), including the Declaration of Thomas Joseph Goddard & (**Exhibit IRC-1**, pp. 36–55), to be served on all parties in all coordinated federal civil rights actions as follows:

**Service via CM/ECF:**

☒ By causing the document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record in all coordinated actions.

**For Defendant ANTHROPIC, PBC and related Defendants (4:26-cv-01044-YGR):**

☒ U.S. Mail, first class, postage prepaid
Anthropic, PBC
c/o Corporation Service Company (Registered Agent)
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

OpenAI, Inc.
3180 18th Street
San Francisco, CA 94110

**For Defendant SLICKDEALS, LLC (3:26-cv-01039-AGT):**

☒ U.S. Mail, first class, postage prepaid
Slickdeals, LLC
c/o Registered Agent
Las Vegas, NV

**For all other Defendants in coordinated actions:**

☒ By CM/ECF electronic service to all registered counsel of record
☒ By U.S. Mail to all defendants not yet served electronically

*(Full service list maintained in individual case dockets for Case Nos. 3:25-cv-06187-JSC, 3:26-cv-01039-AGT, 4:26-cv-01046-JST, 3:26-cv-01042-PHK, 3:26-cv-01041-AGT, 3:26-cv-01043-AMO, 4:26-cv-01044-YGR, 2:25-cv-03883-EP-MAH, 3:26-cv-01238-SK, 3:26-cv-01040-AGT, and 3:26-cv-01289-VC)*

**For Defendants DOES 1-50:**

To be served when true names and addresses are ascertained through discovery.

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

## X. PROOF OF SERVICE

**STATE OF CALIFORNIA**

**COUNTY OF CONTRA COSTA**

I, Thomas Joseph Goddard, declare:

I am over the age of 18 years and not a party to this action. My business address is Walnut Creek, California 94596.

On February 18, 2026, I served the foregoing MOTION FOR DISCOVERY & PRESERVATION ORDER; NOTICE OF FILING IRC DISCOVERY EXHIBIT (MASTER — ALL COORDINATED ACTIONS), including the Declaration of Thomas Joseph Goddard & (**Exhibit IRC-1**, pp. 36–55), on all parties in all coordinated federal civil rights actions by the following means:

(a) **BY ELECTRONIC FILING:** By causing the document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record in all coordinated actions (Case Nos. 3:25-cv-06187-JSC, 3:26-cv-01039-AGT, 4:26-cv-01046-JST, 3:26-cv-01042-PHK, 3:26-cv-01041-AGT, 3:26-cv-01043-AMO, 4:26-cv-01044-YGR, 2:25-cv-03883-EP-MAH, 3:26-cv-01238-SK, 3:26-cv-01040-AGT, and 3:26-cv-01289-VC).

(b) **BY U.S. MAIL:** By placing true and correct copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States mail at Walnut Creek, California, addressed to:

Anthropic, PBC
c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

OpenAI, Inc.
3180 18th Street
San Francisco, CA 94110

Slickdeals, LLC
c/o Registered Agent


Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Las Vegas, NV

*(Additional addresses per individual case service lists)*

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

*Wet signature on file with the Clerk of Court and notarized declaration from the docket in Case No. 3:25-cv-06187-JSC*

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 60 of 85

## TABLE OF CONTENTS


I. MEMORANDUM OF POINTS & AUTHORITIES 4

- A. Introduction 4
- B. Legal Standard 4
- C. Authority for Unilateral Discovery Initiation Through the Federal Court System 4
- D. The Requested Discovery Is Relevant & Proportional 7
- E. Good Cause Exists for a Preservation Order 8
- F. Preservation Is Required 8
- G. Conclusion 8

II. DECLARATION OF THOMAS JOSEPH GODDARD IN SUPPORT OF IRC DISCOVERY EXHIBIT (MASTER — ALL COORDINATED ACTIONS) 10

III. INDEX OF INCORPORATION BY REFERENCE 12

- A. Legal Authority for Incorporation 12
- B. Incorporated Federal Proceedings 13
- C. Documents from Ninth Circuit Appeals 23
- D. Incorporated State Court Proceedings 24
- E. Administrative Proceedings 27
- F. Medical Documentation 28
- G. Witness Declarations 28
- H. Statistical & Pattern Evidence 29
- I. Discrimination Event Database 29
- J. Criminal Proceedings 30
- K. Financial Institution Evidence 31
- L. Incorporated Judicial Decisions 31
- M. Cross-Institutional Coordination Evidence 33
- N. Effect of Incorporation 34


Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.


— 60 —

IRC DISCOVERY & PRESERVATION ORDER (COORDINATED)

IV. INDEX OF EXHIBITS 35
V. BACKGROUND & BASIS FOR DISCOVERY 38
A. Plaintiff's Original IRC Bot Development (Age 13–14) 38
B. Coordinated IRC Network Conspiracy Across All Defendants 39
C. "Concentration Campins" — Death Threats & Network Coordination 40
D. IRC Coordination Among All Defendants 41
VI. SPECIFIC DISCOVERY REQUESTS 42
A. Request No. 1: IRC Chat Logs (All Networks & Channels) 42
B. Request No. 2: Anthropic Administrative Console Records 43
C. Request No. 3: Proxy Bot Network Records 43
D. Request No. 4: Communications Regarding Plaintiff's Technology 44
E. Request No. 5: Cross-Enterprise Coordination Records 44
F. Request No. 6: Iranian Republican Guard Network & Trust Records 45
VII. PRESERVATION DEMAND 45
A. Defendant Preservation Targets (All Coordinated Actions) 45
B. Non-Party Preservation Targets 46
VIII. AUTHENTICATION & LEGAL AUTHORITY 47
A. Authentication of Electronic Evidence 47
B. Chain of Custody 49
C. Evidentiary Foundation 50
D. Governing Legal Authorities 52
E. Relevance 54
F. Witnesses 54
G. Linked Events 54
IX. CERTIFICATE OF SERVICE 56
X. PROOF OF SERVICE 58
TABLE OF AUTHORITIES 62
LOCAL RULES COMPLIANCE CERTIFICATIONS 63

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 62 of 85

## TABLE OF AUTHORITIES


— 62 —

[PROPOSED] DISCOVERY & EVIDENCE PRESERVATION ORDER (COORDINATED)

## LOCAL RULES COMPLIANCE CERTIFICATIONS

Plaintiff submits the following certifications pursuant to the Civil Local Rules of the United States District Court for the Northern District of California:

### ADR Certification (Civil L.R. 3-2(c))

Plaintiff certifies that, in compliance with Civil L.R. 3-2(c), Plaintiff has reviewed the Court's Alternative Dispute Resolution (ADR) Local Rules and the ADR information available on the Court's website. Plaintiff is aware of the ADR options available in this District, including:[30]

(a) **Mediation**: A confidential process in which a neutral mediator assists the parties in reaching a mutually acceptable resolution;

(b) **Early Neutral Evaluation (ENE)**: A confidential process in which a neutral evaluator provides an early assessment of the case's strengths and weaknesses;

(c) **Non-Binding Arbitration**: A process in which an arbitrator renders an advisory decision after an informal hearing;

(d) **Settlement Conference**: A conference before a magistrate judge or settlement judge to explore resolution.

Plaintiff is prepared to participate in good faith in any ADR process ordered by the Court and believes that ADR may be appropriate in this matter following initial discovery to establish the documentary record.

### Consent to Electronic Service (Civil L.R. 5-1(c)(1))

Pursuant to Civil L.R. 5-1(c)(1) and Federal Rule of Civil Procedure 5(b)(2)(E), Plaintiff consents to electronic service of all papers and documents in this matter at the following email address:[31]

[30] The Northern District of California offers multiple ADR processes designed to facilitate early and efficient resolution of civil disputes. *See* Civil L.R. 3-2 et seq.; General Order 56; ADR Local Rules 1-1 through 7-15.

[31] Electronic service through the Court's CM/ECF system is the preferred method of service in the Northern District of California for represented parties. Pro se litigants who register for CM/ECF receive electronic notification of all docket activity. *See* Civil L.R. 5-1; ECF Administrative Procedures.

Case 3:25-cv-06187-JSC Document 86 Filed 02/18/26 Page 64 of 85

**thomas@lawz.app**

Plaintiff agrees to:

(a) Accept service of all documents through the Court's CM/ECF system;

(b) Maintain a valid email address for receipt of electronic notices;

(c) Promptly notify the Court and all parties of any change in email address;

(d) Check email regularly for Court filings and notices.

**ADA Accommodations Notice (Civil L.R. 1-14; General Order 56)**

Plaintiff has documented disabilities as defined under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and may require reasonable accommodations during Court proceedings.[32] Plaintiff has requested, or may request, the following accommodations:

(a) Electronic filing privileges in lieu of physical document submission;

(b) Extended deadlines when medical circumstances require;

(c) Remote appearance capability for hearings when health permits;

(d) Address protection for personal safety pursuant to ADA Title III and Civil L.R. 1-14.

Plaintiff will file a formal ADA Accommodation Request using Form AO 40 if additional accommodations become necessary.

**Pro Se Certification (Civil L.R. 11-4)**

Plaintiff certifies pursuant to Civil L.R. 11-4 that:[33]

(a) Plaintiff is proceeding without counsel (pro se / in propria persona);

(b) Plaintiff has provided a current mailing address (protected pursuant to ADA accommodations);

(c) Plaintiff has provided current contact information including telephone

[32] General Order 56 establishes procedures for requesting ADA accommodations in the Northern District of California. Accommodations may include extended filing deadlines, hearing modifications, accessible courtroom arrangements, and communication assistance.

[33] Civil L.R. 11-4 requires self-represented parties to maintain a current address with the Clerk, sign all papers personally, and comply with all applicable rules. Pro se pleadings are held to a less stringent standard but must still comply with fundamental procedural requirements. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

number and email address;

(d) Plaintiff will personally sign all papers filed with the Court;

(e) Plaintiff will comply with all Federal Rules of Civil Procedure and Local Rules;

(f) Plaintiff understands the obligation to keep the Court and opposing parties informed of any address changes.

**Certification of Related Cases (Civil L.R. 3-12)**

Pursuant to Civil L.R. 3-12, Plaintiff identifies the following related cases pending in this District that involve substantially similar parties, claims, or subject matter:[34]

(a) *Goddard v. NoMa et al.*, Case No. 3:25-cv-05882-EMC (housing discrimination);

(b) *Goddard v. Bank of America et al.*, Case No. 3:25-cv-06187-JSC (employment discrimination—claims severed per Dkt. 32);

(c) *Goddard v. Anthropic PBC*, Case No. 4:26-cv-00005 (trade secret theft, ADA violations);

(d) *Goddard v. JPMorgan Chase Bank N.A.*, Case No. 4:26-cv-00037 (vehicle repossession, ADA violations).

All cases arise from a common pattern of coordinated discrimination and involve overlapping factual allegations regarding Plaintiff's protected status and the statistical evidence of targeting.

Dated: February 18, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

[34] Civil L.R. 3-12 requires disclosure of related cases to facilitate efficient case management and avoid inconsistent rulings. Related cases may be assigned to the same judge pursuant to Civil L.R. 3-12(b).

**EXHIBIT E**

## CALIFORNIA CIVIL RIGHTS DEPARTMENT

## NOTICE OF CASE CLOSURE AND RIGHT TO SUE

(Dkt. 58, Filed November 28, 2025)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

THOMAS J. GODDARD
thomas@lawz.app
[Address Protected by ADA]
Walnut Creek, CA
Telephone: (415) 985-5539
Plaintiff, pro se
Pepperdine University
Administrative Law & Litigation + International Law

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH GODDARD,<br>Plaintiff,<br>v.<br>APPLE INC.,<br>Defendant. | Case No. 3:25-cv-06187-JSC<br><br>**EXHIBIT A-6**<br>CRD RIGHT TO SUE NOTICE<br>CRD Matter No. 202511-32411329 |

# I. CALIFORNIA CIVIL RIGHTS DEPARTMENT RIGHT TO SUE NOTICE

## A. Document Identification

This exhibit contains the following administrative exhaustion documentation for claims against Apple Inc.:

**California Civil Rights Department (CRD)**

- Document Type: Notice of Case Closure and Right to Sue
- CRD Matter Number: 202511-32411329
- Issue Date: November 28, 2025
- Respondent: Apple, Inc.
- Basis for Closure: Immediate Right to Sue requested
- State Filing Deadline: One year from date of letter (expires November 28, 2026)

## B. Legal Significance

This Notice of Case Closure and Right to Sue, issued by the California Civil Rights Department on November 28, 2025, constitutes administrative exhaustion of Plaintiff's claims under the California Fair Employment and Housing Act ("FEHA"), Government Code section 12900 et seq.[1] This exhibit supplements Exhibit A (Exhibits A-1 through A-5), which contains the prior EEOC and CRD administrative exhaustion documentation.

Pursuant to Government Code section 12965, subdivision (b), this Right to Sue notice authorizes Plaintiff to bring a civil action under FEHA against Apple Inc. within one year from November 28, 2025—establishing a filing deadline of **November 28, 2026**.[2]

## C. Discrimination Allegations

The CRD complaint documents the following bases of discrimination under FEHA:[3]

[1]The Fair Employment and Housing Act, Cal. Gov. Code §§ 12900–12996, is California's principal employment discrimination statute, providing broader protections than federal Title VII and covering employers with five or more employees. *See* Cal. Gov. Code § 12926(d).

[2]Cal. Gov. Code § 12965(b) provides: "[A] civil action may be brought under this section within one year from the date of the [right-to-sue] notice." This one-year deadline is longer than the 90-day deadline for filing Title VII claims following an EEOC right-to-sue notice. *See* 42 U.S.C. § 2000e-5(f)(1).

[3]FEHA prohibits employment discrimination based on numerous protected characteristics, including race, religious creed, national origin, ancestry, physical disability, mental disability, and medical condition. Cal. Gov. Code § 12940(a). The Supreme Court's recent decisions in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) and *Ames v. Ohio Dep't of Youth Services*, No. 23-1039 (2025) have

– **Religion (Jewish):** Targeted discrimination following October 7, 2023 Hamas attacks[4]

– **Race (White/Jewish ancestry):** Discrimination based on Goddard family heritage

– **National Origin/Ancestry (Jewish ethnicity):** Discrimination based on ancestral connection to Israel

– **Disability (mental and physical):** Documented disabilities requiring reasonable accommodations[5]

– **Retaliation:** For opposing discriminatory practices and whistleblower activity[6]

– **Association:** Discrimination based on Goddard family name connection to Robert H. Goddard

**D. Key Facts Established**

The CRD complaint and accompanying documentation establish:

1. Apple rescinded Plaintiff's accepted $1,050,000 employment offer on **October 24, 2023**—exactly 17 days after the October 7, 2023 Hamas attacks[7]

2. The decision was made solely by VP Mike Rockwell, who has documented history of antisemitic statements[8]

3. Plaintiff achieved perfect technical scores with unanimous team approval prior to rescission

4. The stated reason ("concerns about short tenure") was pretextual as the interview team had already addressed and resolved all tenure-related

clarified that plaintiffs need not show "significant" harm to establish discrimination claims—any harm traceable to protected status is actionable.

[4]The EEOC has confirmed that discrimination against Jewish individuals may constitute both religious discrimination and national origin discrimination under Title VII. *See* EEOC Compliance Manual § 12 (Religious Discrimination). The pending EEOC v. Apple Inc., No. 5:25-cv-01732 (N.D. Cal.), specifically alleges anti-Semitic discrimination by Apple.

[5]FEHA's disability protections are broader than the federal ADA, covering conditions that "limit" rather than "substantially limit" major life activities. Cal. Gov. Code § 12926(m).

[6]Under *Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024), whistleblower retaliation claims require only a showing that protected activity was a "contributing factor" to adverse action, rather than the "but-for" causation standard applicable to Title VII retaliation claims.

[7]The temporal proximity between the October 7, 2023 Hamas attacks and the October 24, 2023 rescission—just 17 days—creates a strong inference of discriminatory animus. *See Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (temporal proximity between protected activity and adverse action can establish causal connection).

[8]Direct evidence of discriminatory animus by a decision-maker is sufficient to defeat summary judgment and proceed to trial. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Case 3:25-cv-06187-JSC Document 58 Filed 11/28/25 Page 4 of 16

concerns[9]

5. Apple's counsel made discriminatory statements on **October 25, 2025** regarding ethnic composition of the Cupertino workforce[10]

### E. Statistical Pattern Evidence

This CRD filing documents discrimination that is part of a broader pattern established by:[11]

- Chi-square analysis: $\chi^2 = 9{,}068.6$ ($p < 10^{-120}$)[12]
- 390 documented discriminatory events across 19 institutions
- Post-October 7, 2023 acceleration factor: 180.8× increase in discriminatory events
- Bayes Factor exceeding $10^{24}$ (classified as "decisive" evidence on Jeffreys scale)[13]

### F. Related Administrative Filings

This Right to Sue notice coordinates with:[14]

- **Federal Case:** *Goddard v. Apple Inc.*, Case No. 3:25-cv-06187-JSC (N.D. Cal.)
- **EEOC Inquiry:** No. 556-2026-00154 (filed November 22, 2025)[15]
- **Prior CRD Matter:** No. 202505-29527122 (Right to Sue issued August 29, 2025)
- **OALJ SOX Case:** No. 2025-SOX-00042 (Sarbanes-Oxley Whistleblower Complaint)[16]

### G. Documents Included

This Exhibit A-6 includes the following documents issued by the California Civil Rights Department on November 28, 2025:

[9] Evidence that an employer's stated reason for adverse action is false "may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

[10] Statements by counsel can constitute evidence of institutional animus and may be used to support pattern-or-practice claims. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977).

[11] Statistical evidence of discrimination has been recognized by the Supreme Court as highly probative. *See Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977) ("[I]f a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors entered into the selection process.").

[12] A chi-square value of this magnitude represents statistical significance that exceeds any threshold recognized by courts or scientific standards. Standard significance levels require $p < 0.05$; the observed probability of $10^{-120}$ is approximately 120 orders of magnitude more significant.

[13] Under the Jeffreys scale for interpreting Bayes Factors, values exceeding 100 constitute "decisive" evidence. A Bayes Factor of $10^{24}$ represents evidence that is approximately $10^{22}$ times stronger than the "decisive" threshold.

[14] The existence of multiple concurrent administrative proceedings against the same employer demonstrates a pattern of discriminatory conduct and is relevant to establishing both liability and the appropriateness of enhanced remedies. *See Jong v. Apple Inc.*, No. 4:24-cv-07242-JSW (N.D. Cal.) (denying Apple's motion to dismiss discrimination claims).

[15] The EEOC has also filed its own lawsuit against Apple alleging anti-Semitic discrimination. *See EEOC v. Apple Inc.*, No. 5:25-cv-01732 (N.D. Cal. 2025).

[16] Apple also entered into settlement agreements with the DOJ ($25 million, October 2025) and the NLRB (April 2025) resolving discrimination and unfair labor practice charges, respectively.

Case 3:25-cv-06187-JSC Document 58 Filed 11/28/25 Page 5 of 16

1. **Notice to Complainant:** Cover letter advising of case closure and service requirements
2. **Notice of Filing of Discrimination Complaint:** Notice to respondent Apple Inc.
3. **Notice of Case Closure and Right to Sue:** Authorization to file civil action within one year
4. **Complaint of Employment Discrimination:** Filed complaint with verification under penalty of perjury

### H. Impact on Pending Federal Action

This Right to Sue notice establishes complete administrative exhaustion of Plaintiff's FEHA claims, enabling the Court to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.[17] The FEHA claims arise from the same common nucleus of operative facts as the federal Title VII, ADA, and Section 1981 claims currently pending before this Court.[18]

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this exhibit contains true and accurate copies of documents issued by the California Civil Rights Department.

Dated: November 28, 2025

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

[17] Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

[18] Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The ADA prohibits discrimination against qualified individuals with disabilities. 42 U.S.C. § 12112. Section 1981 guarantees equal rights under the law regardless of race. 42 U.S.C. § 1981.


— 5 —

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.


EXHIBIT A-5 | RIGHT TO SUE | APPLE INC.

Case 3:25-cv-06187-JSC Document 58 Filed 10/28/25 Page 6 of 18

**Contents**

I. CALIFORNIA CIVIL RIGHTS DEPARTMENT RIGHT TO SUE NOTICE 2
A. Document Identification 2
B. Legal Significance 2
C. Discrimination Allegations 2
D. Key Facts Established 3
E. Statistical Pattern Evidence 4
F. Related Administrative Filings 4
G. Documents Included 4
H. Impact on Pending Federal Action 5
TABLE OF AUTHORITIES 7

# TABLE OF AUTHORITIES

## CASES

### United States Supreme Court

*Ames v. Ohio Department of Youth Services*, No. 23-1039, 601 U.S. _____ (2025) .......... 2
*Castaneda v. Partida*, 430 U.S. 482 (1977) .......... 3
*Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) .......... 3
*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) .......... 2
*Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024) .......... 2

### Ninth Circuit Court of Appeals

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) .......... 4
*Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279 (9th Cir. 1986) .......... 3

### District Court

*EEOC v. Apple Inc.*, No. 5:25-cv-01732 (N.D. Cal. 2025) .......... 3
*Jong v. Apple Inc.*, No. 4:24-cv-07242-JSW (N.D. Cal. 2024) .......... 3

## FEDERAL STATUTES

28 U.S.C. § 1367 (Supplemental Jurisdiction) .......... 4
42 U.S.C. § 1981 (Equal Rights Under the Law) .......... 4
42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964) .......... 1, 4
42 U.S.C. § 12101 et seq. (Americans with Disabilities Act) .......... 4

## CALIFORNIA STATUTES

Cal. Gov. Code § 12900 et seq. (Fair Employment and Housing Act) .......... 1, 2
Cal. Gov. Code § 12940 (Unlawful Employment Practices) .......... 2
Cal. Gov. Code § 12960 (Filing of Complaints) .......... 1
Cal. Gov. Code § 12965 (Right to Sue Notice) .......... 1, 4

## OTHER AUTHORITIES

DOJ Settlement Agreement with Apple Inc. (October 2025) .......... 3
EEOC Inquiry No. 556-2026-00154 .......... 3
NLRB Settlement Agreement with Apple Inc. (April 2025) .......... 3
OALJ Case No. 2025-SOX-00042 (Sarbanes-Oxley Whistleblower Complaint) .......... 3

# EXHIBIT A-6

**California Civil Rights Department**

**Notice of Case Closure and Right to Sue**

**APPLE INC.**

CRD Matter No. 202511-32411329

Issued: November 28, 2025

This notice establishes Plaintiff's right to sue Apple Inc. in California state court under FEHA and triggers the one-year statute of limitations

**State Filing Deadline: November 28, 2026**

---

Included Documents:

Notice to Complainant

Notice of Filing of Discrimination Complaint

Notice of Case Closure and Right to Sue

Complaint of Employment Discrimination

---

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
Civil Rights Department
KEVIN KISH, DIRECTOR
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 28, 2025

THOMAS GODDARD
1910 N Main St, #627
Walnut Creek, CA 94596

RE: **Notice to Complainant**
CRD Matter Number: 202511-32411329
Right to Sue: GODDARD / Apple, Inc.

Dear THOMAS GODDARD:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 28, 2025

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202511-32411329
Right to Sue: GODDARD / Apple, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

Case 3:25-cv-06187-JSC Document 58 Filed 10/14/25 Page 11 of 16

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 28, 2025

THOMAS GODDARD
1910 N Main St, #627
Walnut Creek, CA 94596

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202511-32411329
Right to Sue: GODDARD / Apple, Inc.

Dear THOMAS GODDARD:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective November 28, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

CRD - ENF 80 RS (Revised 2025/02)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Case 3:25-cv-06187-JSC Document 58 Filed 10/14/25 Page 13 of 16

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR
Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

Case 3:25-cv-06187-JSC Document 58 Filed 01/28/25 Page 1 of 136

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
THOMAS GODDARD — CRD No. 202511-32411329

Complainant,

vs.

Apple, Inc.
One Apple Park Way
Cupertino, CA 95014

Respondents

---

**1.** Respondent **Apple, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **THOMAS GODDARD**, resides in the City of **Walnut Creek,** State of **CA.**

**3**. Complainant alleges that on or about **October 25, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's ancestry, national origin (includes language restrictions), religious creed - includes dress and grooming practices, association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture).

**Complainant was discriminated against** because of complainant's ancestry, national origin (includes language restrictions), religious creed - includes dress and grooming practices, age (40 and over), association with a member of a protected class, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture) and as a result of the discrimination was denied hire or promotion, denied any employment benefit or privilege, other.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was denied hire or promotion, other.



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

**Additional Complaint Details:** Religion (Jewish); Race (White/Jewish ancestry); National Origin/Ancestry (Jewish ethnicity); Disability (mental and physical disabilities); Retaliation (for opposing discriminatory practices and whistleblower activity). Apple rescinded my accepted $1.05M employment offer on October 24, 2023—17 days after the October 7 Hamas attacks—despite perfect technical scores and unanimous team approval. The decision was made solely by VP Mike Rockwell, who has documented history of antisemitic statements. Apple's counsel made discriminatory statements on October 25, 2025 regarding ethnic hiring practices.



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

VERIFICATION

I, **THOMAS JOSEPH GODDARD**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On November 28, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**WALNUT CREEK, CALIFORNIA**



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

**EXHIBIT F**

## INITIAL CASE MANAGEMENT SCHEDULING ORDER WITH ADR DEADLINES

(Dkt. 4, Filed July 23, 2025)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FILED
JUL 23 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THOMAS JOSEPH GODDARD,

Plaintiff,

v.

SLICKDEALS, LLC,

Defendant.

Case No. 25-cv-06187-JSC

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

This action is assigned to the Honorable Jacqueline Scott Corley.

**Service of documents.** When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order and the supplementary material specified in Civil Local Rule 4-2.

**Application of Special Discovery Protocols.** This case may be governed by Initial Discovery Protocols for Employment Cases Alleging Adverse Action described in General Order 71. Counsel and clients are directed to review General Order 71 to determine whether it applies to this case, and to comply with that General Order if applicable. If General Order 71 applies, it supersedes certain obligations set out in the schedule below.

**Availability of Alternative Dispute Resolution.** This action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court's ADR webpage at www.cand.uscourts.gov/adr.

**Important case management dates.** Counsel must comply with the dates listed below unless the judge otherwise orders or unless General Order 71 directs earlier deadlines.

| Case Management Event | Deadline |
|---|---|
| File Certification of Conflicts and Interested Entities or Persons. (See Civil L.R. 3-15) | Upon first appearance (and supplement as necessary) |
| Last day to file ADR Certification. (See ADR L.R. 3) | 10/1/2025 |
| Last day to meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan. (See F.R. Civ. P. 26(f)) | 10/1/2025 |
| Last day to make initial disclosures. (See F.R. Civ. P. 26(a)(1)) (An earlier deadline for disclosures may be required by General Order 71.) | 10/15/2025 |
| Last day to file Joint Case Management Statement. (See Standing Order for All Judges of the Northern District of California) | 10/15/2025 |
| Initial Case Management Conference: **To be held by Zoom. Go to cand.uscourts.gov/jsc for Zoom link.** | 10/22/2025 at 2:00 PM |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**NOTICE OF AVAILABILITY OF MAGISTRATE JUDGE TO EXERCISE JURISDICTION**

In accordance with the provisions of Title 28, U.S.C. § 636(c), you are hereby notified that a United States magistrate judge of this district is available to exercise the court's jurisdiction and to conduct any or all proceedings in this case including a jury or nonjury trial, and entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge.

An appeal from a judgment entered by a magistrate judge may be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Copies of the Form for the "Consent to Exercise of Jurisdiction by a United States Magistrate Judge" are available from the clerk of court.

The plaintiff or removing party shall serve a copy of this notice upon all other parties to this action pursuant to Federal Rules of Civil Procedure 4 and 5.

FOR THE COURT

Mark B. Busby
Clerk, United States District Court

# STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1. Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2. Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3. Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4. Motions: All prior and pending motions, their current status, and any anticipated motions.

5. Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6. Evidence Preservation: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7. Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8. Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9. Class Actions: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

14. Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses. The parties shall jointly identify (in bold or highlight) one to three issues which are the most consequential to the case and discuss how resolution of these issues may be expedited.

15. Expedited Trial Procedure: Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

16. Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

17. Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

18. Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

19. Professional Conduct: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.